ORAL ARGUMENT NOT YET SCHEDULED
**No. 17-7035 (Lead Case), 17-7039**

IN THE

# UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT

AMERICAN SOCIETY FOR TESTING AND MATERIALS; AND NATIONAL FIRE PROTECTION ASSOCIATION, INC.; AND AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR-CONDITIONING ENGINEERS, INC.,

*Plaintiffs-Appellees*,

v.

PUBLIC.RESOURCE.ORG, INC.,

*Defendant-Appellants*.

(*Full caption on inside cover*)

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**BRIEF OF AMICI CURIAE ON BEHALF OF INTELLECTUAL PROPERTY PROFESSORS IN SUPPORT OF APPELLANT AND IN SUPPORT OF REVERSAL**

Mark P. McKenna
Notre Dame Law School
3120 Eck Hall of Law
Notre Dame, IN 46556
(574) 631-9258
markmckenna@nd.edu

Rebecca Tushnet
Harvard Law School
1515 Massachusetts Avenue
Cambridge, MA 02138
703-593-6759
rtushnet@law.harvard.edu

*Additional Counsel Listed on Signature Page*

AMERICAN SOCIETY FOR TESTING AND MATERIALS; AND NATIONAL FIRE PROTECTION ASSOCIATION, INC.; AND AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR-CONDITIONING ENGINEERS, INC.,

*Plaintiffs-Appellees*,

v.

PUBLIC.RESOURCE.ORG, INC.,

*Defendant-Appellants*.

—————————————————

AMERICAN EDUCATIONAL RESEARCH ASSOCIATION, INC.; AMERICAN PSYCHOLOGICAL ASSOCIATION, INC.; AND NATIONAL COUNCIL OF MEASUREMENT IN EDUCTION, INC.,

*Plaintiffs-Appellees*,

v.

PUBLIC.RESOURCE.ORG, INC.,

*Defendant-Appellants*,

AMERICAN SOCIETY FOR TESTING AND MATERIALS; NATIONAL FIRE PROTECTION ASSOCIATION, INC.; AND INC., AMERICAN SOCIETY OF HEATING, REFRIGERATING, AND AIR-CONDITIONING ENGINEERS, INC.,

*Intervenors-Appellees*,

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), amici curiae certify as follows.

**(A)     Parties and *Amici*.** All parties and amici appearing in this Court are listed in the Briefs for Appellants and Appellees.

**(B)     Rulings Under Review.** References to the rulings at issue appear in the Certificate filed April 6, 2017.

**(C)     Related Cases.** To the knowledge of counsel, other than any cases listed in the Certificate filed April 6, 2017, the case on review was not previously before this Court or any other court, and there are no other related cases currently pending in this Court or in any other court.

/s/
Counsel for *Amici Curiae*

# **TABLE OF CONTENTS**

**TABLE OF CONTENTS** ...................................................................................... iv

**TABLE OF AUTHORITIES** ............................................................................... v

**GLOSSARY OF ABBREVIATIONS** .................................................................. 1

**STATUTES AND REGULATIONS** .................................................................... 1

**STATEMENT OF IDENTITY, INTEREST IN CASE, AND SOURCE OF AUTHORITY TO FILE** ................................................................. 1

**STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS** ... 2

**SUMMARY OF ARGUMENT** ............................................................................ 4

**ARGUMENT** ....................................................................................................... 5

    I.   ASTM's Claims are Barred Under *Dastar v. Twentieth Century Fox* ................................... 5

    II.  ASTM's Claims are also Barred Under *Rogers v. Grimaldi* ............................................. 11

    III. Conclusion ............................................................................................ 15

**CONCLUSION** .................................................................................................. 16

**CERTIFICATE OF COMPLIANCE** ................................................................. 17

**CERTIFICATE OF SERVICE** .......................................................................... 18

# TABLE OF AUTHORITIES

*Cases*

*Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394, 399 (S.D.N.Y. 2006) ……………………………………………….…..10

*Bretford Manufacturing, Inc. v. Smith System Manufacturing Corp.*, 419 F.3d 576 (7th Cir. 2005) …………………………………………………………6, 8

