ORAL ARGUMENT NOT YET SCHEDULED

Appeal No. 17-7035

(Consolidated with 17-7039)

_____

# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

American Society for Testing and Materials, et al.,

American Educational Research, et al.,

*Appellees,*

v.

Public.Resource.Org, Inc.,

*Appellant.*

On Appeal from the United States District Court
for the District of Columbia Hon. Tanya S. Chutkan
1:13-cv-1215-TSC
1:14-cv-0857-TSC

## BRIEF OF *AMICI CURIAE* ON BEHALF OF AMERICAN NATIONAL STANDARDS INSTITUTE AND TEN STANDARDS ORGANIZATIONS  IN SUPPORT OF PLAINTIFF-APPELLEE AND FOR AFFIRMANCE

Bonnie Y. Hochman Rothell                           Gerald W. Griffin
MORRIS, MANNING & MARTIN, LLP     CARTER LEDYARD & MILBURN LLP
1401 Eye Street, N.W., Suite 600                                      2 Wall Street
Washington, D.C. 20005                                       New York, NY 10005
 (202) 408-5153                                                               (212) 732-3200
bhrothell@mmmlaw.com                                            griffin@clm.com

*Counsel for Amici Curiae*                               *Of Counsel for Amici Curiae*

# CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEWAND RELATED CASES

Pursuant to Circuit Rule 28(a)(1), *amici curiae* certify as following:

**(A)   Parties and *Amici*.** Besides the following, all parties, intervenors, and *amici* appearing before the district court and in this court are listed in the Brief for Defendant-Appellant, filed August 28, 2017, and any *amicus* briefs filed prior to this one:

> The American Society of Civil Engineers ("ASCE")
> The International Electrotechnical Commission ("IEC")
> The International Organization for Standardization ("ISO")
> The International Code Council ("ICC")

**(B) Rulings Under Review.** References to the rulings at issue appear in the Brief for Defendant-Appellant filed August 28, 2017.

**(C) Related Cases.** To the knowledge of counsel, other than any cases listed in the Brief for Defendant-Appellant filed August 28, 2017, the case on review was not previously before this Court or any other court, and there are no other related cases currently pending in this Court or in any other court.

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1(a), each *amicus* represents that each has no parent corporations and that no publicly held company has a 10% or greater ownership interest in them.

## TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS UNDER REVIEW AND RELATED CASES ................................................................................. i

TABLE OF AUTHORITIES ................................................................. iv

GLOSSARY OF ABBREVIATIONS ..................................................... vi

STATUTES AND REGULATIONS ...................................................... vii

STATEMENT OF IDENTITY OF *AMICI CURIAE*, 1INTEREST IN THE CASE, AND SOURCE OF AUTHORITY TO FILE .......................................... 1

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS ......... 7

ARGUMENT ................................................................................... 7

   I.  LOSS OF COPYRIGHT IN STANDARDS WOULD PROFOUNDLY HARM SDOs, FEDERAL, STATES AND LOCAL GOVERNMENTS AND THE PUBLIC ................................................................... 8

     A. SDOs Would Be Unable to Fund Standards Development If Deprived of Revenues from Standards Sales. .......................................... 8

     B. Governments Would Lose the Ability to Adopt Standards Into Law or Utilize Standards Themselves. ........................................... 10

     C. The Public Would Be Harmed By Lost Efficiencies And Lost Opportunity Costs. ......................................................... 15

     D. United States Industry Would Be Diminished. ....................... 16

   II. THERE IS NO CONGRESSIONALLY OR JUDICIALLY CREATED COPYRIGHT EXCEPTION FOR PRIVATELY AUTHORED WORKS THAT HAVE BEEN REFERENCED IN A LAW AND DUE PROCESS DOES NOT REQUIRE THE CREATION OF SUCH AN EXCEPTION ... 17

     A. The Copyright Act Supports the D.C. Circuit and Congress' Approach to Construing the Copyright Act When Privately Created Works are Used by the Government ..................................................... 17

     B. Government Policy Supports Copyright Protection. ................. 22

C.  Judicial Precedent Supports Copyright Protection....................................23

D.  The First Amendment Does Not Constrain Congress' Choices Made In the Copyright Act. ...................................................................................26

E.  Recognizing Private and Public Interests Avoids A Substantial Constitutional Takings Question ...........................................................28

CONCLUSION ........................................................................................................29

CERTIFICATE OF COMPLIANCE......................................................................30

CERTIFICATE OF SERVICE ...............................................................................31

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*ASTM v. Public.Resource.Org, Inc.*,
   U.S. Dist. LEXIS 14623 (D.D.C. 2017) .........................................6, 9, 10, 11, 27

*CCC Info. Servs., Inc. v. Maclean Hunter Mkt Reports, Inc.*,
   44 F.3d 61 (2d Cir. 1994), *cert. denied*, 516 U.S. 817 (1995) ....................23, 29

*Eldred v Ashcroft*,
   537 U.S. 186 (2003).........................................................................................27

*Golan v Holder*,
   565 US 302 (2012).........................................................................................27

*Harper & Row v, Nation Enterprises*,
   471 US 539 (1985).........................................................................................27

*M.B. Schnapper Pub. Affairs Press v. Foley*,
   667 F.2d 102 (D.C. Cir. 1981)....................................................................20, 21

*Oracle Am. Inc. v Google, Inc.*,
   750 F.3d 1339 (Fed.Cir. 2014) ...........................................................................9

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*,
   121 F.3d 516 (9th Cir. 1997) .....................................................23, 24, 25, 26, 29

*Roth v. Pritikin*,
   710 F.2d 934 (2nd Cir. 1983) ..........................................................................29

