IN THE

# United States Court of Appeals

### For The

# District of Columbia Circuit

Nos. 17-07035, 17-07039

_____

Public.Resource.Org, Inc.,

*Appellant,*

vs.

American Society for Testing and Materials, et al.,

*Appellee.*

_____

**On Appeal from**
**U.S. District Court for the District of Columbia**
**Honorable Tanya S. Chutkan**
**Case No. 1:13-cv-01215**

_____

**CORRECTED BRIEF OF *AMICI CURIAE* AMERICAN MEDICAL ASSOCIA-
TION, AMERICAN DENTAL ASSOCIATION, AND AMERICAN HOSPITAL
ASSOCIATION IN SUPPORT OF APPELLEES**

_____

JACK R. BIERIG
TACY F. FLINT
BENJAMIN I. FRIEDMAN
SIDLEY AUSTIN LLP
ONE SOUTH DEARBORN STREET
CHICAGO, IL 60603
TELEPHONE: (312) 853-7000
FACSIMILE: (312) 853-7036

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**(A)    Parties and Amici.** Except for the following, all parties, interveners, and *amici* appearing before the district court and in this Court are listed in the Briefs for Plaintiffs-Appellees filed on November 8, 2017.

American Medical Association

American Dental Association

American Hospital Association

**(B)    Rulings Under Review.** References to the rulings at issue appear in the Briefs of Plaintiffs-Appellees filed on November 8, 2017.

**(C)    Related Cases.** The case on review was not previously before this Court. To counsels' knowledge, other than the cases listed in the Briefs of Plaintiffs-Appellees filed on November 8, 2017, there are no other related cases currently pending in this Court or any other court.

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Circuit Rule 26.1, *Amici Curiae* state that the American Medical Association, American Dental Association, and American Hospital Association have no parent corporations and no publicly held company has a 10% or greater ownership interest in them. The Associations are not-for-profit associations consisting of physicians, dentists, hospitals, and hospital administrators.

## STATEMENT OF CONSENT TO FILE AND SEPARATE BRIEF-ING, AND DISCLOSURE OF RELATIONSHIPS WITH PARTIES AND COUNSEL

Pursuant to Federal Rule of Appellate Procedure 29(a), all parties received appropriate notice of and consented to the filing of this brief. Pursuant to Rule 29(c)(5), no counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief. No person or entity, other than *Amici*, made a monetary contribution to the preparation of this brief.

Pursuant to Circuit Rule 29(d), *Amici Curiae* state that separate briefs are necessary because the other *Amici* represent the insurance in-dustry—whose interests, although somewhat analogous, are not aligned completely with *Amici Curiae*.

# TABLE OF CONTENTS

INTEREST OF *AMICI CURIAE* ................................................................. 1

SUMMARY OF ARGUMENT .................................................................. 4

ARGUMENT .......................................................................................... 7

    I.    The Federal Government Has Long Relied On—And Benefited From—Development Of Copyrighted Works By Private Entities. ........................................................................................... 7

    II.    Privately-Created Works Are Not Deprived Of Copyright Protection When The Government Requires Their Use............. 16

        A.    Federal Legislation and Regulations Have Consistently Provided That Required Use Does Not Divest Copyright Or Constitute A Taking. ............................ 16

        B.    Courts Have Confirmed That Government Use Does Not Invalidate Copyrights. ........................................... 22

    III.    If The Law Were As Public.Resource.Org Contends, The "Progress of Science and Useful Arts" Would Be Undercut. ...... 27

CONCLUSION ...................................................................................... 30

## TABLE OF AUTHORITIES

**Cases**                                                    **Page(s)**

*Am. Dental Ass'n v. Delta Dental Plans Ass'n,*
  126 F.3d 977 (7th Cir. 1997)..............................2, 11, 27, 29

*Am. Soc'y for Testing & Materials v. Public.Resource.Org,*
  *Inc.,*
  No. 13-cv-1215 (TSC), 14-cv-0857 (TSC), 2017 WL 473822
  (D.D.C. Feb. 2, 2017)........................................................6

*Auer v. Robbins,*
  519 U.S. 452 (1997)..........................................................26

*Banks v. Manchester,*
  128 U.S. 244 (1888).............................................23, 24, 25

*Building Officials & Code Administration v. Code*
  *Technology, Inc.,*
  628 F.2d 730 (1st Cir. 1980) ...........................................24

*CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.,*
  44 F.3d 61 (2d Cir. 1994) ...........................................23, 24

*Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,*
  467 U.S. 837 (1984).........................................................26

*Cty of Suffolk, NY v. First Am. Real Estate Sols.,*
  261 F.3d 179 (2d Cir. 2001) ...........................................23

*Mazer v. Stein,*
  347 U.S. 201 (1954).........................................................28

*Neotonus, Inc. v. Am. Med. Ass'n,*
  554 F. Supp. 2d 1368 (N.D. Ga. 2007) *aff'd* 270 Fed. App'x
  813 (11th Cir. 2008) ..............................................10, 11, 27

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n,*
  121 F.3d 516 (9th Cir. 1997)...........................1, 8, 13, 23, 24

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984) ...................................................................... 28

*Veeck v. Southern Building Code Congress International,
    Inc.*,
    293 F.3d 791 (5th Cir. 2002) (en banc) ........................................ 24, 25

*Wheaton v. Peters*,
    33 U.S. 591 (1834) ........................................................................ 6, 23

## Constitutional Provisions

U.S. Const., Art. I, § 8 .................................................................. 28