*Brown v. Elec. Arts*, 724 F.3d 1235 (9th Cir. 2013) …………………………..14-15

*Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group*, 886 F.2d 490 (2d Cir. 1989) …………………………………………………………………12

*Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593 (9th Cir. 2000) …….15

*Cyber Websmith, Inc. v. American Dental Association*, 2010 WL 3075726, No. 09-CV-6198 (N.D. Ill., Aug. 4, 2010) ……………………………………...10

*\*Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) …….2, 4-9, 13

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095 (9th Cir. 2008) ……………………………………………………...………12

*ETW Corp. v. Jireh Pub., Inc.*, 332 F.3d 915 (6th Cir. 2003) …………..………..12

*Ho v. Taflove*, 696 F. Supp. 2d 950 (N.D. Ill. 2010), aff'd, 648 F.3d 489 (7th Cir. 2011)………...……………………………………………………………… 15

*Masck v. Sports Illustrated*, 5 F. Supp. 3d. 881 (E.D. Mich. 2014)…………..……. 8

*Mattel Inc. v. MCA Records*, 296 F.3d 894 (9th Cir. 2002) ………………...…13

*N.A.A.C.P. v. Radiance Foundation, Inc.*, 786 F.3d 316 (4th Cir. 2015) …......12, 15

*New Kids On The Block v. News America Pub., Inc.*, 971 F.2d 302 (9th Cir. 1992) ……………………………………………………………..……13

*Phx. Entm't Partners v. Rumsey*, 829 F.3d 817 (7th Cir. 2016) ……...6, 8, 9, 10-11

*Pulse Entertainment Corp. v. David*, No. CV 14-4732 (C.D. Cal. Sept. 17, 2014) 8

*\*Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989) ……………………...1, 5, 10-12

*Slep-Tone Entertainment Corp. v. Wired for Sound Karaoke & DJ Servs., LLC*, No. 14-17229 (9th Cir. Jan. 18, 2017) (per curiam) …………………..………6

*Smith v. BarnesandNoble.com, LLC*, No. 1:12-cv-04374, 2014 BL 263099 (S.D.N.Y. Sept. 23, 2014) ……….………………………………………10

*U.S. Olympic Committee v. American Media, Inc.*, 156 F. Supp. 2d 1200 (D. Colo. 2001) ………………………………………...…………………………13

*University of Alabama Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266 (11th Cir. 2012) ……………………………………………………………...11, 12

*Williams v. UMG Recordings, Inc.*, 281 F. Supp. 2d 1177 (C.D. Cal. 2003) …..…7

*Statutes*

15 U.S.C. § 1125(a)(1)(A) (2012) ……………………………………………5

*Other Authorities*

William McGeveran, *The Trademark Fair Use Reform Act*, 90 B.U. L. Rev. 2267 (2010) …………..…………………………………………………13

Mark P. McKenna & Lucas S. Osborn, *Trademarks and Digital Goods*, 92 Notre Dame L. Rev. 1425 (2017) ……………….…………………………8-9

Elizabeth L. Rosenblatt, *The Adventure of the Shrinking Public Domain*, 86 U. Colo. L. Rev. 561, 606 (2015). …………………………….…………… 13

\* Authorities upon which we chiefly rely are marked with asterisks.

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| ASTM | American Society for Testing and Materials |

## STATUTES AND REGULATIONS

All applicable statutes, etc., are contained in the Brief for Appellants and Appellees.

## STATEMENT OF IDENTITY, INTEREST IN CASE, AND SOURCE OF AUTHORITY TO FILE

**(A)** **Statement of Identity**. Amici, listed below, are law professors who teach and have written extensively about trademark law.[1]

Stacey Dogan, Boston University School of Law
Jessica Litman, University of Michigan Law School
Mark P. McKenna, Notre Dame Law School
Betsy Rosenblatt, Whittier Law School
Elizabeth I. Winston, Catholic University, Columbus School of Law
Rebecca Tushnet, Harvard Law School

**(B)** **Interest in Case**. Our sole interest in this case is in the development of trademark law in a way that serves the public interest.  We do not, in general, agree with the district court's copyright ruling, but we are especially

---

[1] Amici sign this brief in their individual capacities. Institutions are listed for identification purposes only.