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
   464 U.S. 417 (1984).........................................................................................18

*United Video, Inc. v. FCC*,
   890 F.2d 1173 (D.C. Cir. 1989)....................................................................18, 29

*Veeck v S.Bldg Code Cong., Int'l, Inc.*,
   293 F.3d 791 (5th Cir. 2002) ..........................................................8, 24, 26, 28

*Walton v. United States*,
   80 Fed. Cl. 251 (Ct. Claims 2008), aff'd, 551 F.3d 1367 (Fed. Cir. 2009)........19

## Constitutional Provisions

U.S. Const., art. I § 8 cl.8..................................................................17

## Statutes

5 U.S.C. § 552 ..................................................................................12

17 U.S.C. §201 .................................................................................29

17 U.S.C. § 101 ...................................................... 17, 18, 19, 20, 26, 29

17 U.S.C. § 105 .................................................. 17, 18, 19, 22, 20, 26, 29

5 U.S.C. § 552 .............................................................................11, 12

## Federal Regulations

79 Fed. Reg. 66267 (Nov. 7, 2014)........................................................12

74 Fed. Reg. 63,287, 63,302 (Dec. 3, 2009)............................................16

79 Fed. Reg. 8207 (Feb. 11, 2014) .......................................................25

## Rules

District of Columbia Circuit Rule 29(d) .................................................7

Fed. R. App. 29(a) .............................................................................7

## Other Authorities

H.R. Rep. No. 1476, 94th Cong., 2d Sess. 59 (1976)........................20, 21

Testimony of Mary H. Saunders, Director, Standards Coordination
    Office National Institute of Standards and Technology U.S.
    Department of Commerce Before the House Committee on
    Science, Space, and Technology, Subcommittee on Technology
    and Innovation, February 29, 2012.................................................13

Webster's New Collegiate Dictionary (1973) .........................................19

Strauss, Peter L. "Private Standards Organizations and Public Law."
    Wm. & Mary Bill Rts. J. 22 (2013): 497............................................10

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| American National Standards Institute, Incorporated | ANSI |
| American National Standards | ANSs |
| Standards Developing Organizations | SDOs |
| The American Society of Civil Engineers | ASCE |
| American Society of Safety Engineers | ASSE |
| The Institute of Electrical and Electronics Engineers, Incorporated | IEEE |
| International Association of Plumbing & Mechanical Officials | IAPMO |
| The International Electrotechnical Commission | IEC |
| The International Organization for Standardization | ISO |
| The International Code Council, Inc. | ICC |
| National Electrical Manufacturers Association | NEMA |
| North American Energy Standards Board | NAESB |
| Federal Energy Regulatory Commission | FERC |
| Underwriters Laboratories Inc. | UL |
| *ASTM v. Public.Resource.Org, Inc*., U.S. Dist. LEXIS 14623 (D.D.C. 2017) | ASTM |
| Office of Management and Budget | OMB |
| National Technology Transfer and Advancement Act of 1995 | NTTAA |
| Freedom of Information Act | FOIA |

| | |
|---|---|
| Code of the Federal Regulations | CFR |
| Office of Federal Register | OFR |
| National Archives and Records Administration | NARA |
| U.S. National Institute of Standards and Technology | NIST |
| Occupational Safety and Health Administration | OSHA |
| Transatlantic Trade and Investment Partnership | TTIP |
| Incorporated By Reference | IBR |

## STATUTES AND REGULATIONS

All applicable statues, etc., are contained in the Brief for Appellants and Appellees.

## STATEMENT OF IDENTITY OF *AMICI CURIAE*, INTEREST IN THE CASE, AND SOURCE OF AUTHORITY TO FILE

The standards and codes involved in the present case are part of a large genre of creative works, including standards, model codes and other reference works (collectively referred to as "standards"), that are generally developed by private, not-for-profit organizations and may be selected, when appropriate, for use and adoption, in whole or in part, by government instrumentalities throughout the United States. *Amici curiae* are all organizations that are involved in the coordination, creation, or use of these socially important works.

American National Standards Institute, Incorporated ("ANSI") is a not-for-profit membership organization that, for more than 97 years, has administered and coordinated the voluntary standardization system in the United States. ANSI facilitates the development of American National Standards ("ANSs") by accrediting the procedures of standards developing organizations ("SDOs"). These SDOs work cooperatively to develop voluntary national consensus standards that are used in virtually every industry sector and in all aspects of daily life, from toys and food safety to IT and the built environment.  Accreditation by ANSI signifies that the procedures used by the standards developer in connection with the development of ANSs meet ANSI's essential requirements for openness, balance, consensus and due process.

The American Society of Civil Engineers ("ASCE") is a not-for-profit corporation organized under the laws of the State of New York, with its principal place of business in Reston, Virginia. Founded in 1852, ASCE is an educational and scientific society representing more than 150,000 members worldwide, including some 110,000 engineers and comprising hundreds of technical and geographic organizations, chapters, and committees. Its objective is to advance the science and profession of engineering to enhance the welfare of humanity.

American Society of Safety Engineers ("ASSE") was founded in 1911 and is the world's oldest professional safety society. ASSE is a global association of occupational safety professionals representing more than 36,000 members worldwide. The Society is an advocate for occupational safety and health professionals.

The Institute of Electrical and Electronics Engineers, Incorporated ("IEEE") is a not-for-profit professional organization dedicated to the advancement of technology for the benefit of humanity with a 125-year history of technological innovation. The organization comprises more than 420,000 members who participate in its activities across the world in more than 160 countries. IEEE, through its Standards Association, comprised of both individual and corporate members, is a globally recognized standards setting body that has an open and inclusive process consistent with the World Trade Organization principles on

international standardization. IEEE has a portfolio of over 1200 active standards and over 650 standards under development impacting a wide range of industries including: power and energy, information technology, telecommunications, transportation, nanotechnology, and information assurance.