## Statutes

15 U.S.C. § 272 ............................................................................. 21

17 U.S.C. § 101 ............................................................................. 19

17 U.S.C. § 105 ............................................................................. 19

28 U.S.C. § 105 ............................................................................... 5

42 U.S.C. § 1320d-3 ........................................................................ 2

42 U.S.C. § 1395w-4(c)(5) .............................................................. 8

The Copyright Act of 1909 § 7, Pub. L. No. 60-349, 35 Stat.
    1075 (1909) .............................................................................. 18, 19

Health Insurance Portability and Accountability Act of 1996,
    Pub. L. No. 104-191, 110 Stat. 1936 (1996) ................................ 2, 9

National Technology Transfer and Advancement Act of 1995,
    § 12(d), Pub. L. No. 105-113, 110 Stat. 775 (1995) ...................... 21

Pub. Res. No. 57-37, 32 Stat. 746 (1902) .................................... 17

Pub. Res. No. 59-41, 34 Stat. 836–37 (1906) .............................. 17

## Regulations

42 C.F.R. § 424.32(b) ............................................................ 3, 9

42 C.F.R. § 433.112(b)(2) ...................................................... 3, 9

48 Fed. Reg. 16750-01, 16753 (Apr. 19, 1983) ....................... 1, 8

50 Fed. Reg. 40895-04 (Oct. 7, 1985) ......................................... 8

58 Fed. Reg. 57643-01(Oct. 26, 1993) ................................... 8, 21

63 Fed. Reg. 8546-01, 8553 (Feb. 19, 1998) ............................. 21

65 Fed. Reg. 50312-01 (Aug. 17, 2000) ........................... 2, 9, 22

69 Fed. Reg. 15837-01 (Mar. 26, 2004) ..................................... 23

78 Fed. Reg. 60784-01 (Oct. 2, 2013) ....................................... 26

81 Fed. Reg. 80170-01, 80172 (Nov. 15, 2016) ......................... 22

## Legislative Materials

H.R. Rep. 94-1476, 94th Cong., 2nd Session, p. 60 (1976)..................... 20

H.R. Rep. 28192, 60th Cong., 2d Session, p. 10 (1909) ..................... 16, 18

S. Rep. No. 94-473, 94th Cong., 1st Session, p. 57 (1975) ..................... 20

## Other Sources

Aaron B. Caughey, *Prepregnancy Obesity & Severe Maternal Morbidity What Can Be Done?*. JAMA 318(18):1765–1766 (Nov. 14, 2017), *available at* https://jamanetwork.com/journals/jama/article-abstract/2662873 (last visited Dec. 6, 2017) ....................................... 14

Am. Med. Ass'n, *Finding Coding Resources*, available at https://www.ama-assn.org/practice-management/find-coding-resources (last visited Dec. 6, 2017) ....................................... 13

Am. Medical Ass'n, *The CPT® Code Process*, available at https://www.ama-assn.org/practice-management/cpt-code-process (last visited Dec. 6, 2017) ....................................................... 11

Brief of the United States as Amicus Curiae, *Practice Mgmt. Info. Corp. v. Am. Medical Ass'n*, No. 97-1254 (1997) .............................................................. 25

Brief of the United States as Amicus Curiae, *S. Building Code Congress Int'l, Inc. v. Veeck*, No. 02-355 (2002) ................................................................ 25

Centers for Medicare & Medicaid Services, *CPT and CDT Copyright Rules*, available at www.cms.gov/Outreach-and-Education/Medicare-Learning-Network-MLN/MLNEdWebGuide/Downloads/CMS-CPT-and-CDT-Copyright-Rules.pdf (last visited 11/30/2017) .................................... 22

Centers for Medicare and Medicaid Services, *Medicare Claims Processing Manual*, Chapter 23 ............................................ 23

Dep't of Health and Human Services, Pub. 100-04, Transmittal 43 (Dec. 19, 2003) ......................................................... 2, 3

Indian Health Serv., *Indian Health Manual*, Part 5, Ch. 1, § 5-1.3F, *available at* https://www.ihs.gov/ihm/index.cfm?module=dsp_ihm_pc_p 5c1#5-1.3F (last visited Dec. 6, 2017) ................................................. 10

Nat'l Uniform Billing Comm., *About the NUBC*, http://www.nubc.org/aboutus/index.dhtml (last visited Dec. 6, 2017) ........................................................................... 9

Nat'l Research Council, Standards, *Conformity Assessment, & Trade: Into the 21st Century* (1995), *available at* https://www.nap.edu/catalog/4921/standards-conformity-assessment-and-trade-into-the-21st-century......................................... 7

Sonja Williams, Naga Shanmugam, et al., *Using Uniform Bill (UB)-04 Administrative Claims Data to Describe Hospital-Based Care*, 2015), *available at:* https://fcsm.sites.usa.gov/reports/research/2015-research/ (last visited Dec. 6, 2017) ................................................................... 14

TRICARE Operations Manual 6010.59-M, Chapter 19, Section 2 (Feb. 1, 2008), *available at* http://manuals.tricare.osd.mil/ (last visited Dec. 6, 2017) ................ 10

TRICARE Operations Manual 6010.59-M, Chapter 8, Section 1, at 6 (Apr. 1, 2015), *available at* http://manuals.tricare.osd.mil/ (last visited Dec. 6, 2017) ................ 10

U.S. Dep't of Agriculture, *Rules and Specifications for Grading Lumber Adopted by the Various Lumber Manufacturing Associations of the United States* (1906), a*vailable at* https://archive.org/details/rulesspecificati71hods (last visited Dec. 6, 2017) ....................................................................... 18

## INTEREST OF *AMICI CURIAE*

*Amici Curiae* are associations that represent providers of health care, including physicians, dentists, and hospitals. Each *Amicus* has worked to develop and maintain a work that health care professionals must use in submitting financial and administrative claims to the government but that may also be used for other purposes such as health care outcomes research. Each owns the copyright in its work. The decision in this appeal may affect the validity of the copyrights in *Amici*'s works, and the ability of *Amici* to devote the resources necessary to maintaining and improving their usefulness.