1

concerned with that court's misapplication of key trademark doctrines. *Dastar v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), and *Rogers v. Grimaldi*, 875 F.2d 994 (2d Cir. 1989), both mandate that trademark claims cannot be based upon the idea that the content of the defendant's expressive goods or services implies authorization from the creator of that content. The district court's trademark reasoning ignores the statutory and First Amendment concerns that should exclude Public Resource's conduct from the scope of trademark law and place it within copyright law, no matter what the proper resolution of the copyright claims is.

**(C)**    **Authority to File**. Pursuant to Federal Rule of Appellate Procedure 29(a), all parties received appropriate notice of and consented to the filing of this brief. A separate brief is warranted pursuant to Circuit Rule 29(d). The District Court's ruling has implications far beyond this particular case, as it threatens to undermine critical limitations on the scope of trademark law and to put trademark law into conflict with copyright law and the First Amendment.

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

No party's counsel authored this Amici Curiae brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief; and No person, other than the Amici Curiae or their counsel contributed money that was intended to fund preparing or submitting the brief. All

signatories speak only on behalf of themselves. Institutional affiliations are listed for identification purposes only.

## SUMMARY OF ARGUMENT

ASTM's fundamental complaint is about unauthorized use of its intangible content—the standards for which it claims copyright ownership. *Dastar* unambiguously holds, however, that only confusion regarding the source of *physical* goods is actionable under the Lanham Act; confusion regarding the authorship of the standards or their authorization is not actionable. ASTM cannot avoid *Dastar* just because Public Resource creates digital copies of those standards. Consumers encounter the ASTM marks only as part of the standards, into which ATSM chose to embed the marks. As a result, any "confusion" could only be the result of the content itself. *Dastar* teaches that control over the creative work is the province of copyright law, not the Lanham Act. Accepting ASTM's argument would create exactly the kind of "mutant copyright" rejected by the Supreme Court.

Along with *Dastar*, trademark law contains additional limiting doctrines to avoid this problem when it comes from allegedly implied endorsement based upon the content of a work. Under *Rogers v. Grimaldi*, where the allegedly infringing use comes from the content of a work—including its title—infringement liability is limited to cases of affirmative misrepresentations about authorization (or uses unrelated to the content, not argued here), and does not extend to any implication of authorization that might come from the mere presence of a mark as part of a work. *Rogers* ensures that *Dastar*'s mandate cannot be evaded by making arguments about

4

the "quality" of the defendant's copies, as ASTM did here. Together, *Dastar* and *Rogers* set out a clear rule that defines the boundaries of copyright and trademark law.

## ARGUMENT

I.    ASTM's Claims are Barred Under *Dastar v. Twentieth Century Fox*

Dastar copied footage from the Crusade in Europe television series originally released by Twentieth Century Fox's predecessor in interest and re-used that footage in its own video series without attribution to Fox. According to Fox, this constituted reverse passing off. Dastar, Fox claimed, was passing off Fox's content as though it were Dastar's own, thereby falsely designating the origin of the video series in violation of § 43(a) of the Lanham Act. *Dastar*, 539 U.S. at 27. That section of the statute makes actionable

> use of any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1)(A) (2012) (emphasis added).

According to the Supreme Court, as used in the statute, "origin of goods" refers only to "the producer of the tangible goods that are offered for sale, and not to the author of any idea, concept, or communication embodied in those goods."

5

*Dastar*, 539 U.S. at 37. Indeed, "origin of goods" is "incapable of connoting the person or entity that originated the ideas or communications that 'goods' embody or contain." *Id*. at 32.