International Association of Plumbing & Mechanical Officials ("IAPMO") coordinates the development of plumbing and mechanical codes and standards to meet the specific needs of individual jurisdictions and industry both in the United States and abroad. IAPMO is a not-for-profit membership organization that was founded in 1926.

The International Electrotechnical Commission ("IEC") is the world's leading developer and publisher of voluntary International Standards for electrical, electronic and information technologies and operates global conformity assessment systems. Established in 1906, the IEC is a non-profit, independent organization whose seat is in Geneva, Switzerland. The IEC represents a global network of 170 countries and more than 20,000 experts participate in IEC work. IEC International Standards are developed through consensus and in accordance with the World Trade Organization principles.

The International Organization for Standardization ("ISO"), also based in Switzerland, is a non-governmental non-profit organization with members from 162 national standards bodies. Through its international consensus based

processes, consistent with the World Trade Organization principles on international standards, ISO has developed and published over 21,000 voluntary International Standards on a number of subjects.

The International Code Council, Inc. ("ICC") is a non-profit membership association dedicated to building safety. The International Codes, or I-Codes, published by ICC, provide one set of comprehensive and coordinated model codes covering all disciplines of construction including structural safety, plumbing, fire prevention and energy efficiency. All fifty states and the District of Columbia have adopted certain I-Codes at the state or other jurisdictional levels. Federal agencies including the Architect of the Capitol, General Services Administration, National Park Service, Department of State, U.S. Forest Service and the Veterans Administration also use I-Codes for the facilities that they own or manage.

National Electrical Manufacturers Association ("NEMA") is the association of electrical equipment manufacturers, founded in 1926. NEMA sponsors the development of and publishes over 500 standards relating to electrical products and their use. NEMA's member companies manufacture a diverse set of products including power transmission and distribution equipment, lighting systems, factory automation and control systems, building controls and electrical systems components, and medical diagnostic imaging systems.

North American Energy Standards Board ("NAESB") was formed in 1994 as a not-for-profit standards development organization dedicated to the development of commercial business practices that support the wholesale and retail natural gas and electricity markets. NAESB maintains a membership of over three hundred corporate members representing the spectrum of gas, and electric market interests and has more than two-thousand participants active in standards development. To date, NAESB, and its predecessor organization the Gas Industry Standards Board, have developed over 4,000 standards through its collaborative, consensus-based process, a majority of which have been incorporated by reference in federal regulations by the Federal Energy Regulatory Commission ("FERC").

Underwriters Laboratories Inc. ("UL") is an independent, not-for-profit standards developer dedicated to promoting safe living and working environments since its founding in 1894. UL's standards provide a critical foundation for the safety system in the United States and around the world, as well as promote innovation and environmental sustainability. With over 120 years of experience and the development of over 1,500 standards UL advances safety science through careful research and investigation.

*Amici Curiae* represent a wide range of SDOs, both national and international, with varied purposes and different audiences that exist to benefit our society. The standards created and administered by SDOs are often later used and

5

adopted by local and state governments and federal authorities throughout the United States who do not otherwise have the necessary facilities and resources to develop them independently. ASCE, ASSE, IAPMO, ICC, IEC, IEEE, ISO, NAESB, NEMA, and UL are just ten of the hundreds of private SDOs that support their standards development activities through revenues derived from the publication, sale, and licensing of standards made possible by the protection of the copyright laws.

*Amici* believe that Appellant Public.Rescource.Org, Inc.'s position and asserted justification for its wholesale copying and posting of plaintiffs' creative works on the Internet found by the District Court to be infringing, *ASTM v. Public.Resource.Org, Inc.*, U.S. Dist. LEXIS 14623 (D.D.C. 2017) (hereinafter "*ASTM*"), is an ill-advised departure from established principles of law and policy. The copyrighted standards at issue in this case are part of a large and important ecosystem of creative works developed by not-for-profit SDOs. SDOs create and maintain at their own substantial expense their copyrighted standards and make them available to interested parties, government regulators, and the public at large. Loss of copyright protection for these works would drastically undermine the ability of SDOs to fund the ongoing creation and updating of these important works, and would therefore harm the governments and the public who benefit from and rely on the work of these SDOs.

6

Pursuant to Federal Rule of Appellate Procedure 29(a), *amici* certify that all parties in this case have consented to the filing of this brief.

Pursuant to District of Columbia Circuit Rule 29(d), *amici* certify that this separate *amicus* brief is necessary and non-duplicative with any other brief that may be submitted.

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

No party's counsel authored this *Amici Curiae* Brief in whole or in part. No party or party's counsel contributed money that was intended to fund preparing or submitting this brief, and no person, other than the *Amici Curiae* contributed money that was intended to fund preparing or submitting the brief.

## ARGUMENT

Appellant's primary position is that because plaintiffs' privately authored standards have been referenced in statutes and regulations, including the Code of Federal Regulations, those works have forever lost their copyright protection. If this sweeping contention were accepted, it would profoundly harm private SDOs, governments – state, local, and federal – who benefit from private standards development, and the public who benefit from standardization's efficiencies in hundreds of industries, including improvements in the way product components interoperate, and the avoided fiscal burden that would result from government authorship of standards. Part I below addresses the policy considerations that

weigh against Appellant's position, and Part II addresses the legal considerations that support *amici's* position.