*American Medical Association* ("*AMA*"). The AMA is the largest professional association of physicians, residents, and medical students in the United States. It holds the copyright in a work entitled "Current Procedural Terminology" (or "CPT")—the most widely accepted nomenclature for the reporting of physician procedures and services under government and private health insurance programs. *See Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516, 517 (9th Cir. 1997). Since at least 1983, the federal government has required use of CPT for a physician to obtain reimbursement under the Medicare and Medicaid programs. *See* 48 Fed.

1

Reg. 16750-01, 16753 (Apr. 19, 1983). In 2000, the Department of Health and Human Services ("HHS") designated CPT as a standard code set under Section 1173 of the Health Insurance Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (1996) ("HIPAA") codified at 42 U.S.C. § 1320d-3. Because health care providers must "comply with [any] standard or specification" designated by HHS, HIPAA § 1175(b)(1)(A), use of CPT is required to report physician services for all financial and administrative health care transactions sent electronically. *See also* 65 Fed. Reg. 50312-01, 23–30 (Aug. 17, 2000).

*American Dental Association* ("*ADA*"). The ADA is the nation's largest dental association, representing more than 161,000 dentist members across the country. It holds the copyright in a work entitled the "Code of Dental Procedures and Nomenclature" (or "CDT"). *See Am. Dental Ass'n v. Delta Dental Plans Ass'n*, 126 F.3d 977 (7th Cir. 1997). In 2000, HHS designated CDT as a HIPAA-compliant code set. 65 Fed. Reg. at 50323–30. As a standard code set, health care providers must use CDT to report dental services for all financial and administrative health care transactions sent electronically. HIPAA § 1175(b)(1)(A). As with CPT, HHS requires use of CDT in submitting claims for reimbursement. *See* Dep't of

2

Health & Human Servs., Pub. 100-04, Transmittal 43 (Dec. 19, 2003); 42
C.F.R. § 433.112(b)(2).

*American Hospital Association* ("*AHA*"). The AHA represents more
than 5,000 hospitals, health care systems, and other health care organi-
zations. It also has more than 42,000 individual members. AHA owns the
copyright in the *Official UB-04 Data Specifications Manual*, which is a
uniform billing form that institutional health care providers must use to
submit claims to the government and third-party payers. As with both
CPT and CDT, the federal government mandates the use of UB-04 when
submitting claims to Medicare and Medicaid. *See* 42 C.F.R. § 424.32(b);
*see also* Dep't of Health and Human Services, Pub. 100-04, Transmittal
1104 (Nov. 3, 2006) (providing that UB-04 is the required form for billing
CMS).

## SUMMARY OF ARGUMENT

At stake in this case is a system of public-private cooperation that has been in effect for more than a hundred years. This system has allowed the federal government to use, and require use of, privately developed works of authorship that are useful in the discharge of government responsibilities and that contribute to the efficient operation of markets. This system has enabled the government to avoid the substantial administrative and financial burdens associated with creating, maintaining, and updating works that can most effectively be authored and kept current by private entities that are most knowledgeable about their respective fields.

The law has long protected the copyrights in privately created works that are used by the federal government and whose use is required by the government. Before the Copyright Act of 1909, each time that the federal government used privately-created works, Congress passed special legislation to ensure that government use did not undermine the copyrights in these works. *Infra* Part II.A. The 1909 Act relieved Congress

4

of this burden by stating explicitly that government use does not "abridge" or "annul" the copyrights of works used by the government.

Congress carried this principle forward in the 1976 Copyright Act in what is now 28 U.S.C. § 105 by making only "work[s] of the United States Government" ineligible for copyright protection. *Infra* Part II.A. Notably, the Act did not make works of private entities that are used by the federal government, or whose use is required by the government, ineligible for copyright protection. In reliance on this understanding, *Amici Curiae* allowed the federal government to adopt their copyrighted works and to mandate that private parties use them.

Public.Resource.Org and its *Amici* are now asking this Court to undo the settled law that protects the copyright in privately-created works that are used by the government or whose use is required by the government. They contend that the public interest is best served by divesting the copyrights in all such works and making them available to the public free of charge. As a policy matter, this contention is without merit because loss of the copyright would undercut the ability of private organizations to create, maintain, and update works whose use might be required by the government. Thus, the position of Appellant and its *Amici*

5

would fly in the face of the very purpose of copyright law as enunciated in the Constitution: "To promote the progress of science and useful arts."

As a matter of law, the position of Appellant, as the district court noted, would undo a long line of precedent on this issue. *Am. Soc'y for Testing & Materials v. Public.Resource.Org, Inc.*, No. 13-cv-1215 (TSC), 14-cv-0857 (TSC), 2017 WL 473822, at *10–14 (D.D.C. Feb. 2, 2017). To be sure, a well-established judicial exception makes statutory language and judicial opinions not copyrightable. *See Wheaton v. Peters*, 33 U.S. 591, 668 (1834). But that exception extends no further than statutes, model statutes, and judicial opinions. No court has ever held that this exception extends to copyrights in privately-created works whose use is required by the government—particularly where those works have addi-

tional uses. If the fundamental change in copyright law proposed by Appellant is to be made, the change must come from Congress—not through judicial amendment of the Copyright Act.