Under *Dastar*, only misrepresentations of the origin of physical goods are actionable under § 43(a). Other sorts of misrepresentations, including but not limited to misrepresentations of the origin of creative content, are not actionable. *Phx. Entm't Partners v. Rumsey*, 829 F.3d 817, 828 (7th Cir. 2016) ("Even as to [communicative goods like documentary videotapes and karaoke tracks], the Court made clear that the "good" whose "origin" is material for purposes of a trademark infringement claim is the "tangible product sold in the marketplace" rather than the creative content of that product."). *Dastar* thus precludes claims that use of the plaintiff's mark suggests that the plaintiff created or authorized a particular physical (or digital) copy, if the evidence of misrepresentation is based solely on the content of the copy. *See Slep-Tone Entertainment Corp. v. Wired for Sound Karaoke & DJ Servs*., LLC, No. 14-17229 (9th Cir. Jan. 18, 2017) (per curiam) (alleged confusion caused by the content of copyrighted music files was not actionable under *Dastar*); *Phx. Entm't*, 829 F.3d 817, 828 (same).[2]

---

[2] Because the *Dastar* rule derives from a construction of the text of the Lanham Act, it does not depend on the copyright status of the plaintiff's work—it applies with respect to works currently within copyright as well as uncopyrightable works. *See Bretford Manufacturing, Inc. v. Smith System Manufacturing Corp.*, 419 F.3d

ASTM cannot avoid that result just because it chose to embed its marks in its content. Indeed, the Supreme Court anticipated—and rejected—precisely the argument ASTM urged here. The Court noted that if "Dastar had simply copied the television series as *Crusade in Europe* and sold it as *Crusade in Europe*, without changing the title or packaging (including the original credits to Fox)," Fox still would not have been satisfied and likely would have brought a passing off claim. *Dastar*, 539 U.S. at 36. That claim, of course, would have been the same one ASTM made here: it would have alleged confusion based on the credits identifying the original creators, just as ASTM alleges confusion based on the inclusion of the ASTM marks within the content. Far from endorsing such a claim, the Court invoked this hypothetical claim to demonstrate why "origin" must be understood to refer only to the origin of tangible goods. *Id.*  As the full context of the Court's discussion makes clear, its interpretation of "origin" ruled out not only claims for failing to credit the creator of a work, but also claims based simply on crediting the creator, "if that [crediting] should be regarded as *implying* the creator's 'sponsorship or approval' of the copy." *Id*. (emphasis added).

If it were otherwise, Disney could prevent others from selling copies of Steamboat Willie even after its copyright expired by arguing that, because Mickey

---

576 (7th Cir. 2005); *Williams v. UMG Recordings, Inc.*, 281 F. Supp. 2d 1177, 1185 (C.D. Cal. 2003).

Mouse is in the movie and is Disney's trademark, consumers will be confused about the source of physical copies of the movie. Under ASTM's interpretation, that claim would technically survive *Dastar* because it is nominally focused on the source of physical goods, even though in truth it hinges on an assertion that consumers will think Disney authorized the reproduction of the content. *Dastar* would be a dead letter, since it would allow any plaintiff to plead around the holding, creating precisely the sort of "mutant copyright law" the Supreme Court rejected. *Id.* at 34; *cf. Bretford*, 419 F.3d 580–81 (noting that consumers might see marks embedded in other products, and holding that *Dastar* bars claims based solely on that embedding).

Post-*Dastar* decisions have routinely held that, if the plaintiff's only claim of confusion comes from the reproduction of the expressive content of a work that includes trademarks, then *Dastar* ought to apply, because origin cannot be inferred from the content alone. In *Phoenix*, for example, the Seventh Circuit rejected the plaintiff's claim that consumers were likely to be confused about the origin of unauthorized karaoke tracks in which the plaintiff's mark was embedded. *Phoenix Entm't*, 829 F.3d at 829 ("That the Sound Choice mark is embedded in the creative content of the karaoke track and is visible to the public whenever the track is played does not falsely suggest that Slep–Tone is endorsing the performance …"); *see also* Mark P. McKenna & Lucas S. Osborn, *Trademarks and Digital Goods*, 92 NOTRE DAME L. REV. 1425, 1451 (2017) ("Tangibility dictates that the proper inquiry must

be whether consumers are likely to be confused about the source of some tangible good sold by the defendant, not the good depicted within the creative content. … And any confusion about the source of the digital file would have to be traceable to something other than the content of that file …").