## I.   LOSS OF COPYRIGHT IN STANDARDS WOULD PROFOUNDLY HARM SDOs, FEDERAL, STATE AND LOCAL GOVERNMENTS AND THE PUBLIC.

### A.   SDOs Would Be Unable to Fund Standards Development If Deprived of Revenues from Standards Sales.

Appellant's position that creative works such as those developed by the SDOs enter the public domain the moment any government instrumentality adopts them by reference in a law has the largest implications for copyright holders like *amici* who develop standards that a government may elect to use and reference in law.   SDOs rely on copyright protection and the ability it affords to generate revenue from the sale and licensing of the works they create to sustain their on-going standards creation, refinement, and updating.

The development of useful, high-quality, up-to-date, consensus-based standards is a costly, time consuming process.   Drafting standards requires wide-ranging creative input from a variety of concerned constituencies and sources of expertise,[1] including representatives of the consuming public, industry, and the

---

[1]   *See Veeck v S.Bldg Code Cong., Int'l, Inc.*, 293 F.3d 791, 802 (5th Cir. 2002) ("We emphasize that in continuing to write and publish model building codes, SBCCI is creating copyrightable works of authorship.").   The content of standards publications reflects technical and other judgments and opinions on matters of safety, economic and manufacturing efficiency, energy efficiency, best practices,

public safety and regulatory community. In addition, the standards drafting process draws heavily on the administrative, technical, and support services provided by the organizations that develop them.

NEMA and UL, for example, arrange for the hundreds of standards-related meetings that take place yearly. They provide logistical, administrative, and editorial support to the hundreds of technical committees that draft and regularly update standards, and maintain a permanent staff of engineers, technical program managers, and administrative staff who support their standards activities.

These costs are commonly underwritten, in whole or significant part, by the revenues made possible from the copyright-protected sales and licensing of the standards themselves. For example, ASSE covers the costs of its development of occupational safety and health standards through the revenues derived from sales of those standards. For its part, NEMA allocates half of the royalties earned from the sale of standards developed by a given technical committee to the committee's next annual budget thereby reducing the participants' cost of supporting the committee's ongoing work.

---

and a variety of other subjects; standards development bodies consider the choice of words, the order in which content is presented, and make numerous other creative choices about the content, including whether content is appropriate for inclusion in a standard. *ASTM* at *28-29. *See also Oracle Am. Inc. v Google, Inc.*, 750 F.3d 1339, 1361-1367 (Fed.Cir. 2014) (describing Oracle's creative choices).

Similarly, IAPMO and IEEE use all sales of codes and standards to fund their respective not-for-profit missions, while UL funds its standards-development activities from the licensing of its standards. *Amicus* ANSI, while not an SDO, similarly funds mission-related activities with revenues derived from the sale of standards under licensing agreements with the SDO copyright holders. Without copyright protection, others would be free to expropriate and sell or give away the works created or licensed by SDOs and the ability of ANSI and these SDOs to sustain their standards coordination and development activities, as well as other mission-related programs, would be seriously compromised.

### B.    Governments Would Lose the Ability to Adopt Standards Into Law or Utilize Standards Themselves.

The impact of copyright destruction, however, would be felt by more than just the SDOs whose copyrights would be lost. Private standards are developed for reasons unrelated to governmental interests. *ASTM* at \*8 ("manufacturing and markets are greatly aided, and consumers offered protection, by the application of uniform industrial standards created independent of law, as means of assuring quality, compatibility, and other highly desired market characteristics" *quoting* Peter L. Strauss, *Private Standards Organizations and Public Law*, 22 Wm. & Mary Bill Rts. J. *497, 499 (2013)*).

In recognition of the benefits of private standards development, the federal government has long made it a policy to adopt such standards unless there is a

valid reason for not doing so.  Private standards development provides federal, state, and local governments with valuable and high quality codes and standards that are created at no cost to taxpayers, and governments at all levels have recognized the importance of privately developed codes and standards by adopting them in great numbers.  The federal government's policy is expressed by the Office of Management and Budget ("OMB") in Circular A-119, which directs all federal agencies to incorporate "in whole, in part, or by reference" privately developed standards for regulatory and other activities "whenever practicable and appropriate."  OMB Circular A-119 at 8554-55.  OMB Circular A-119 expressly acknowledges that doing so "[e]liminate[s] the cost to the government of developing its own standards."  *Id.* at 8554.  For this policy to succeed, private authors must have an incentive to create works useful to the government. OMB thus requires agencies to "observe and protect the rights of the copyright holder and any other similar obligations." *Id.* at 8555.  This policy of federal government use of privately developed standards was codified and fortified in the *National Technology Transfer and Advancement Act of 1995* ("NTTAA").  *ASTM* at *34-38.

Under Appellant's position, however, government use or adoption of a private work as part of its regulatory scheme would, by definition, invalidate the author's copyright in contravention of OMB A-119 and the NTTAA.  Importantly, the Freedom of Information Act ("FOIA") provides an effective mechanism to

balance the rights of copyright holders in standards incorporated by reference with the public's right to access the law.   Specifically, FOIA expressly authorizes reference by the Code of the Federal Regulations ("CFR") to materials incorporated by reference, with the approval of the Office of Federal Register ("OFR") that are "reasonably available to the class of persons affected thereby." 5 U.S.C. Section 552(a)(1).  In other words, a standard is eligible for incorporation by reference if the federal agency wishing to include the standard determines it is "reasonably available" to the class of persons affected by the anticipated public law.