## ARGUMENT

## I.  The Federal Government Has Long Relied On—And Benefited From—Development Of Copyrighted Works By Private Entities.

The federal government has long recognized the benefits of relying on the private sector to satisfy its need for certain kinds of works, including standards and works of nomenclature. Private organizations are able to create such works more quickly and more efficiently than the government. Moreover, practical difficulties may hamper the government's ability to create such works on its own. Nat'l Research Council, *Standards, Conformity Assessment, & Trade: Into the 21st Century*, p. 56 (1995), *available at* https://www.nap.edu/catalog/4921/standards-conformity-assessment-and-trade-into-the-21st-century. Indeed, federal agencies often lack the time, resources, or expertise to create and update these types of works, and these agencies face "stringent due process requirements" that provide "opportunities for private interests to delay regulatory action

through the legal system." *Id*. Relying on privately authored works "eliminates the costs to the Government of developing its own standards," while furthering the "policy of reliance upon the private sector to supply government needs for goods and services." Office of Mgmt. & Budget, Circular No. A-119, 58 Fed. Reg. 57643-01, 57645 (Oct. 26, 1993).

*Amici*'s works are perfect examples of the benefits achieved when the government relies on privately-created works. The AMA published the first edition of CPT in 1966 with the aim of providing a uniform work that would accurately describe medical, surgical, and diagnostic services and would serve as an effective means for reliable nationwide communications among physicians, patients, and third parties. *See Practice Mgmt.*, 121 F.3d at 517. The ADA created the CDT a few years later, in 1969, to provide a uniform language with which to communicate about dental procedures. In 1977, Congress directed the Health Care Financing Administration to establish a uniform procedure coding work for the coding of all physician services. *See* 42 U.S.C. § 1395w-4(c)(5). Instead of creating a new coding work from scratch, the government incorporated CPT into the Healthcare Common Procedure Coding System ("HCPCS"). *See* 48 Fed. Reg. at 16753; 50 Fed. Reg. 40895-04, 40898 (Oct. 7, 1985). In the

8

early 1980's, AHA created the predecessor to UB-04, which was then adopted as the official billing form for government programs like Medicare and Medicaid. *See* 42 C.F.R. § 433.112(b)(2).

Over the ensuing decades, the government—and the broader health care community—have increasingly relied on works like *Amici*'s. Since the early 1980's, the federal government has required the use of CPT in reporting medical procedures and in obtaining reimbursement under the Medicare and Medicaid programs, and subsequently required use of CDT and AHA's uniform billing forms. *See* 42 C.F.R. § 433.112(b)(2); Nat'l Uniform Billing Comm., *About the NUBC*, http://www.nubc.org/aboutus/index.dhtml (last visited Dec. 6, 2017). In response to the enactment of the Health Insurance Portability and Accountability Act ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996), HHS mandated the use of CPT and CDT—for physician and dental services, respectively—in all financial and administrative health care transactions sent electronically. *See* 65 Fed. Reg. at 50323–30. The government likewise requires use of UB-04 when submitting reimbursement claims to government programs. *See* 42 C.F.R. § 424.32(b); Dep't of Health & Human Servs., Pub. 100-04, Transmittal 1104 (Nov. 3, 2006) (providing that UB-04 is the required form for

9

billing CMS). The government's reliance on *Amici*'s works has only grown since—these works are required for reporting and reimbursement in the TRICARE, the Children's Health Insurance Program, and Indian Health Services.[1]

During this time, *Amici* have spent tremendous resources to maintain their works. In particular, the AMA has spent millions of dollars maintaining the more than 10,000 codes and descriptors that comprise CPT. Through the CPT Editorial Panel, the AMA revises, updates, and modifies CPT to account for the latest medical advances and changes in medical practice. *See Neotonus, Inc. v. Am. Med. Ass'n*, 554 F. Supp. 2d 1368, 1371–72 (N.D. Ga. 2007) (explaining the process for adding, deleting, and modifying codes) *aff'd* 270 Fed. App'x 813 (11th Cir. 2008). The

---

[1] *See, e.g.*, TRICARE Operations Manual 6010.59-M, Chapter 19, Section 2, at 6 (Feb. 1, 2008) (requiring use of CPT and CDT), *available at* http://manuals.tricare.osd.mil/ (last visited Dec. 6, 2017); TRICARE Operations Manual 6010.59-M, Chapter 8, Section 1, at 6 (Apr. 1, 2015) (designating UB-04 as a required form for processing payments), *available at* http://manuals.tricare.osd.mil/ (last visited Dec. 6, 2017); Indian Health Serv., *Indian Health Manual*, Part 5, Ch. 1, § 5-1.3F, (designating CPT and CDT as required code sets, and UB-04 as a required form) *available at* https://www.ihs.gov/ihm/index.cfm?module=dsp_ihm_pc_p5c1#5-1.3F (last visited Dec. 6, 2017);

CPT Editorial Panel consists of 17 members, comprised of eleven physicians nominated by national medical specialty societies (one of whom must be an expert in performance management), four representatives from payers (including one representative from the Centers for Medicare & Medicaid Services), and two representatives from the CPT Healthcare Professionals Advisory Committees. The Editorial Panel meets three times a year to consider changes to CPT submitted by a broad range of stakeholders, including medical specialty societies, individual physicians, hospitals, and third-party payers. Am. Medical Ass'n, *The CPT® Code Process*, *available at* https://www.ama-assn.org/practice-management/cpt-code-process (last visited Dec. 6, 2017). Over the course of the three meetings, the panel addresses annually nearly 350 major topics, which involve more than 3,000 individual votes. *Id*. Facilitating the Editorial Panel's work is no small task, requiring dozens of dedicated support staff and substantial time commitments from panel members and the more than 100 volunteer physicians and health care professionals

that makeup the CPT Advisory Committee. *Neotonus*, 554 F. Supp. 2d at 1371.