It is, of course, likely that consumers listening to copies of music files will correctly attribute the plaintiff's creative content to the plaintiff, but as the Seventh Circuit explained, that is true regardless of whether the copies are authorized or not; "all that distinguishes the legitimate copy from the illegitimate copy is authorization to make the copy—and that sounds much more like a claim of copyright infringement than a claim of trademark infringement." *Phoenix Entm't*, 829 F.3d at at 825.  Because there is no reason to believe that consumers know or care about the details of the physical substrate, other confusion theories are precluded under *Dastar*.  *Id.* at 829 ("And because patrons see only the creative content of the tracks rather than the particular medium from which the tracks are played, there is no reason to think that they believe that the digital file, wherever it resides, was itself produced or approved by Slep–Tone.").[3]  *See also Pulse Entertainment Corp. v. David*, No. CV 14-4732 (C.D. Cal. Sept. 17, 2014) (*Dastar* barred false designation of origin claim based on misattribution of hologram to wrong creator; hologram was creative

---

[3] Proper labeling of the source, at most, is all that is required to avoid confusion. Public Resource's website is clearly labeled as such, rather than as an ASTM website.

work like a cartoon); *Masck v. Sports Illustrated*, 5 F. Supp. 3d. 881 (E.D. Mich. 2014) (*Dastar* barred false designation of origin claim based on copying of photos); *Smith v. BarnesandNoble.com, LLC*, No. 1:12-cv-04374, 2014 BL 263099 (S.D.N.Y. Sept. 23, 2014) (*Dastar* barred claims of false representation of affiliation between an author and a distributor based merely on sale of copies of author's book, even if the distributor was distributing unauthorized copies); *Antidote Int'l Films, Inc. v. Bloomsbury Publ'g, PLC*, 467 F. Supp. 2d 394, 399 (S.D.N.Y. 2006) (*Dastar* barred false affiliation claim where "one person is the publisher of a novel and the other is the author of the novel, because the holding of *Dastar* would be meaningless if a false authorship claim could' be recast in this manner"); *see also Cyber Websmith, Inc. v. American Dental Association*, 2010 WL 3075726, No. 09-CV-6198 (N.D. Ill., Aug. 4, 2010) (holding that "the inherent misrepresentation that accompanies the unauthorized copying and distribution of another's copyrighted work" is not enough to create a Lanham Act cause of action separate from copyright).

*Phoenix* is also instructive because it rejected the "inferior copies" theory ASTM advanced before the district court. As the Seventh Circuit explained, the problem with that theory is that, even if true, the inferior quality of copies is irrelevant if the defendant is not providing consumers *tangible* goods in the marketplace. *Phx. Emtm't*, 829 F.3d at 831 ("Whatever wrong the defendants may

10

have committed by making (or causing to be made) unauthorized copies of Slep–Tone's tracks, they are not alleged to have held out a *tangible* good sold in the marketplace as a Slep–Tone product. Consequently, the defendants' alleged conduct is not actionable as trademark infringement.") (emphasis added). The *Phoenix* court's reasoning applies here, where, in technical terms, the physical copy any individual consumer perceives is made on her own computer.  The fact that it is sent from a Public Resource computer does not change the basic problem that ASTM's real objection is to copying of its content, not to any implied misrepresentation about the origin or endorsement of the physical arrangement of ones and zeros or electronic impulses.

II.     ASTM's Claims are also Barred Under *Rogers v. Grimaldi*

As the Eleventh Circuit has explained, *Rogers* is "the landmark case for balancing trademark and First Amendment rights." *University of Alabama Bd. of Trustees v. New Life Art, Inc.*, 683 F.3d 1266, 1277 (11th Cir. 2012).  In *Rogers*, the defendant created a film about two fictional Italian dancers who were called "Ginger and Fred," which was the film's title. Ginger Rogers, a famous dancer who often worked with Fred Astaire, sued under § 43(a), arguing that the film's title falsely implied that she was endorsing or featured in the film, *Rogers*, 875 F.2d at 997, just as ASTM argues that the presence of its trademarks as part of its standards implies that it endorses the copies on PR's website.