The "reasonably available" approach was recently reaffirmed by the OFR in response to a petition signed by a number of petitioners, including Appellant.[2] That petition asked the National Archives and Records Administration ("NARA") to define "reasonably available" in the regulations to require free access to standards incorporated by reference into the CFR. The OFR rejected this request, reaffirming in its Final Rule on November 7, 2014, that "reasonably available" means that the standard is accessible to any potential user but does not require that the standard be available without a fee. 79 F.R. 66267 (November 7, 2014). Instead, the OFR announced non-confiscatory revisions to its rules, including

---

[2]    *See* Petition submitted by Peter Strauss *et al*, February 21, 2012. http://www.gpo.gov/fdsys/pkg/FR-2012-02-27/pdf/2012-4399.pdf

clarifying that government agencies "should collaborate with the [SDOs] and other publishers of [incorporated by reference] materials, when necessary, to ensure that the public does have reasonable access to the referenced documents." *Id.* at 66268.[3]

As the federal policy reflected in OMB Circular A-119, the NTTAA, and the OFR's recent rulemaking makes clear, the U.S. government has important interests at stake and the destruction of copyright relating to standards incorporated by reference would have a damaging impact on the federal government. Indeed, according to the U.S. National Institute of Standards and Technology ("NIST"), federal government agencies engage in standardization activities in a wide range of mission-specific roles, including contributing to development of standards in the private sector, ensuring that standards are not used as technical barriers to trade by trading partners, using standards for procurement or regulatory actions, and addressing competition-related aspects of standards-setting activities.[4] The federal

---

3    The OMB has revised Circular A-119 "*Federal Participation in the Development and Use of Voluntary Consensus Standards and in Conformity Assessment Activities.*" The revised circular became available on January 27, 2016: https://www.federalregister.gov/documents/2016/01/27/2016-01606/revision-of-omb-circular-no-a-119-federal-participation-in-the-development-and-use-of-voluntary.

4    *See* Testimony of Mary H. Saunders, Director, Standards Coordination Office National Institute of Standards and Technology U.S. Department of Commerce Before the House Committee on Science, Space, and Technology,

government also itself relies heavily on privately developed standards to serve diverse regulatory objectives.  For example, the FERC uses incorporation by reference to make standards developed by NAESB mandatory for participants in the wholesale energy markets.  The Occupational Safety and Health Administration ("OSHA") uses voluntary consensus standards developed by *amicus* ASSE in health and safety regulation.  The use of consensus standards reduces the cost to agencies due to economies of scale resulting from using the same standards for government as are used for the commercial sector, and spurs innovation and greater product choice.

SDOs like *amici*, in furtherance of their not-for-profit safety and welfare purposes, make available the use of their works by governmental entities in setting safety and other regulations when those entities deem it in the public interest. They do so with the understanding that these works will retain their copyright and have to be made reasonably available to anyone who needs them in order to comply with the law or to participate in the government programs that incorporate those works.  Indeed, for these works to have any utility for the governments that utilize them, they must be made generally and reasonably available, and it is in the interests of the SDOs to see that they are.

---

Subcommittee on Technology and Innovation, February 29, 2012, available at https://science.house.gov/sites/republicans.science.house.gov/files/documents/hearings/HHRG-112-SY19-WState-MSaunders-20120228.pdf

### C.      The Public Would Be Harmed By Lost Efficiencies And Lost Opportunity Costs.

The destruction of copyrights in standards ultimately would have the greatest negative impact on the very group that the Appellant in this case purports to represent – citizens whose access to the law is allegedly compromised because they may have to pay for a standard.  Indeed, the public has the most to lose if copyright is lost every time federal, state, or local governments incorporate standards into law.

If SDOs lose copyright in standards, they may be forced to increase stakeholder participation fees in order to offset the loss of revenues from the sale of standards.  This would, in turn, disenfranchise consumers, small businesses, and local governments and potentially result in a situation where those with money could have disproportionately increased influence over others.  This could also result in fewer and lower quality standards for use by the consuming public.  The lack of industry-wide contributions and fewer participants in the standards development process would result in less transparency, diminished inclusivity, and standards becoming less broad-based.

Equally significant, if SDOs lose copyright in their standards, governments may be compelled to develop more detailed regulations afresh, resulting in increased regulatory costs that would be passed on to consumers.  If for example NAESB could no longer afford to stay in the standards-writing space and FERC

took over the task of writing standards, it probably would be done through a substantially less efficient and more costly process.  FERC has explained that "[f]rom our experience, the NAESB process is a far more efficient and cost effective method of developing technical standards for the industries involved than the use of a notice and comment rulemaking process involving numerous technical conferences in Washington that all believe they have to attend," concluding that "the benefits of having a well-established, consensus process outweigh whatever costs non-members may incur in having to obtain copies of the standards."[5]

### D.     United States Industry Would Be Diminished.

Finally, if SDOs were forced to withdraw from standards development because they could no longer fund their operations, some standards for new technologies could go undeveloped in the United States. The United States, as a leader in innovation, would be negatively impacted.  This could result in fewer opportunities for U.S. companies and workers in industries driven by standardization activities.   The issue extends beyond leadership in standards development work: standards are a tremendous part of market access issues that are being negotiated as part of the current North American Free Trade Agreement modernization Transatlantic Trade and Investment Partnership ("TTIP").

---

[5]     *Standards for Business Practices and Communication Protocols for Public Utilities*, Final Rule, 74 Fed. Reg. 63,287, 63,302 (Dec. 3, 2009).

## II. THERE IS NO CONGRESSIONALLY OR JUDICIALLY CREATED COPYRIGHT EXCEPTION FOR PRIVATELY AUTHORED WORKS THAT HAVE BEEN REFERENCED IN A LAW AND DUE PROCESS DOES NOT REQUIRE THE CREATION OF SUCH AN EXCEPTION.