The American Dental Association has similarly spent tremendous resources to maintain and update CDT. *See Am. Dental Ass'n*, 126 F.3d at 979. The ADA's Council on Dental Benefit Programs is responsible for maintaining the CDT Code in accordance with ADA Bylaws and policy, and applicable federal regulations. The Council in turn established the Code Maintenance Committee to help maintain CDT and ensure that all stakeholders (*e.g.*, ADA members, dental specialty organization, and payers) have an active role in evaluating and voting on CDT Code changes. The Code Maintenance Committee holds public meetings annually to consider and vote on changes to CDT. At these annual meetings, dozens of proposed code changes are discussed, debated, and voted on to ensure that CDT reflects changes in dental knowledge and technology and advances in dental care. With the ability to rely on CDT and the continuing efforts of the ADA to maintain and improve CDT, the government and the dental care delivery system have reaped tremendous benefits.

So too with the AHA's *Official UB-04 Data Specifications Manual* and form. The manual and form include codes representing important

information about claims for medical services provided to patients, such as the type of facility in which treatment was provided, the patient's condition, the patient's discharge status, the diagnosis and procedures performed, and ancillary service or billing arrangements. The data set is currently used by all providers for reimbursement from payers. The AHA has continuously maintained and updated the uniform billing data set since its inception. In doing so, the AHA relieves the government of the burden and expense of maintaining and updating the UB-04 data set.

Throughout this time, *Amici* have ensured that their works remain easily accessible to the public. *See, e.g.*, *Practice Mgmt.*, 121 F.3d at 517. For example, the Centers for Medicare & Medicaid Services ("CMS") makes CPT available free of charge to the public as part of the Level One component of HCPCS, pursuant to a royalty free license. Members of the public can also purchase the current print edition of CPT for $92.95. Lastly, for those who do not want to purchase a print edition or electronic license, the AMA allows members of the public to search for CPT codes online at no cost through its website. *See* Am. Med. Ass'n, *Finding Coding*

*Resources*, *available at* https://www.ama-assn.org/practice-manage-ment/find-coding-resources (last visited Dec. 6, 2017).[2]

By supplying a uniform and creative nomenclature for medical procedures and method for reporting billing data, CPT, CDT, and UB-04 have become essential tools not only for the efficient processing of claims to the two largest medical payers in the country, Medicare and Medicaid, but also for medical research and other advances. CPT and CDT codes allow medical specialty societies to develop clinical guidelines; payers to track utilization of medical procedures and develop alternative payment models; and researchers and educators to develop new performance measures, identify patients with certain medical conditions, study the incidence of those conditions, and analyze the costs and effectiveness of treatment options.[3] UB-04 has similarly become critical in timely and accurate analysis of utilization of health care services. For example,

---

[2] The widespread availability of works like *Amici*'s undercuts Appellant's argument that government use of copyrighted works violates the First, Fifth, or Fourteenth Amendments. Those Amendments do not undermine copyrights in readily available works used by the government. *See* Am. Soc'y for Testing & Materials Br. 45–49 & AERA Br. 15–20.

[3] *See, e.g.*, Aaron B. Caughey, *Prepregnancy Obesity & Severe Maternal Morbidity What Can Be Done?* JAMA 318(18):1765–1766 (Nov. 14, 2017) (using CPT codes to analyze the relationship between prepregnancy obe-

whereas it once took five years for the Centers for Disease Control and Prevention's National Center for Health Statistics ("NCHS") using surveys to gather data about 11,000 inpatients diagnosed with traumatic brain injury, UB-04 has allowed NCHS to gather the same amount of data in just a year. Sonja Williams, Naga Shanmugam, et al., Nat'l Center for Health Statistics, *Using Uniform Bill (UB)-04 Admin. Claims Data to Describe Hospital-Based Care* (2015), *available at* https://fcsm.sites.usa.gov/reports/research/2015-research/ (last visited Dec. 6, 2017). Not only does UB-04 enable NCHS to gather this data more efficiently, it is also permits NCHS to collect twice as many variables. *Id*. In these ways, CPT, CDT, and UB-04 have facilitated advances in medicine and patient care at no cost to the government.

In the health care arena, the government and the public have benefitted greatly from the work of *Amici* in creating and maintaining works like CPT, CDT, and UB-04. The efficient administration of our health

---

sity and maternal morbidity), *available at* https://jamanetwork.com/journals/jama/article-abstract/2662873; Ana Neumann, Elisbeth Kalenderian, et al., *Evaluating Quality of Dental Care Among Patients with Diabetes*, 148 J. Am. Dent. Assn. 634 (Sept. 2017) (using CDT codes to analyze quality of dental care for patients with diabetes).

15

care system, both public and private, depends heavily on the use of privately-created code sets developed and maintained at great cost by *Amici*. Without these works, the federal government would have had to commit enormous time and resources to creating its own works. It would have had to commit even more resources to updating and maintaining this work over the years. The government, however, has realized the benefits of using the best privately-created works without bearing any of its costs. Society is better off as a result.