11

The Second Circuit made clear that, while purchasers have a right to avoid deception, where the "product" at issue is itself expressive, the Lanham Act should be read narrowly to avoid impinging on speech protected by the First Amendment:

> We believe that in general the Act should be construed to apply to artistic works only where the public interest in avoiding consumer confusion outweighs the public interest in free expression. In the context of allegedly misleading titles using a celebrity's name, that balance will normally not support application of the Act unless the title has no artistic relevance to the underlying work whatsoever, or if it has some artistic relevance, unless the title explicitly misleads as to the source of the work.

*Id.* at 999. "The canon of constitutional avoidance in this area is thus not a device of judicial evasion but an effort to reconcile the commercial values protected by the Lanham Act and the democratic value of expressive freedom." *N.A.A.C.P. v. Radiance Foundation, Inc.*, 786 F.3d 316, 322 (4th Cir. 2015).

*Rogers* addresses the First Amendment concerns that would arise were trademark law to allow infringement claims based on implications of affiliation or sponsorship due only to use of a trademark as part of the content of expressive works that *are* the goods being sold (or are the services being rendered). The rule of *Rogers*, which has been followed by numerous courts,[4] protects consumers against

---

[4] *See, e.g.*, *Univ. of Alabama Bd. of Trustees*, 683 F.3d at 1278; *E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008); *ETW Corp. v. Jireh Publ., Inc.*, 332 F.3d 915, 928 n. 11 (6th Cir. 2003); *Cliffs Notes, Inc. v. Bantam Doubleday Dell Publ'g Group*, 886 F.2d 490, 495 (2d Cir. 1989) (the *Rogers* test is "generally applicable to Lanham Act claims against works of artistic expression").

material deception without creating a chilling effect for producers of expressive works.[5]  *Rogers* usually applies where the trademark owner is the *subject* of the content, but its speech-protective rationale is at least as applicable where the trademark owner initially *created* the content, and thus the basic identification of the trademark owner is truthful (albeit allegedly misleading by implication).  In such situations, *Rogers* works consistently with *Dastar*.[6]  *See* Elizabeth L. Rosenblatt, *The Adventure of the Shrinking Public Domain*, 86 U. COLO. L. REV. 561, 606 (2015).  *Rogers* is thus another route to prevent the creation of a "mutant copyright law," by preventing a copyright owner from asserting trademark rights to prevent copying independent of copyright law.

---

[5] Although many works protected by *Rogers* are traditional artistic works, the same principles apply to political and other non-advertising speech, which equally receives full First Amendment protection.  *See, e.g., U.S. Olympic Committee v. American Media, Inc.*, 156 F. Supp. 2d 1200, 1209 (D. Colo. 2001) (applying *Rogers* to nonfiction magazine); *cf. Mattel Inc. v. MCA Records*, 296 F.3d 894, 906 (9th Cir. 2002) ("If speech is not purely commercial—that is, if it does more than propose a commercial transaction—then it is entitled to full First Amendment protection.") (in the context of applying *Rogers*).

[6] Indeed, the use here would satisfy the more stringent standard rejected by *Rogers*, that of necessity, because the standards cannot be identified without reference to ASTM. *Rogers*, 875 F.2d at 998. The same rationale could be offered under the heading of "nominative fair use."  *See New Kids On The Block v. News America Pub., Inc.*, 971 F.2d 302 (9th Cir. 1992) (explaining nominative fair use), *aff'g* 745 F. Supp. 1540, 1545 (C.D. Cal. 1990) (using *Rogers* to protect news publications); *see also* William McGeveran, *The Trademark Fair Use Reform Act*, 90 B.U. L. REV. 2267 (2010) (explaining substantial overlap between doctrines). Amici suggest that *Rogers* is a simpler test in the instant case because it offers a rule for non-advertising expression generally, while nominative fair use can apply to advertising uses as well.