In the face of statute, policy, and practice to the contrary, Appellant invokes constitutional principles of due process, claiming that these principles require the destruction of a copyright owner's property rights in a privately developed standard the moment that any governmental authority adopts it, and that this is required in order to ensure the public's right to gain full access to and comment on the laws. This Court must decide, therefore, whether as a matter of law it should establish a new principle to invalidate otherwise valid copyrights. For the reasons that follow, it should not.

### A. The Copyright Act Supports the D.C. Circuit and Congress' Approach to Construing the Copyright Act When Privately Created Works are Used by the Government.

Copyright is statutory in nature. "The Congress shall have Power . . . To promote the Progress of Sciences and useful Arts, by securing for limited Times to Authors . . . the exclusive Right to their respective Writings . . ." United States Constitution, Article I, Section 8. "[T]he limited grant is a means by which an important public purpose may be achieved. It is intended to motivate the creative activity of authors . . . by the provision of a special reward, and to allow the public access to the products of their genius after the limited period of exclusive control

has expired." *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984).

Statutory construction of the Copyright Act relies on traditional principles. "In determining the intent of Congress, we must look to the particular statutory language at issue, as well as the language and design of the statute as a whole, and we must employ traditional tools of statutory construction, including, where appropriate, legislative history." *United Video, Inc. v. FCC*, 890 F.2d 1173, 1184 (D.C. Cir. 1989)(citations omitted).   The unambiguous text of the 1976 Copyright Act, Sections 101 and 105, confirms that the abridgement of copyright in "any work" of the United States Government --- whether in the form of judicial opinions, statutes, regulations, guidelines, reports, or any other form --- only occurs when the "work [is] prepared by an officer or employee of the United States Government as part of that person's official duties."

Section 105 of the Copyright Act states:  "Copyright protection under this title is not available for any work of the United States Government. . ." 17 U.S.C. §105.   And Section 101 of the Copyright Act defines a "work of the United States Government" as a "work prepared by an officer or employee of the United States Government as part of that person's official duties."   17 U.S.C. §101. "[A]ccording to the well-established rules of statutory construction, the court must ascribe the "ordinary, contemporary, common meaning" to the terms [in the

Copyright Act]." *Walton v. United States*, 80 Fed. Cl. 251, 272 (Ct. Claims 2008), aff'd, 551 F.3d 1367 (Fed. Cir. 2009). In the context of this case, the ordinary and common meaning of the words "prepared by" in this sentence is obvious: "to put into written form." *Webster's New Collegiate Dictionary* at 909 (1973). Privately developed codes, standards and other reference works are not put into written form by government officers or employees; they were not "prepared by" officers or employees of the United States Government as part of their official duties. By the plain language of Section 101 of the Act, these works are not a "work of the United States Government," and accordingly these works are not something for which copyright protection is "unavailable" under Section 105. <u>Congress has clearly decided this question.</u>

Confirmation of this construction of the plain language of Section 105 of the Act can be found in Congress' explicit decision not to include within the scope of Section 105 works prepared by non-government employees and commissioned by the United States. Congress deliberately chose not to declare commissioned works "unavailable for copyright protection," and instead stated that the question of copyright in these cases could be left to the Congress enacting a statute, the agency enacting a regulation or the contract that commissioned the work from a private party after balancing the various interests. *Amici* point out that this is precisely the approach taken by OMB and OFR recently during their respective regulatory

reviews that addressed the Appellant's legal proposition that is now before the court. In those reviews, the two federal offices considered the implications of the concept of "reasonably available" and supported the long-standing policy of upholding the copyrights in standards incorporated by reference. *See* discussion *supra* at pages 11 to12 and *infra* at pages 22-23.

As explained by the House Judiciary Committee report on the 1976 revision to the Copyright Act:

> *The bill deliberately avoids making any sort of outright, unqualified prohibition against copyright in works prepared under Government contract or grant.* There may well be cases where it would be in the public interest to deny copyright in the writings generated by Government research contracts and the like; it can be assumed that, where a Government agency commissions a work for its own use merely as an alternative to having one of its own employees prepare the work, the right to secure a private copyright would be withheld. However, there are almost certainly many other cases where the denial of copyright protection would be unfair or would hamper the production and publication of important works. *Where, under the particular circumstances, Congress or the agency involved finds that the need to have a work freely available outweighs the need of the private author to secure copyright, the problem can be dealt with by specific legislation, agency regulations, or contractual restrictions.*

H.R. Rep. No. 1476, 94th Cong., 2d Sess. 59 (1976), U.S. Code Cong. & Admin. News 1976, pp. 5659, 5672 (emphasis supplied).

This is the law in this Circuit: "It is readily observable, therefore, that the language of the new Copyright Act does not prohibit copyright protection for federally commissioned works." *M.B. Schnapper Pub. Affairs Press v. Foley*, 667

F.2d 102, 108-09 (D.C. Cir. 1981).   *Schnapper* expressly acknowledged the Copyright Act's ability to recognize both private and public interests when private works are used by the Government:

> Without laying down a broad rule, we are reluctant to cabin the discretion of government agencies to arrange ownership and publication rights with private contractors absent some reasonable showing of a congressional desire to do so. The legislative history noted above indicates a desire to vest the government with some flexibility in making these arrangements.

*M.B. Schnapper Pub. Affairs Press v. Foley*, 667 F.2d at 109 (D.C. Cir. 1981).