## II.    Privately-Created Works Are Not Deprived Of Copyright Protection When The Government Requires Their Use.

### A.    Federal Legislation and Regulations Have Consistently Provided That Required Use Does Not Divest Copyright Or Constitute A Taking.

The law has long assured authors that a government requirement to use their works does not invalidate the copyrights in those works or constitute a taking. To the contrary, every branch of government to consider the issue has determined that privately owned copyrights are not divested by required use.

Before the Copyright Act of 1909, copyright owners hesitated to allow the government to use their works out of concern that such use would invalidate their copyrights. H.R. Rep. 28192, 60th Cong., 2d Session, p.

16

10 (1909). To alleviate these concerns, Congress passed special legislation declaring that the government's use did not affect the validity of copyrighted works.[4] One of the earliest examples of this practice involved technical specifications somewhat analogous to those at issue in this case.

Specifically, the U.S. Forest Service wanted to publish a book called "Rules and Specifications for Grading Lumber Adopted by the Various Lumber Manufacturing Associations of the United States." That book included rules adopted and copyrighted by local lumber associations. Pub. Res. No. 59-41, 34 Stat. 836 (1906). In exchange for the associations' consent to use their copyrighted works, Congress passed a special act declaring that the copyrighted matter "shall be as fully protected under the copyright laws as though published by the proprietors themselves." *Id*. The U.S. Department of Agriculture printed the full text of the resolution just after the title page, and noted in the introduction that "[s]everal of

---

[4] *See* Pub. Res. No. 55-37, 32 Stat. 746 (1902) (providing that "copyrighted matter, wherever it appears in [the government's publication] shall be plainly marked as copyrighted matter, and shall be as fully protected under the copyrighted laws as though published by the proprietors themselves").

17

the associations have copyrighted their rules . . . [which] are protected by Public Resolution No. 41."[5]

With the Copyright Act of 1909, Congress eliminated the need to pass a special act each time that the government wanted to use privately-created works. In the words of the House Report, "[i]t was thought best, instead of being obliged to resort every little while to a special act, to have some general legislation on this subject." H.R. Rep. 28192, 60th Cong., 2d Session, p. 10 (1909). The result was a clause in Section 7 of the 1909 Copyright Act which provided that "the publication or republication by the Government, either separately or in a public document, of any material in which copyright is subsisting shall not be taken to cause any abridgement or annulment of the copyright or to authorize any use or

---

[5] U.S. Dep't of Agric., *Rules & Specifications for Grading Lumber Adopted by the Various Lumber Mfg. Ass'ns of the U.S.* (1906), a*vailable at* https://books.google.com/books?id=rmIDAAAAYAAJ&oe=UTF-8&hl=en).

18

appropriation of such copyright material without the consent of the copyright proprietor." The Copyright Act of 1909 § 7, Pub. L. No. 60-349, 35 Stat. 1075 (1909).

The Copyright Act of 1976 maintained the 1909 Act's protection for privately-owned works used by the government. Section 105 of the 1976 Act excludes from copyright protection only "work[s] of the United States government," which the Act defines as a "work prepared by an officer or employee of the United States Government as part of that person's official duties." 17 U.S.C. §§ 101, 105. Significantly, this language is limited to works prepared by government officials as part of their duties. It does not extend to privately-created works utilized by the government.

With this language, Congress intended to preserve the exclusion of Section 7 of the 1909 Act, as the House and Senate Reports on the bill make clear. Section 7's exclusion was necessary in the 1909 Act because the first section of that provision rendered ineligible for copyright protection "any publication of the United States Government," which courts could interpret as withdrawing copyright protection for privately-owned

works used by the government. H.R. Rep. 94-1476, 94th Cong., 2nd Session, p. 60 (1976). The exclusion resolved any ambiguity by preserving copyright protection for privately-created works.

By contrast, § 105's exclusion applies only to "any work of the United States Government," which is defined "in such a way that privately written works are clearly excluded from the prohibition." *Id*. Given this change in language, Congress saw "no need to restate [Section 7 of the 1909 Act] explicitly in the context of section 105" because "there is nothing in section 105 that would relieve the Government of its obligation to secure permission in order to publish a copyrighted works, and publication or other use by the Government of a private work could not affect its copyright protection in any way." S. Rep. No. 94-473, 94th Cong., 1st Session, p. 57 (1975).[6]

Interpreting these provisions, the Office of Management and Budget has made it clear that government adoption and use of voluntary

---

[6] *See also* H.R. Rep. 94-1476, 94-1476, 94th Cong., 2nd Session, p. 60 (1976) ("The committee here observes: (1) there is nothing in section 105 that would relieve the Government of its obligation to secure per-mission in order to publish a copyrighted work; and (2) publication or other use by the Government of a private work would not affect its copyright pro-tection in any way.").

standards, including works of nomenclature, does not affect the enforce-ability of the copyrights in such works. The 1993 version of OMB Circular A-119, stated that, although the government should adopt voluntary standards, "[s]uch adoption should take into account the requirement of copyright and other similar restrictions." OMB, Circular No. A-119(7)(a)(5), 58 Fed. Reg. 57643-01, 57645 (Oct. 26, 1993). Congress then codified OMB Circular A-119 as binding federal law in the National Tech-nology Transfer and Advancement Act of 1995, § 12(d), Pub. L. No. 105-113, 110 Stat. 775 (1996) codified at 15 U.S.C. § 272.