13

Indeed, *Rogers* confirms that the correct way to read *Dastar* is to prevent parties from evading the holding by referring to irrelevant tangible goods. Courts in *Rogers* cases have for decades been barring claims because the allegedly infringing use was part of the defendant's content, implicitly refusing to let parties disingenuously claim that confusion related to the tangible copies provided by the defendant rather than the intangible content. When a defendant uses another's trademark as part of a work, whether in the title or the content, claims based on allegedly implied endorsement are barred absent an explicit misrepresentation of sponsorship, endorsement, or origin. Thus, the distinction that ASTM used to avoid *Dastar*—a claim that the alleged confusion is based not on the origin of the content of the standards, but on the implied endorsement of the specific copies of the standards on PR's website—is invalid.[7]

"It is well established that the use of a mark alone is not enough to satisfy [the explicit misleadingness] prong of the *Rogers* test." *Brown v. Elec. Arts*, 724 F.3d 1235, 1245 (9th Cir. 2013). If use of a mark alone were sufficient, "it would render *Rogers* a nullity." *Id.* (internal quotation marks omitted); *see also Elec. Arts*, 724

---

[7] Likewise, when *Steamboat Willie* enters the public domain, as it will shortly do, Disney should not be able to prevent others from making copies available by alleging, as ASTM did, that the copies at issue are bad ones and that the presence of its trademark (Mickey Mouse) in the copies and descriptions thereof implies Disney's endorsement. There is no difference between Disney's hypothetical end-run around copyright law and ASTM's here.

14

F.3d at 1246, 1248 ("To be relevant [under *Rogers*], evidence must relate to the nature of the behavior of the identifying material's user, not the impact of the use. Even if Brown could offer a survey demonstrating that consumers of the Madden NFL series believed that Brown endorsed the game, that would not support the claim that the use was explicitly misleading to consumers…. Brown would need to demonstrate that EA *explicitly* misled consumers as to his *involvement*."). Public Resource made no explicit claims of authorization, affiliation, or sponsorship. *Cf. Radiance Found*, 786 F.3d at 324 (explaining that Lanham Act's "in connection with" requirement demands a nexus between the use and a commercial transaction, not just the presence of a mark); *Comedy III Prods., Inc. v. New Line Cinema*, 200 F.3d 593, 595 (9th Cir. 2000) (rejecting Comedy III's argument that "the [video] clip at issue falls under the protection of the Lanham Act because it contains elements that in other contexts might serve as trademarks"); *Ho v. Taflove*, 696 F. Supp. 2d 950, 956 (N.D. Ill. 2010) (holding that communicative use for expressive purposes is not the kind of use trademark law targets), *aff'd*, 648 F.3d 489 (7th Cir. 2011).

III.    Conclusion

The appropriate scope of ASTM's rights in copies of its standards is determined by copyright law, not trademark law. It is there, if at all, that any remedy lies for Public Resource's copying.

15

## <u>CONCLUSION</u>

For the foregoing reasons, the judgment of the district court should be

reversed.

Respectfully submitted,

<u>/s/ Samuel R. Bagenstos</u>
625 S. State St.
Ann Arbor, MI  48109
734-647-7584
sbagen@gmail.com

Mark P. McKenna                                        Rebecca Tushnet
Notre Dame Law School                             Harvard Law School
3120 Eck Hall of Law                      1515 Massachusetts Avenue
Notre Dame, IN 46556                          Cambridge, MA 02138
(574-631-9258                                              703-593-6759
markmckenna@nd.edu                   rtushnet@law.harvard.edu

*Counsel for Amici Curiae*

## <u>CERTIFICATE OF COMPLIANCE</u>

This document complies with the type-volume limitation of the Federal Rules of Appellate Procedure and the Circuit Rules. The document contains 3,208 words, excluding the parts of the document exempted by Federal Rule of Appellate Procedure 32(f).

This document complies with the typeface and type style requirements of the Federal Rules. The document has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

<u>/s/ Samuel R. Bagenstos</u>
Counsel for *Amici Curiae*

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 25, 2017, the foregoing was filed and served upon all counsel of record electronically by filing a copy of the document with the Clerk through the Court's ECF system.

/s/ Samuel R. Bagenstos
Counsel for *Amici Curiae*