Private standards referenced in federal statutes or federal agency regulations are an even more distinct species of works not "prepared by an officer or employee of the United States Government as part of that person's official duties" than a commissioned work.  While they share a common attribute with a commissioned work because they are not prepared by an officer or employee of the United States Government, they are more remote from a "work of the United States Government" than a commissioned work because they were prepared by non-governmental entities often well-before the government took an interest in the copyrighted codes, standards, and other reference works.[6]  Privately developed, copyrighted codes, standards, and other reference works incorporated by reference

---

[6]    Clearly, there is no "double subsidy" issue that Congress indicated might be a concern in the case of commissioned works.  H.R. Rep. No. 1476, 94th Cong., 2d Sess. 59 (1976), U.S. Code Cong. & Admin. News 1976, pp. 5659, 5672.

in laws and regulations deserve the availability of copyright protection even more so than commissioned works. They do not lose copyright protection under the clear terms of Section 105 of the Copyright Act, and the judiciary should recognize that the government is vested with "some flexibility in making arrangements" to preserve the copyright of the standards development organizations for the works they prepared.

### B.    Government Policy Supports Copyright Protection.

As discussed above, government policy asks government agencies who decide to incorporate privately developed codes and standards in their regulations whether the codes and standards are "reasonably available."  The holding sought by Appellant from this Court would be contrary to this firmly established government policy, and to the wide practice of federal, state, and local governments throughout the United States in adopting and referencing, without controversy, copyright-protected, privately authored works.

In keeping with the "reasonably available" requirement, *amici* make their standards available through multiple distribution channels, including on-line "reading rooms" and retail sales sites, and they offer them in a variety of formats, including subscriptions, compilations, and various other electronic products. ANSI, for example, offers an Incorporated By Reference ("IBR") Portal that provides free, read-only, online access to a number of standards that have been incorporated

by reference.  NEMA relies upon the ANSI IBR Portal to host 24 of its standards that have been incorporated by reference in federal regulations.  IAPMO, IEC and ISO also use the ANSI IBR Portal to make available their standards that have been incorporated by reference.  UL and IEEE host their own IBR portals that provide free, read-only, online access to each of their standards that have been incorporated by reference.  ASSE makes "tech briefs" freely available for each of its standards. NAESB provides free access to its standards through requests of waivers and requests for access through an electronic product that allows for electronic review for a limited period, at no fee. The plaintiffs make their standards available in this manner as well.

There is no compelling policy reason to treat model codes developed by private SDOs differently than any other standard or reference work referenced in law or regulation if it is reasonably available to the public.

### C.     Judicial Precedent Supports Copyright Protection.

The weight of judicial precedent does not support invalidating copyright in this case.  As two circuit courts have observed, works under copyright do not enter the public domain when they are referenced by government bodies in law. *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,* 121 F.3d 516, 519-20 (9th Cir. 1997); *CCC Info. Servs., Inc. v. Maclean Hunter Mkt Reports, Inc.,* 44 F.3d 61, 73-74 (2d Cir. 1994), *cert. denied*, 516 U.S. 817 (1995).  Specifically, the Second and

Ninth circuits have held that referencing a standard in federal and state regulations does not extinguish the copyright interest in the adopted work. *Practice Mgmt.*, 121 F.3d at 518-20 (holding that an American Medical Association catalogue of medical procedures did not lose its copyright when it was incorporated into federal regulations governing Medicare and Medicaid reimbursement); *CCC Info.Servs. at 73-74* (holding that a privately-developed guide to used car valuation did not enter the public domain after it was incorporated into several states' insurance statutes and regulations).

 *Amici* acknowledge that a closely divided *en banc* panel of the Fifth Circuit in *Veeck v S.Bldg Code Cong., Intl, Inc*. 293 F.3d 791, 803-05 (5th Cir. 2002) held that model codes incorporated into local law without modification results in the evisceration of copyright in those jurisdictions, but respectfully submit for the reasons stated that if those model codes are reasonably available to the public for viewing there is no compelling policy reason to treat these model codes differently than any other referenced work and deny copyright protection in those jurisdictions.  In any event, the Fifth Circuit held that other referenced works, including standards and other documents, were entitled to copyright protection as the First and Ninth Circuits have held.  *Veeck,* 268 F.2d at 803-05.

 Furthermore, as noted *supra*, the OFR considered in its Final Rule "the recent developments in Federal law, including the *Veeck* decision," and stated that

the developments have not "eliminated the availability of copyright protection for privately developed codes and standards referenced in or incorporated into Federal Regulations."  The OMB has stated that "the costs of standards development are substantial, and requiring that standards be made available 'free of charge' will have the effect of either shifting those costs onto others or else depriving standards developing bodies of the funding through which many of them now pay for the development of these standards.  Such changes could have serious adverse consequences on important governmental objectives, including the ability of U.S. regulators to protect the environment and the health, welfare, and safety of U.S. workers and consumers."  Proposed Revisions to OMB A-119 79 FR 8207 (February 11, 2014).

This case does not involve any attempt by Plaintiffs to withhold copyrighted standards or otherwise prevent discussion of these works nor is there any evidence of record that they have used copyright to do so. This is why the rule adopted by the Second and Ninth Circuits makes more sense than the one advanced by Public.Resource.Org.  The due process concern that "citizens must have free access to the laws which govern them," 628 at 734F.2d, and that copyright protection for these types of works might constrict entirely citizens' access to the laws, *id*. at 734-35 ignores a critical fact that it would be contrary to the SDO copyright owner's interest to prevent broad dissemination of these standards.  *See*

*Practice Mgmt.*, 121 F.3d at 519.  Indeed, the standards are developed precisely for the purpose of being disseminated; the issue for the SDOs is that their copyrights be protected so that they can continue to afford to develop standards.