With this Congressional endorsement, the OMB revised Circular A-119 again in 1998 to *strengthen* copyright protection for works used by the government. Whereas the prior version directed agencies to "take into account the requirements of copyright," the 1998 version explained that agencies "must observe and protect the rights of the copyright holder" when using privately owned works. 63 Fed. Reg. 8546-01, 8553–55 (Feb. 19, 1998). The January 2016 revision to OMB Circular A-119 maintained this language, while addressing the free-access problem associated with government use of copyrighted works. The 2016 circular encourages agencies to "promote the availability of [copyrighted] materials" that are

incorporated by reference, but only to the extent it is "consistent with applicable law" and "respect[s] the copyright owner's interest in protecting its intellectual property." OMB, Circular A-119, at 21 (Jan. 22, 2016), *available at* https://www.nist.gov/sites/default/files/revised_circular_a-119_as_of_01-22-2016.pdf.

Agencies generally have heeded this direction. Particularly in point is the regulation that designated CPT and CDT as HIPAA-compliant code sets. That regulation states explicitly that, "nothing in this final rule, including the Secretary's designation of standards, implementation specifications, or code sets is intended to divest any copyright holders of their copyrights in any work referenced in this final rule." 65 Fed. Reg. at 50324. The Federal Register and other government publications similarly display copyright notices along with new rules that utilize the copyrighted works of *Amici Curiae*.[7]

## B.   Courts Have Confirmed That Government Use Does Not Invalidate Copyrights.

Against this legal backdrop, courts consistently have held that copyrights are not invalidated by governmental adoption or mandated use of

---

[7] *See, e.g.*, Ctrs. for Medicare & Medicaid Servs., *CPT and CDT Copyright Rules*, *available at* www.cms.gov/Outreach-and-Education/Medicare-

the work. In *Practice Management*, the Ninth Circuit held that the AMA's copyright in CPT is valid even though HHS required use of CPT to obtain reimbursement from Medicare and Medicaid. 121 F.3d at 520. The Second Circuit similarly has held that state statutes requiring the use of a copyrighted compilation of used car values do not destroy the copyright in that work. *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.*, 44 F.3d 61, 73 (2d Cir. 1994). It reaffirmed that holding several years later. *See Cty of Suffolk, NY v. First Am. Real Estate Sols.*, 261 F.3d 179, 193–94 (2d Cir. 2001).

Relying primarily on *Wheaton v. Peters*, 33 U.S. 591 (1834) and *Banks v. Manchester*, 128 U.S. 244 (1888), Public.Resource.Org contends that works incorporated by reference into regulations are "laws" not amenable to copyright. Notably, these cases interpreted the predecessor to

---

Learning-Network-MLN/MLNEdWebGuide/Downloads/CMS-CPT-and-CDT-Copyright-Rules.pdf (last visited Dec. 6, 2017); 81 Fed. Reg. 80170-01, 80172 (Nov. 15, 2016) ("Throughout this final rule, we use CPT codes and descriptions to refer to a variety of descriptions. We note that CPT codes and descriptions are copyright 2015 American Medical Association."); 69 Fed. Reg. 15837-01, 15840 (Mar. 26, 2004) ("Displaying Material With CDT-4 Code" and displaying "American Dental Association's Copyright Notice"); Ctrs. for Medicare & Medicaid Servs., *Medicare Claims Processing Manual*, Chapter 23 (acknowledging that CPT and CDT are copyrighted works).

23

the 1909 Copyright Act. But to the extent that they remain good law, the exception that they establish to the general rule outlined above is limited to judicial opinions, statutes, and model statutes enacted into law. The exception for works that were designed as model laws does not extend to works whose use is required by the government, such as the works at issue here. Indeed, for works not designed as model statutes, courts have made clear that copyright protection remains so long as the works are reasonably accessible. *See Practice Mgmt.*, 121 F.3d at 520; *CCC Info. Sys.*, 44 F.3d at 74.

Thus, the case heavily relied upon by Appellant, *Veeck v. Southern Building Code Congress International, Inc.*, 293 F.3d 791 (5th Cir. 2002) (en banc), recognized the distinction between (a) cases dealing with works that were not designed as model statutes, such as *Practice Management* and *CCC Information Systems* and (b) cases dealing with model statutes that were propounded with the intent that they would be adopted as law, such as *Building Officials & Code Administration v. Code Technology, Inc.*, 628 F.2d 730 (1st Cir. 1980). The Court in *Veeck* read *Wheaton* and *Banks* as "[e]xcluding 'the law' from the purview of the copyright stat-

24

utes." 293 F.3d at 795. However, the Court properly excluded from characterization as "the law" privately-created works whose use the government requires. *Id*. at 804–05 ("The copyrighted works do not 'become law' merely because a statute refers to them."). For purposes of the exception to copyrightability, "the law" consists of judicial opinions and statutes, but not government requirements for "citizens to consult or use a copyrighted work in the process of fulfilling their obligations." *Id*.

It is notable in this connection that when the Supreme Court considered the petition for certiorari in *Practice Management*, the Solicitor General submitted a brief explaining that "[n]othing in the Copyright Act—either at the time of *Banks* or at present—would permit the termination of copyright protection for a work that was concededly entitled to such protection at the time it was written." Brief of the United States as Amicus Curiae at 7, *Practice Mgmt. Info. Corp. v. Am. Medical Ass'n*, No. 97-1254 (1997).

Later when expressing its views on the petition for certiorari in *Veeck*, the Solicitor General reaffirmed that statutory or administrative references to a privately copyrighted work do not mean that the public may copy it freely. Brief of the United States as Amicus Curiae at 11, *S*.