Finally, the balance of competing interests at stake in such cases favors preserving copyright protection for works incorporated by reference into public enactments. The SDO community that develops standards serves an important public function and arguably does a better job than could the government alone in seeing that complex yet essential regulations are drafted, kept up to date and made available. If the *amici* SDOs were forced to give up their copyright interests once a government entity enacted their works into law, there would be little incentive to create such works, or at least to offer them to the government.  *Practice Mgmt.*, 121 F.3d at 518-19. [7]

### D.     The First Amendment Does Not Constrain Congress' Choices Made In the Copyright Act.

The Appellant's argument rests heavily on the assertion that the District Court's decision allows copyright law to "trump both the First Amendment and the public's interest in broad access to the law."  Appellant's Br. at 3.  "Concerning the

---

[7]     Judge Wiener, joined by 5 other members of the Fifth Circuit's *en banc* panel in Veeck, recognized the importance of balancing interests and not adopting an inflexible per se rule, such as that advocated by PublicResource.Org.  *Veeck v S.Bldg Code Cong., Intl, Inc.*, 293 F.3d 791, 826 (5th Cir. 2002)(Wiener, J., dissenting).  *Amici* commend Judge Wiener's analysis to this honorable court.

First Amendment, the Supreme Court has stated, "we have recognized that some restriction on expression is the inherent and intended effect of every grant of copyright." *Golan v Holder*, 565 US 302, 327-28 (2012).

The Copyright Clause and *First Amendment* were adopted close in time. This proximity indicates that, in the Framers' view, copyright's limited monopolies are compatible with free speech principles. *Eldred v Ashcroft*, 537 U.S. 186, 219 (2003). "The Framers intended copyright itself to be the engine of free expression. By establishing a marketable right to the use of one's expression, copyright supplies the economic incentive to create and disseminate ideas." *Id*. As *amici* have noted earlier, the economic incentive supplied by copyright makes possible these standards, guidelines, and best practices that serve a number of different stakeholders within the public as well as the federal and state governments. *Supra* at 8-10. And, as the District Court found, there is no evidence these works are not available to the public. *ASTM* at *37.

In a similar vein, the Supreme Court has rejected the argument that First Amendment requires that "the substantial public import of the subject matter" of a work "excus[es] a use that would ordinarily not pass muster as a fair use." *Harper & Row v, Nation Enterprises*, 471 US 539, 556 (1985).

Congress resolved the relationship between the First Amendment and the Copyright in the dichotomy between idea and expression. *Eldred v. Ashcroft*,

*supra* at 219.  The District Court was on sound factual ground when the court recognized that Plaintiffs' standards fell on the side of expression.  ASTM at *28. *See* footnote 1 *supra* citing *Veeck v S.Bldg Code Cong., Intl, Inc*. 293 F.3d at 802 (5th Cir. 2002).

###    E.    Recognizing Private and Public Interests Avoids A Substantial Constitutional Takings Question

Indeed, while addressing no actual due process notice problem, a rule that the adoption of a standard by a legislature or administrative body deprived the copyright owner of its property would, as one court observed, "raise very substantial problems under the Takings Clause of the Constitution." *CCC Info. Servs. v. MacLean Hunter Mkt. Reports, Inc*., 44 F.3d 61, 74 (2nd Cir. 1994), *cert. denied*, 516 U.S. 817 (1995); *Practice Mgmt. Info. Corp. v. AMA*, 121 F.3d 516, 520 (9th Cir. 1997), *cert. denied*, 524 U.S. 952 (1998)(same concern).  When considering the construction of Sections 101 and 105 of the Copyright Act, this Court should consider "the language and design of the statute as a whole," *United Video*, *supra* at 1184, and render these sections consistent with Section 201(e)[8] to

---

[8]    17 U.S.C. §201(e) (". . . no action by any governmental body or other official or organization purporting to seize, expropriate, transfer, or exercise rights of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title, except as provided under title 11."). *See also Roth v. Pritikin*, 710 F.2d 934, 939 (2nd Cir. 1983) (Plaintiff's interpretation of section of the Copyright Act raised serious Constitutional questions under Takings Clause).

foreclose a Takings Clause problem.

## CONCLUSION

For the forgoing reasons, *amici* respectfully ask this honorable court to enter

judgment for Plaintiffs.

December 6, 2017                    Respectfully submitted,

                                   **MORRIS, MANNING & MARTIN, LLP**


                                   */s/ Bonnie Y. Hochman Rothell*
                                   Bonnie Y. Hochman Rothell
                                   1401 Eye Street, N.W., Suite 600
                                   Washington, D.C. 20005
                                   bhrothell@mmmlaw.com
                                   Telephone:  (202) 408-5153
                                   Facsimile:   (202) 408-5146

                                   **CARTER LEDYARD & MILBURN LLP**
                                   Gerald W. Griffin
                                   2 Wall Street
                                   New York, NY 10005
                                   griffin@clm.com
                                   Telephone:  (212) 732-3200
                                   Facsimile:   (212) 732-3232

                                   *Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C) and D.C. Cir. R. 32(e), I certify that this brief complies with the applicable type-volume limitations. This brief was prepared using a proportionally spaced typeface using Microsoft Word version 14 in 14-point Times New Roman.  Exclusive of the portions exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and D.C. Cir. R. 32(e)(1), this brief contains 6,432 words as reported by the Microsoft Word version 14 word count feature.

**MORRIS, MANNING & MARTIN, LLP**

*/s/ Bonnie Y. Hochman Rothell*
BONNIE Y. HOCHMAN ROTHELL
1401 EYE STREET, N.W., SUITE 600
WASHINGTON, D.C. 20005
BHROTHELL@MMMLAW.COM
TELEPHONE:  (202) 408-5153
FACSIMILE:   (202) 408-5146

## CERTIFICATE OF SERVICE

I hereby certify that, on December 6, 2017, I electronically filed the foregoing **Brief of *Amicus Curiae*** with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit using the appellate CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ Bonnie Y. Hochman Rothell*
BONNIE Y. HOCHMAN ROTHELL