25

*Building Code Congress Int'l, Inc. v. Veeck*, No. 02-355 (2002). The Office of the Federal Register reaffirmed this distinction once more when it rejected Appellant's petition to modify the regulations governing incorporation by reference. *See* 78 Fed. Reg. 60784, 60792 (Oct. 2, 2013) ("Recent developments in Federal law, including the Veeck decision and the amendments to FOIA have not expressly overruled U.S. copyright law or the NTTAA, therefore, we agree with commenters who said that when the Federal government references copyrighted works, those works should not lose their copyright.").[8]

As demonstrated by the authority above, the exception on which Public.Resource.Org relies simply does not support its conclusion. That exception renders judicial opinions and statutes not amenable to copyright. No court has extended that exception to works merely referenced

---

[8] If the Court considers the Copyright Act ambiguous as to whether the copyrights in works incorporated by reference remain valid, it should defer to the interpretations of the Solicitor General and Office of Federal Register. *See Chevron U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984); *Auer v. Robbins,* 519 U.S. 452, 462 (1997) (That an "interpretation comes to [the Court] in the form of a legal brief . . . does not . . . make it unworthy of deference").

26

by statute or whose use is required by the government. This Court should not be the first to so hold.

## III. If The Law Were As Public.Resource.Org Contends, The "Progress of Science and Useful Arts" Would Be Undercut.

In reliance on this settled law, organizations like *Amici Curiae* have expended tremendous resources to create, maintain, and update works whose use has been required by the federal government. Without the ability to receive royalties based on copyright, *Amici Curiae* and similar organizations would lack the resources to create and maintain works of such high utility as CPT, CDT, and UB-04. *See Am. Dental Ass'n*, 126 F.3d at 979 (explaining "[b]lood is shed in the ADA's committees" when creating new CDT codes and descriptions); *Neotonus*, 554 F. Supp. 2d at 1371–72 (explaining that the CPT Editorial Panel "is supported by a large body of advisors . . . [including] more than 100 volunteer physicians and health care professionals"). The result would be at odds with the Con-stitutional aim of "promot[ing] the Progress of Science and the useful Arts." U.S. Const., Art. I, § 8.

At its core, copyrights provide an incentive for organizations like *Amici Curiae* to create useful works. The idea is that "by granting au-thors the exclusive rights to reproduce their works, they are given an

27

incentive to create," *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 477 (1984), and this incentive is "the best way to advance public welfare," *Mazer v. Stein*, 347 U.S. 201, 219 (1954). The resulting monopoly created by copyright thus rewards "author[s] in order to benefit the public." *Sony*, 464 U.S. at 477.

Public.Resource.Org's position would dramatically undercut these objectives. In this case, Appellant's position, if adopted by this Court, would invalidate copyrights in every work referenced or used in federal regulations or whose use is required by the government. The level of resources required for the maintenance and creation of those works at the level of utility that they provide, however, is possible only because the law has protected the copyrights in these works. Indeed, the AMA, ADA, and AHA spend substantial amounts of money creating and updating their works. These organizations depend on revenue from the licensing of these copyrighted works to permit them to devote the resources that

are required to produce works of maximum utility in reflecting changes in knowledge, technology, and practice.

Notably, *Amici Curiae* did not develop their works for government use but instead to fill private needs. However, they allowed the government to use these works in reliance on the well-established law that such use would not divest their copyrights. And equally notably, these works have utility independent of the uses mandated by the government.

Finally, there is another significant downside to divestiture of the copyright in each of the works in question: As long as the copyright is maintained, the copyright holder can prevent others from creating works similar to, but different from, the copyrighted works. The result of a loss of copyright in works such as CPT, CDT, and UB-04 would be an erosion of the uniformity that is essential to the usefulness of these works. *See Am. Dental Ass'n*, 126 F.3d at 981 (". . . standardization of language promotes interchange among professionals . . . . variations salted through a convention impede communication"). If, for example, entities were free to change some of the codes and some of the descriptors in CPT and CDT and to substitute their own preferences regarding how to classify or de-

29

scribe medical or dental procedures, the inevitable result would be inconsistency and confusion—a modern day medical and dental Tower of Babel.

Public.Resource.Org's position would lead to an environment that discourages, rather than encourages, the "[p]rogress of Science and the useful Arts." That position is contrary to precedent and sound policy. But if that position is to be adopted, it must come from Congress—not from a judicial amendment to the Copyright Act.

## CONCLUSION

For these reasons, *Amici Curiae* urge this Court to AFFIRM the district court's grant of summary judgment and injunction.

Date:   December 7, 2017

> */s/ Jack R. Bierig*
> Jack R. Bierig
> Tacy F. Flint
> Benjamin I. Friedman
> SIDLEY AUSTIN LLP
> ONE SOUTH DEARBORN STREET
> CHICAGO, IL 60603
>  TELEPHONE:  (312) 853-7000
>  FACSIMILE:  (312) 853-7036

30

*Attorneys for American Medical
Association, American Dental
Association, and American Hos-
pital Association*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT

This document complies with the type-volume limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains **5,677** words.

This document complies with the typeface requirement of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word, in the font Century Schoolbook.


Date:   December 7, 2017                         */s/ Jack R. Bierig*
                                                Jack R. Bierig

## CERTIFICATE OF SERVICE

I hereby certify that on December 7, 2017, I electronically filed the foregoing Corrected Brief with the Clerk of the Court for the United States Court of Appeals for the D.C. Circuit by using the appellate CM/ECF system. Service was accomplished by the CM/ECF system on all counsel of record.

*/s/Jack R. Bierig*
Jack R. Bierig