**NOT YET SCHEDULED FOR ORAL ARGUMENT**

**Appeal No. 17-7035**
**(consolidated with Appeal No. 17-7039)**

---

# United States Court of Appeals
### FOR THE DISTRICT OF COLUMBIA CIRCUIT

---

American Society for Testing and Materials; National Fire Protection
Association, Inc.; and American Society of Heating, Refrigerating,
and Air Conditioning Engineers, Inc.,

*Appellees*,

v.

Public.Resource.Org, Inc.,

*Appellant*.

---

Appeal from the United States District Court for the District of Columbia
Hon. Tanya S. Chutkan
1:13-cv-1215-TSC
1:14-cv-0857-TSC

---

## APPELLANT PUBLIC.RESOURCE.ORG'S
## FINAL CONSOLIDATED OPENING BRIEF

---

Andrew P. Bridges
Matthew B. Becker
Fenwick & West LLP
555 California Street
12th Floor
San Francisco, CA 94104
Phone: (415) 875-2300

Corynne McSherry
Mitchell L. Stoltz
Electronic Frontier
  Foundation
815 Eddy Street
San Francisco, CA 94109
Phone: (415) 436-9333

David Halperin
1530 P Street NW
Washington, DC 20005
Phone: (202) 905-3434

Attorneys for Appellant Public.Resource.Org, Inc.
February 14, 2018

## CERTIFICATES

Pursuant to D.C. Circuit Rules 26.1 and 28(a)(1), Defendant–Appellant

Public.Resource.Org, Inc., certifies as follows:

## I.      Parties and Amici

Public.Resource.Org, Inc., is the appellant and was the defendant in the

district court.  Public.Resource.Org certifies that it has no parent corporation and

that no publicly held corporation owns 10 percent or more of its stock.

The appellees in appeal no. 17-7035 are American Society for Testing and

Materials d/b/a ASTM International; National Fire Protection Association, Inc.;

and American Society of Heating, Refrigerating, and Air Conditioning Engineers

(collectively the "ASTM Plaintiffs").  The appellees in appeal no. 17-7039 are

American Educational Research Association, Inc.; American Psychological

Association, Inc.; and National Council on Measurement in Education, Inc.

(collectively the "AERA Plaintiffs").  The appellees were the plaintiffs in the

district court.

The amici that appeared below are the American National Standards

Institute, Inc.; American Society of Safety Engineers; Institute of Electrical and

Electronics Engineers, Inc.; International Association of Plumbing & Mechanical

Officials; National Electrical Manufacturers Association; North American Energy

Standards Board; Underwriters Laboratories Inc.; American Insurance

i

Association; International Code Council, Inc.; Public Knowledge; Knowledge Ecology International; American Library Association; Reporters Committee for Freedom of the Press; Sina Bahram; Prof. David Ardia; Prof. Stacey L. Dogan; Prof. Pamela Samuelson; Prof. Jessica M. Silbey; Prof. Rebecca L. Tushnet; Prof. Jennifer Urban; and Prof. Jonathan Zittrain.

## II.    Rulings Under Review

Defendant–Appellant Public.Resource.Org seeks review of the following rulings by the Honorable Tanya S. Chutkan, United States District Judge for the District of Columbia:

1.    ***American Society for Testing and Materials et al. v. Public.Resource.Org, Inc.*, 1:13-cv-01215-TSC-DAR**

- JA2051(ASTM-Dkt-172), Order Denying Motion to Strike Expert Report, entered September 21, 2016.  This order has not been published.

- JA2059(ASTM-Dkt-175), Memorandum Opinion, and JA2114(ASTM-Dkt-176), Order Granting Plaintiffs' Motion for Summary Judgment and Denying Defendant's Cross-motion for Summary Judgment, entered February 2, 2017.  The memorandum opinion has not been published but is available at American Society for Testing and Materials v. Public.Resource.Org, Inc., No. 13-cv-1215 and 14-cv-0857, 2017

WL 473822 (D.D.C. Feb. 2, 2017).  The order has not been published.

- JA2118(ASTM-Dkt-182), Amended Order, entered April 3, 2017. This order has not been published.

2.  ***American Educational Research Association et al. v. Public.Resource.Org, Inc.*, 1:14-cv-00857-TSC-DAR**

- JA3256(AERA-Dkt-115), Order Denying Defendant's Motion to Strike Expert Declaration, entered September 21, 2016.  This order has not been published.

- JA3401(AERA-Dkt-117), Memorandum Opinion, and JA3456(AERA-Dkt-118), Order Granting in Part and Denying in Part Plaintiffs' Motion for Summary Judgment and Denying Defendant's Cross-motion for Summary Judgment, entered February 2, 2017.  The opinion has not been published but is available at 2017 WL 473822.  This order has not been published.

## III.   Related Cases

This case is consolidated with appeal no. 17-7039, *American Educational Research Association, et al. v. Public.Resource.Org, Inc*.  Counsel are unaware of any other related cases.

## TABLE OF CONTENTS

**Page**

CERTIFICATES ....................................................................................................i

    I.    Parties and Amici ....................................................................i

    II.   Rulings Under Review ............................................................ ii

          1.    *American Society for Testing and Materials et al. v. Public.Resource.Org, Inc.*, 1:13-cv-01215-TSC-DAR ...................................................... ii

          2.    *American Educational Research Association et al. v. Public.Resource.Org, Inc.*, 1:14-cv-00857-TSC-DAR ...................................................... iii

    III.   Related Cases ...................................................................... iii

GLOSSARY OF ABBREVIATIONS ....................................................xv

STATEMENT OF JURISDICTION.........................................................1

ISSUES PRESENTED..............................................................................1

PERTINENT STATUTES AND OTHER AUTHORITIES ....................2

INTRODUCTION ....................................................................................2

STATEMENT OF THE CASE .................................................................3

STANDARD OF REVIEW ....................................................................18

SUMMARY OF ARGUMENT ..............................................................18

ARGUMENT ..........................................................................................21

    I.    An Injunction Prohibiting Public.Resource.Org from Communicating the Exact Content of Laws and Regulations to the Public Violates the Constitution and Harms the Public Interest. .....................................................................21

# TABLE OF CONTENTS
## (Continued)

Page

A.     The First Amendment Protects Public.Resource.Org's Right to Teach and Display Laws and Regulations and to Provide the Public with Means to Access, Annotate, and Criticize Them. ................................................. 21

B.     The Injunction Against Public.Resource.Org Injures the Public Interest in Due Process and the Rule of Law by Enforcing a Private Monopoly over Access to Laws and Regulations. ............................................... 24

II.     The SDOs Cannot Control Dissemination of Laws and Regulations by Others Through a Copyright Statutory Monopoly. ......................................................... 26

    A.     Federal and State Laws and Regulations Are Not Subject to Copyright. ......................................... 26

       1.     An unbroken line of case law holds copyright does not apply to the law. ................................ 26

       2.     The plain text of the Copyright Act reinforces this understanding. ....................................... 28

    B.     Laws and Regulations Incorporated by Reference Are No Different from Other Laws. ................................ 30

       1.     Incorporated standards are government edicts that fall outside copyright. ................................ 30

       2.     The contents and language of incorporated laws and regulations are also uncopyrightable facts. .............. 33

    C.     The District Court Created an Unnecessary Constitutional Conflict by Its Misapplication of Copyright Law. ......................................... 35

III.     Public.Resource.Org's Dissemination of Laws and Regulations Is a Fair Use of the SDO Standards Documents. ............ 41

## TABLE OF CONTENTS
### (Continued)

Page

A. Public.Resource.Org's Purpose Is to Provide the Public with Free Access to the Laws and Regulations That Govern It. ..........................................................42

B. Public.Resource.Org Displays the SDOs' Documents for Their Factual Status as Laws and Regulations....................47

C. Public.Resource.Org's Purpose Required the Posting of the Complete Documents That Became Laws and Regulations....................................................................48

D. There Is No Likely Harm to the Potential Market for, or Value of, the SDOs' Standards as Copyrighted Works. .....................................................................49

IV. Many Standards May Be U.S. Government Works, Requiring Remand If the Court Does Not Reverse on the Other Copyright Grounds....................................................50

V. The ASTM Plaintiffs Cannot Properly Use Trademark Law to Restrict Public.Resource.Org's Display and Dissemination of Laws and Regulations.............................52

A. *Dastar* Precludes the ASTM Plaintiffs' Trademark Claims. ..........................................................53

B. Public.Resource.Org's Use of the ASTM Plaintiffs' Names and Marks Was Not a Trademark Use and, Even If It Were, It Would Be Non-infringing or Fair...............54

CONCLUSION ........................................................................58

CERTIFICATE OF COMPLIANCE........................................................60

TABLE OF CONTENTS TO ADDENDUM.................................................. ADD-I

# TABLE OF AUTHORITIES

**Page(s)**

CASES[1]

*Allied Tube & Conduit Corp. v. Indian Head, Inc.*,
    486 U.S. 492 (1988), (White, J., dissenting) ...................................................15

*Am. Inst. of Physics v. Winstead PC*,
    No. 3:12–CV–1230–M, 2013 WL 6242843 (N.D. Tex. Dec. 3, 2013)..............46

*\*Authors Guild, Inc. v. HathiTrust*,
    755 F.3d 87 (2d Cir. 2014)\* ......................................................................46, 48

*\*Banks v. Manchester*,
    128 U.S. 244 (1888)\*............................................................................27, 28, 47

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605 (2d Cir. 2006) ......................................................................45, 47

*Blanch v. Koons*,
    467 F.3d 244 (2d Cir. 2006) ..........................................................................44

*\*Bldg. Officials & Code Adm. v. Code Tech., Inc.*,
    628 F.2d 730 (1st Cir. 1980)\*...............................................................24, 28, 31

*Bond v. Blum*,
    317 F.3d 385 (4th Cir. 2003) ..........................................................................47

*Bounds v. Smith*,
    430 U.S. 817 (1977)........................................................................................23

*\*Campbell v. Acuff-Rose Music, Inc.*,
    510 U.S. 569 (1994)\*..............................................................42, 44, 47, 49, 50

*CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.*,
    44 F.3d 61 (2d Cir. 1994) ........................................................................35, 36

---

[1] Cases on which Appellant Public.Resource.Org chiefly relies have asterisks by their names.

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*,
  843 F.2d 600 (1st Cir. 1988) ...............................................................33

*Cty. Of Suffolk v. First Am. Real Estate Sols.*,
  261 F.3d 179 (2d Cir. 2001) ................................................................35

*\*Dastar Corp. v. Twentieth Century Fox Film Corp.*,
  539 U.S. 23 (2003)\*........................................... 1, 20, 52, 53, 54, 56, 58

*\*Eldred v. Ashcroft*,
  537 U.S. 186 (2003)\*...........................................................28, 29, 42

*First Nat'l Bank of Boston v. Bellotti*,
  435 U.S. 765 (1978)............................................................................21

*General Elec. Co. v. Joiner*,
  522 U.S. 136 (1997)............................................................................18

*Globe Newspaper Co. v. Superior Court for Norfolk Cty.*,
  457 U.S. 596 (1982)............................................................................22

*\*Golan v. Holder*,
  132 S. Ct. 873 (2012)\*.................................................................29, 42

*Grayned v. City of Rockford*,
  408 U.S. 104 (1972)............................................................................25

*Griswold v. Connecticut*,
  381 U.S. 479 (1965)............................................................................21

*Harper & Row Publ'rs, Inc. v. Nation Enters.*,
  471 U.S. 539 (1985)..............................................................28, 29, 48, 49

*Howell v. Miller*,
  91 F. 129 (6th Cir. 1898) (Harlan, J.) ...............................................27

*Hustler Magazine, Inc.*, 606 F. Supp. 1526 (C.D. Cal. 1985), *aff'd*, 796
  F.2d 1148 (9th Cir. 1986) .............................................................43, 44, 45

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*Kern River Gas Transmission Co. v. Coastal Corp.*,
  899 F.2d 1458 (5th Cir. 1990)* ..........................................................34

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
  387 F.3d 522 (6th Cir. 2004) ...............................................43, 46, 48

*Mathews Conveyer Co v. Palmer-Bee Co.*,
  135 F.2d 73 (6th Cir. 1943) ..............................................................42

*Mills v. Alabama*,
  384 U.S. 214 (1966)............................................................................22

*New Kids on the Block v. News America Publ'g, Inc.*,
  971 F.2d 302 (9th Cir 1992) ..............................................................57

*Nieman v. VersusLaw, Inc.*,
  512 Fed. App'x. 635 (7th Cir. 2013) ..................................................22

*Online Policy Grp. v. Diebold, Inc.*,
  337 F. Supp. 2d 1195 (N.D. Cal. 2004)..............................................44

*Packingham v. North Carolina*,
  137 S.Ct. 1730 (2017)* .................................................................21, 23

*Perfect 10, Inc. v. Amazon.com, Inc.*,
  508 F.3d 1146 (9th Cir. 2007) ...........................................................45

*Phx. Entm't Partners v. Rumsey*,
  829 F.3d 817 (7th Cir. 2016) .......................................................53, 54

*Playboy Enters., Inc. v. Welles*,
  279 F.3d 796 (9th Cir. 2002) .............................................................57

*Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*,
  121 F. 3d 516 (9th Cir.) 1997 .....................................35, 36, 37, 38

*Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*,
  499 U.S. 340 (1991)............................................................................29

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*R.W. Beck, Inc. v. E3 Consulting*,
  577 F.3d 1133 (10th Cir. 2009) .......................................................40

*Reno v. Am. Civil Liberties Union*,
  521 U.S. 844 (1997) ........................................................................23

*Righthaven, LLC v. Jama*,
  No. 2:10–CV–1322 JCM (LRL), 2011 WL 1541613 (D. Nev. April
  22, 2011) ..................................................................................43, 48

*Robinson v. Pezzat*,
  818 F.3d 1 (D.C. Cir. 2016) .............................................................18

*Salazar ex rel. Salazar v. D.C.*,
  671 F.3d 1258 (D.C. Cir. 2012) ...................................................1, 36

*Silvers v. Sony Pictures Entm't, Inc.*,
  402 F.3d 881 (9th Cir. 2005) ...........................................................40

*Slep-Tone Entm't Corp. v. Wired for Sound Karaoke and DJ Services,
  LLC*,
  845 F.3d 1246 (9th Cir. 2017) .........................................................54

*Sony Computer Entm't, Inc. v. Connectix Corp.*,
  203 F.3d 596 (9th Cir. 2000) ...........................................................49

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984)* .......................................................................48

*Stanley v. Georgia*,
  394 U.S. 557 (1969) ........................................................................21

*Sundance, Inc. v. DeMonte Fabricating Ltd.*,
  550 F.3d 1356 (Fed. Cir. 2008) .......................................................41

*Swatch Grp. Mgmt. Svcs. Inc. v. Bloomberg L.P.*,
  756 F.3d 73 (2d Cir. 2014) .........................................................44, 48

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Tiffany (NJ) Inc. v. eBay Inc.,*
    600 F.3d 93 (2d Cir. 2010)* .................................................................57

*Toyota Motor Sales, U.S.A., Inc. v. Tabari,*
    610 F.3d 1171 (9th Cir. 2010) ...........................................................57

*United States v. Myers,*
    553 F.3d 328 (4th Cir. 2009)* ......................................................4, 33

*Veeck v. S. Bldg. Code Cong. Int'l, Inc.,*
    293 F.3d 791 (5th Cir. 2002) (*en banc*)* ..... 27, 30, 31, 32, 33, 34, 35, 36, 37, 38

*Virginia Elec. & Power Co. v. Savoy Const. Co.,*
    294 S.E.2d 811 (Va. 1982) ...................................................................5

*Warren Pub. Co. v. Spurlock,*
    645 F. Supp. 2d 402 (E.D. Pa. 2009) ................................43, 44, 45, 48

*Wheaton v. Peters,*
    33 U.S. (8 Pet.) 591 (1834)* ................................................26, 39, 47

**CONSTITUTIONAL PROVISIONS**

U.S. Const., art. I § 8 cl.8.................................................................20, 42

U.S. Constitution, First Amendment ........ 2, 3, 19, 21, 22, 23, 25, 26, 28, 29, 40, 42

U.S. Constitution, Fifth Amendment ...........................................19, 24, 26

U.S. Constitution, Fourteenth Amendment .........................19, 24, 26, 35

**FEDERAL STATUTORY PROVISIONS**

5 U.S.C. § 552(a)(1).................................................................................4

15 U.S.C. § 1051 .............................................................................51, 53

17 U.S.C. § 101 .............................................................................12, 51

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

17 U.S.C. § 102(b) ............................................... 3, 19, 28, 29, 35, 39, 40

17 U.S.C. § 105 ................................................................. 29, 30

17 U.S.C. § 107 .............................................................. 20, 42, 43, 44

28 U.S.C. § 1292(a)(1) .................................................. 1, 28, 39, 43, 49, 52

28 U.S.C. § 1331 .......................................................................... 1

28 U.S.C. § 1338(a) ...................................................................... 1

**FEDERAL REGULATIONS**

34 C.F.R. § 668.146 ................................................................... 4, 7

49 C.F.R. § 171.7 (2009) ................................................................. 55

50 Fed. Reg. 40895, 40897 ............................................................... 37

Federal Register Act (Pub. L. No. 74-220, ch. 417, 49 Stat. 500-503
    (July 26, 1935) ...................................................................... 25

U.S. Copyright Office, Compendium of Copyright Office Practices
    § 313.6(c)(2) (3d ed. 2014) ......................................................... 27

**STATE PROVISIONS**

11 N.Y. Admin. Code § 216.7(c) (1990) ................................................... 36

California Code of Regulations, Title 24, Part 2 ......................................... 4

California Code of Regulations, Title 24, Part 3 ......................................... 4

N.J. Admin. Code 11:3-10.4 (1988) ....................................................... 36

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

**RULES**

Fed. R. App. P. 4(a)(1)(A) ........................................................................1

Minn. Admin. Rule 4761.2460, Subp. 2(C)...............................................4

**OTHER AUTHORITIES**

1 Goldstein on Copyright § 2.49 n.45.2....................................................33

Antonin Scalia, *The Rule of Law as a Law of Rules*,
56 U. Chi. L. Rev 1175 (1989) ...........................................................24

Criminal Complaint, *California v. Harris*, No. 17-CR-017349A
(Cal. Super. Ct. June 5, 2017), available at:
https://cbssanfran.files.wordpress.com/2017/06/almena-and-harris-
complaint.pdf ......................................................................................5

Declaration in Support of Probable Cause, *California v. Harris*,
No. 17-CR-017349A (Cal. Super. Ct. June 5, 2017), available at:
https://www.scribd.com/document/350446988/Ghost-Ship-fire-
criminal-charges...................................................................................5

Erwin N. Griswold, *Governance in Ignorance of the Law –
A Plea for Better Publication of Executive Legislation*,
48 Harv. L. Rev. 198 (1934)........................................................25, 36

Jodi L. Short, *The Political Turn in American Administrative Law:
Power, Rationality, and Reasons*, 61 Duke L.J. 1811 (2012) ............22

K. Kindy, *In Trump era, lobbyists boldly take credit for writing a bill to
protect their industry,* Washington Post, July 31, 2017 ....................32

L. Ray Patterson & Craig Joyce, *Monopolizing the Law: the Scope of
Copyright Protection for Law Reports and Statutory Compilations*, 36
UCLA L. Rev. 719, 777 (1999)..........................................................29

## TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

"Law," Oxford English Dictionary, available at
https://www.oxforddictionaries.com .................................................................29

Lon L. Fuller, *The Morality of Law* (rev. ed.),
Yale University Press (1969).............................................................................24

Mark Seidenfeld, *A Big Picture Approach to Presidential Influence on
Agency Policy-Making*, 80 Iowa L. Rev. 1 (1994) .............................................22

Merriam Webster Ninth New Collegiate Dictionary (1989) ...................................29

Nina A. Mendelson, *Private Control over Access to Public Law: The
Perplexing Federal Regulatory Use of Private Standards*, 112 Mich.
L. Rev. 737, 771 (2014).................................................................................25

*Oil Suit Dismissed in Supreme Court*,
N.Y. Times, Oct. 2, 1934, at 6;.........................................................................25

Victoria F. Nourse & Jane S. Schachter, *The Politics of Legislative
Drafting: a Congressional Case Study,* 77 N.Y.U. L. Rev. 575, 583
(2002)........................................................................................................32

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| AERA | American Educational Research Association (Plaintiff) |
| ALEC | American Legislative Exchange Council |
| AMA | American Medical Association |
| APA | American Psychological Association (Plaintiff) |
| ASHRAE | American Society of Heating, Refrigeration, and Air Conditioning Engineers (Plaintiff) |
| ASTM | American Society of Testing and Materials (Plaintiff) |
| CFR | Code of Federal Regulations |
| CPT | Physician's Current Procedural Terminology |
| HCFA | Health Care Financing Administration |
| HCPCS | HCFA Common Procedure Coding System |
| HTML | Hypertext Markup Language |
| MML | Mathematics Markup Language |
| NCME | National Council for Measurement in Education (Plaintiff) |
| NEC | National Electrical Code (of NFPA) |
| NFPA | National Fire Protection Association (Plaintiff) |
| NTTAA | National Technology Transfer and Advancement Act of 1995, 15 U.S.C. § 3701 *et seq.* |
| SDO(s) | standards development organization(s) |

## STATEMENT OF JURISDICTION

The district court had jurisdiction under 28 U.S.C. §§ 1331 and 1338(a).

Because it explicitly enjoined Public.Resource.Org in both cases, *see* Document

1669990, Exs. C, D, and G, this Court has appellate jurisdiction under 28 U.S.C.

§ 1292(a)(1) without any further showing.  *See Salazar ex rel. Salazar v. D.C.*, 671

F.3d 1258, 1261 (D.C. Cir. 2012).

The district court filed injunction orders on February 2, 2017.

JA2114(ASTM-Dkt-176); JA3457(AERA-Dkt-119).  Public.Resource.Org

noticed appeals from those orders on February 15 and 17, 2017.  JA2115(ASTM-

Dkt-177); JA3461(AERA-Dkt-120).  The district court amended one injunction

on April 3, 2017; Public.Resource.Org filed an amended notice of appeal on April

6, 2017.  JA2118(ASTM-Dkt-182); JA2120(ASTM-Dkt-183).  This appeal is

timely under Rule 4(a)(1)(A).

## ISSUES PRESENTED

1.  Does the Constitution guarantee persons the right to display and disseminate federal and state laws and regulations, including laws and regulations that have been explicitly incorporated by reference into law?

2.  Do the Copyright Act and related doctrines accommodate that guarantee?

3.  Do Public.Resource.Org's display and dissemination of complete documents that federal and state governments have explicitly incorporated by reference into laws and regulations, and its recasting of those documents into formats to make the laws and regulations accessible to the visually impaired and more useful as a legal resource, constitute fair use under copyright law?

4.  Should the Court remand for further proceedings regarding copyright ownership, given that federal government employees jointly authored relevant standards in the course and scope of their employment?

5.  Was Public.Resource.Org's display and dissemination of documents, without any claim of ownership of those documents, lawful either pursuant to *Dastar Corp. v. Twentieth Century Fox Film Corp.*, or because it was a fair use or noninfringing under trademark law?

6.  Did the district court err by enjoining Public.Resource.Org from posting the law?

## PERTINENT STATUTES AND OTHER AUTHORITIES

The pertinent statutes and other authorities are in the addendum to this brief.

## INTRODUCTION

Once federal and state governments have adopted laws and regulations, all persons have fundamental First Amendment and due process rights to publicize, display, and disseminate them, free from veto power by any government or person.

The Plaintiffs in this case argue there is one major exception to this well-established principle.  Plaintiffs are standards development organizations (SDOs) that coordinate the creation of standards, such as the National Electrical Code, reflecting best practices in a number of fields.  As part of their work, these SDOs have persuaded federal, state, and local governments to adopt some (but not all) of their standards and codes as laws and regulations.  Those laws and regulations govern the public, and violations carry criminal and civil penalties.

Unlike other entities that draft legislation for government consideration, the SDOs assert a copyright claim in legal mandates.  They insist that, because their standards became law by reference, they have a right to control the display and dissemination of the laws and regulations.

Ignoring decades of judicial precedent, the Constitution, and the Copyright Act, the district court agreed, wrongly ruling that incorporation by reference allowed these SDOs a private copyright monopoly that trumps both the First Amendment and the public's interest in broad access to the law. This Court should reverse that decision.

## STATEMENT OF THE CASE

Public.Resource.Org, a nonprofit corporation, makes laws and other government materials widely available for the public to learn, understand, and discuss. JA1070-1071(ASTM-Dkt-121-5 ¶¶3-4); JA3068(AERA-Dkt-69-5 ¶¶3-4). Public.Resource.Org posted to the Web standards that federal and state governments had expressly incorporated into laws and regulations "by reference" and thereby turned into government edicts. JA1074-1076(ASTM-Dkt-121-5 ¶¶15, 20-25); JA3071-3075(AERA-Dkt-69-5 ¶¶15, 20-25). *This case has no bearing on the vast majority of the SDOs' standards, which have not been incorporated into law.*

The SDOs seek to stop that lawful and beneficial activity.

**1.    Governmental incorporation by reference turns some standards into enforceable laws and regulations.**

This case concerns a specific category of law: standards that federal, state, and local governments have adopted as edicts through "incorporation by reference."

3

Incorporation by reference is an alternative to express inclusion of language into a government's published laws or regulations. *See* 5 U.S.C. §552(a)(1); 1 C.F.R. §§ 51.1-51.11. It occurs at every level of government. As the Office of the Federal Register has explained, material incorporated by reference, "like any other properly issued rule, has the force and effect of law." JA1879(ASTM-Dkt-122-9 at 86); JA3248(AERA-Dkt-70-64 at 3); *see also United States v. Myers*, 553 F.3d 328, 331 (4th Cir. 2009) (material incorporated by reference has the same force of law as the incorporating regulation itself). The federal government initiated the practice of incorporating some materials by reference instead of reproducing them to limit the bulk of the Code of Federal Regulations ("CFR"). JA1879(ASTM-Dkt-122-9 at 86); JA3248(AERA-Dkt-70-64 at 3). States and municipalities also turn standards into law, sometimes through incorporation by reference and in other instances by including an entire standard verbatim in the law. *See, e.g.*, Minn. Admin. Rule 4761.2460, Subp. 2(C); California Code of Regulations, Title 24, Part 3.

Each standard on Public.Resource.Org's website has become a federal or state law or regulation through incorporation by reference. JA1076(ASTM-Dkt-121-5 ¶24); 34 C.F.R. § 668.146; Minn. Admin. Rule 4761.2460, Subp. 2(C). For example, the National Electrical Code has been incorporated into federal law and published verbatim in the California Electrical Code. *See* California Code of

4

Regulations, Title 24, Part 3. SDOs often lobby governments to incorporate their standards by reference. JA1229-1235, JA1240(ASTM-Dkt-122-2 at 21-27, 32); JA1543-1598(ASTM-Dkt-122-4 at 26-81); JA1171, JA1178-1180, JA1182(ASTM-Dkt-122-1 at 252, 259-261, 263); JA1513-1517(ASTM-Dkt-122-3 at 26-30); JA1006-1007, JA1009(ASTM-Dkt-120-6 at 8-9, 11); JA3241(AERA-Dkt-70-51), JA2915, JA2922(68-7 at 13, 20); JA3050(AERA-Dkt-68-30); JA3054(AERA-Dkt-68-31); JA3058(AERA-Dkt-68-32); JA2950-2951(AERA-Dkt-68-9 at 24-25); JA3085(AERA-Dkt-70-43); JA3087(AERA-Dkt-70-44); JA3098(AERA-Dkt-70-45).

Governments may prosecute and punish persons for failing to obey standards that have become law. To take just two examples: the Supreme Court of Virginia treated violation of the National Electrical Code as equivalent to a violation of the Virginia Building Code, which incorporated the NEC by reference, and subject to criminal sanctions. *Virginia Elec. & Power Co. v. Savoy Const. Co.*, 294 S.E.2d 811, 816-17 (Va. 1982). After the deadly "Ghost Ship" fire in Oakland, California, prosecutors charged persons with manslaughter for violation of fire safety codes that are incorporated by reference.[2]

---

[2] Declaration in Support of Probable Cause, *California v. Harris*, No. 17-CR-017349A (Cal. Super. Ct. June 5, 2017), *available at* https://www.scribd.com/document/350446988/Ghost-Ship-fire-criminal-charges; Criminal Complaint, *California v. Harris*, No. 17-CR-017349A (Cal. Super. Ct

**2.     Public.Resource.Org educates the public about the law, including standards that have become law.**

Public.Resource.Org provides online access to many kinds of government materials, from judicial opinions to video recordings of congressional hearings. JA1072-1074(ASTM-Dkt-121-5 ¶¶8-14); JA3069-3071(AERA-Dkt-69-5 ¶¶8-14). As part of this mission, Public.Resource.Org operates a website where the public can access the law, including statutes, judicial opinions, and public safety and other standards that federal and state governments have incorporated into law by reference. JA1072-1076(ASTM-Dkt-121-5 ¶¶8-25); JA1081-1135(ASTM-Dkt-122-1 at 4-58); JA3069-3075(AERA-Dkt-69-5 ¶¶8-25). Public.Resource.Org also contributes its materials to the Internet Archive. *Id.*

Public.Resource.Org does not limit, or charge for, access to its platform. JA1076(ASTM-Dkt-121-5 ¶24); JA3074(AERA-Dkt-69-5 ¶24). It does not display or derive any revenue from advertising. It relies entirely on contributions and grants. JA1078(ASTM-Dkt-121-5 ¶30); JA3076(AERA-Dkt-69-5 ¶30). It seeks, as its name suggests, to provide a public resource.

Public.Resource.Org offers a unique contribution to public discourse by making laws and regulations incorporated by reference more accessible to more persons than ever before. For example, by reformatting documents,

---

June 5, 2017), *available at* https://cbssanfran.files.wordpress.com/2017/06/almena-and-harris-complaint.pdf.

Public.Resource.Org allows persons with visual disabilities to enlarge the text or use electronic text-to-speech readers to hear the text. JA1635-1647(ASTM-Dkt-122-6 at 139-151); JA3121-3129(AERA-Dkt-70-50 at 8-16). Similarly, Public.Resource.Org often translates images into vector graphics for better enlargement. *Id.* It uses optical character recognition ("OCR"), and often painstakingly retypes documents into Hypertext Markup Language ("HTML") and converts formulas to Mathematics Markup Language ("MML"). *Id.* This makes documents word-searchable and allows researchers to analyze them at large scale with techniques such as machine learning. JA1074-1078(ASTM-Dkt-121-5 ¶¶18, 25-28); JA3072, JA3074-3076(AERA-Dkt-69-5 ¶¶16-17, 25-28).

**3.    Apart from Public.Resource.Org, public access to the incorporated laws and regulations is limited.**

Without the database that Public.Resource.Org provided, citizens have only four limited options for accessing laws and regulations that derive from the SDO standards. First, one may make an appointment to visit the National Archives in Washington, D.C., to read a paper version of a federally incorporated standard. *See, e.g.*, 34 C.F.R. § 668.146. This option does not provide meaningful access for persons without the means to travel to Washington, or persons with visual disabilities, and it does not allow computer-aided analysis.

Second, one can sometimes, but not always, purchase copies of the standards. The standards at issue in this case are *currently effective as law, but*

7

except for the 2014 National Electrical Code all the standards at issue are *obsolete as standards* for their industries because the SDOs have withdrawn them or issued newer standards to replace them. *See, e.g.*, http://www.worldcat.org/title/standard-specification-for-physical-information-to-be-provided-for-amusement-rides-and-devices-withdrawn-2009 (WorldCat entry for withdrawn standard). Indeed, the latest ASTM standard at issue in this case is from 2007; the latest ASHRAE standard is from 2010; before NFPA amended the complaint to add the 2014 National Electrical Code, the latest NFPA standard at issue was from 2011; and the only AERA standard at issue is from 1999. *Compare* JA47(ASTM-Dkt-1-1), JA57(ASTM-Dkt-1-2), *and* JA59(ASTM-Dkt-1-3), *with* JA1689-1724(ASTM-Dkt-122-6 at 193-228) (identifying all ASTM Plaintiffs standards from the original complaint as being superseded or withdrawn); JA2158(AERA-Dkt-1).  Copies of many standards may be available only secondhand.  Some standards are available only on paper because the sponsoring SDO has not authorized electronic versions, and thus they are unavailable to persons with visual disabilities or for computer-aided analysis.  JA1635-1647(ASTM-Dkt-122-6 at 139-151); JA3121-3129(AERA-Dkt-70-50 at 8-16).  Even when available, the price for a single standard can cost $200, and federal laws often incorporate multiple standards.  JA385(ASTM-Dkt-118-10 ¶18).

Third, one can search libraries for standards.  Contrary to the SDOs'

suggestion, library availability is poor; libraries typically carry current standards

but not earlier standards that still function as law, and library copies are typically

only on paper.  For example, according to WorldCat no libraries carry the

incorporated 1998 edition of ASTM D396, Standard Specification for Diesel Fuel

Oils, and only three libraries appears to possess *any edition* at all (the 2008 and

2010 editions, which are not law).[3]

Finally, one can access some standards through online "reading rooms"—

some of them established only after Public.Resource.Org's efforts highlighted the

lack of public access.  Not all of the standards at issue are available, however, and

the SDOs have created numerous barriers and conditions on use of those that are

available.[4]  To access reading rooms, citizens must create online profiles with

personal information and agree to receive e-mail advertisements.  They must also

agree to contracts of adhesion including terms such as a forum-selection clause,

consent to jurisdiction in a potentially distant court, consent to service of process

---

[3] WorldCat, https://www.worldcat.org/title/standard-specification-for-fuel-oils/oclc/958281438 and https://www.worldcat.org/title/standard-specification-for-fuel-oils/oclc/761733606&referer=brief_results (searched August 27, 2017).
[4] ASTM, NFPA, and ASHRAE reading rooms are at https://www.astm.org/READINGLIBRARY/, http://www.nfpa.org/codes-and-standards/all-codes-and-standards/free-access, and https://www.ashrae.org/standards-research--technology/standards--guidelines/other-ashrae-standards-referenced-in-code.

by mail, indemnity, and acknowledgment that the SDO owns copyrights. JA1849-1856(ASTM-Dkt-122-8 at 162-169); JA1861-1863(ASTM-Dkt-122-9 at 3-5). Patrons cannot reproduce text from the standards, even to a clipboard. JA1635-1647(ASTM-Dkt-122-6 at 139-151). These online reading rooms unnecessarily restrict display of documents to a 5"x7" box within the web browser, which makes it impossible to view a whole page at once and encumbers extended reading or study. *See* n.4 above; *see also* JA1635-1647(ASTM-Dkt-122-6 at 139-151); JA1859-1860(ASTM-Dkt-122-8 at 172-173); JA1054(ASTM-Dkt-120-30); JA1058(ASTM-Dkt-120-31); JA1061(ASTM-Dkt-120-32). All of the ASTM Plaintiffs' online reading rooms ignore persons with visual disabilities, as the textual displays do not work with text-to-speech technology. JA1635-1647(ASTM-Dkt-122-6 at 139-151). The textual displays also preclude computer-aided analysis. *Id.*

## 4. Committees of expert volunteers, including federal, state, and municipal officials, author the standards.

The SDOs provide frameworks by which numerous committees of volunteers—federal, state, and local government employees; industry representatives; academic and other technical experts; and others—weigh proposals for appropriate methods, processes, procedures, specifications, and other standards on a wide variety of topics, such as child safety and energy efficiency. JA47(ASTM-Dkt-1-1); JA1032(ASTM-Dkt-120-9); JA1169-

10

1170(ASTM-Dkt-122-1 at 250-51); JA1252(ASTM-Dkt-122-2 at 44);

JA57(ASTM-Dkt-1-2); JA1023(ASTM-Dkt-120-7 at 5); JA1151, JA1153,

JA1157, JA1161-1162(ASTM-Dkt-122-1 at 220, 222, 226, 230-31);

JA59(ASTM-Dkt-1-3); JA1212-1213, JA1227-1228, JA1238(ASTM-Dkt-122-2

at 4-5, 19-20, 30); JA1538, JA1542(ASTM-Dkt-122-4 at 12, 25); JA2912(AERA-

Dkt-68-7 at 10); JA3045-3048(AERA-Dkt-68-29 at 5-8).  Volunteer committee

members suggest and evaluate both new language and revisions to language from

earlier standards.  JA1245, JA1269(ASTM-Dkt-122-2 at 37, 61); JA1623-

1627(ASTM-Dkt-122-6 at 127-131); JA1759-1860(ASTM-Dkt-122-8 at 80-174);

JA1005-1006(ASTM-Dkt-120-6 at 7-8); JA1152(ASTM-Dkt-122-1 at 221);

JA1214-1216, JA1225-1226(ASTM-Dkt-122-2 at 6-8, 17-18); JA2912(AERA-

Dkt-68-7 at 10); JA3045-3048(AERA-Dkt-68-29 at 5-8).  They debate the scope,

structure, and wording of standards, working to consensus on the final form to

reflect either minimally acceptable or best industry practices using the most

precise, scientific terms possible.  JA1244, JA1255, JA1261, 1268(ASTM-Dkt-

122-2 at 36, 47, 53, 60); JA1005-1006(ASTM-Dkt-120-6 at 7-8); JA1154(ASTM-

Dkt-122-1 at 223); JA1224(ASTM-Dkt-122-2 at 16); JA2900(AERA-Dkt-68-6 at

4).  The SDOs' employees facilitate that process, but they do not author the

standards or control the final content.  JA1244, JA1255, JA1261, 1268(ASTM-

Dkt-122-2 at 36, 47, 53, 60); JA1005-1006(ASTM-Dkt-120-6 at 7-8);

11

JA1154(ASTM-Dkt-122-1 at 223); JA1225(ASTM-Dkt-122-2 at 17); JA2905(AERA-Dkt-68-7 at 3).

**5.    Unable to support their original claims to ownership of the standards at issue here, the SDOs now argue they are "joint authors" with all the committee volunteers, including government employees.**

There is a substantial dispute whether the SDOs even own copyrights in the standards at issue.  To establish copyright ownership, the SDOs initially relied upon registrations in which they claimed that the standards at issue were "works made for hire."  JA1271-1489(ASTM-Dkt-122-2 at 63-281); JA3078(AERA-Dkt-70-10); JA3038(AERA-Dkt-68-28).  But that status requires that the claimant either employ the creator of the work or, if the creator is an independent contractor, obtain a valid, written, and specific agreement.  *See* 17 U.S.C. § 101 ("work made for hire" definition).  Alternatively, they claimed to have acquired rights by assignment.  JA139(ASTM-Dkt-118-1 at 28); JA2907-2908, JA2910-2911(AERA-Dkt-68-7 at 5-6, 8-9); JA2990(AERA-Dkt-68-12); JA2993-3034(AERA-Dkt-68-14 to AERA-Dkt-68-26).

When discovery revealed neither ownership position was valid, the SDOs instead claimed standing as "joint authors" with all the volunteers who participated in drafting the standards (JA140(ASTM-Dkt-118-1 at 29); JA2214(AERA-Dkt-60-1 at 12))—contrary to numerous documents either inconsistent with, or explicitly disclaiming, that claim.  *Compare, e.g.*, JA129-

12

130(ASTM-Dkt-46 at 9-10) (NFPA assertion about assignments of copyrights from volunteers), JA116-117(ASTM-Dkt-46-1 at 1-2) (NFPA declaration), JA1934(ASTM-Dkt-155 at 43) (ASTM admitting it did not seek assignments until "approximately 2005"), JA1602-1621(ASTM-Dkt-122-5 at 71-90) (1999, 2003, and 2010 versions of ASTM "IP Policy" showing "assignment" language was first added in 2010, three years after the latest ASTM standard at issue), JA1243, JA1246-1247, JA1248-1250, JA1254, JA1256, JA1263(ASTM-Dkt-122-2 at 35, 38-39, 40-42, 46, 48, 55) (ASTM's 30(b)(6) representative admitting ASTM was unable to produce a single signed assignment for any standard at issue, and that until recently ASTM did not realize it needed assignment agreements); JA1864-1876(ASTM-Dkt-122-9 at 71-83) (NFPA form expressly disclaiming rights as joint author), JA1600(ASTM-Dkt-122-5 at 65) (NFPA form effectively disclaiming rights as joint author), JA1535(ASTM-Dkt-122-3 at 132) (ASHRAE form effectively disclaiming rights as joint author) *with* JA140(ASTM-Dkt-118-1 at 29) (ASTM Plaintiffs' MSJ brief, arguing "joint works" instead of assignments or works made for hire).

Among the persons whom the SDOs now claim are "joint authors" of the standards are numerous federal, state, and local government officials. *See, e.g.*, JA1041(ASTM-Dkt-120-11) (Consumer Product Safety Comm'n employee);

JA1044(ASTM-Dkt-120-12) (U.S. Army Corps of Engineers); JA1046 (ASTM-Dkt-120-13) (Dep't of HHS).

**6.     The SDOs seek to make their standards law and benefit financially from the force of their standards as law.**

The SDOs benefit when their standards become law.  JA1010(ASTM-Dkt-120-6 at 12); JA1200-1201(ASTM-Dkt-122-1 at 281-82); JA1547-1562(ASTM-Dkt-122-4 at 30-45) (ASHRAE referring to its "EPAct advantage"); JA2959(AERA-Dkt-68-10 at 4).  Each of the SDOs sells supplementary material, and in some cases training programs, touting special insight into laws and regulations that the standards constitute.  For example, to sell an ancillary handbook, NFPA sends emails saying "Be confident your work complies with California law" and stressing "California has adopted the 2011 NEC."[5] JA1931(ASTM-Dkt-124-5).  Similarly, ASTM, selling training material, states "[k]nowledge of ASTM standards is important for complying with U.S. regulations and procurement requirements."  JA1511(ASTM-Dkt-122-3 at 24).

For that reason, SDOs work to persuade governments to adopt their standards as laws and regulations.  SDOs in both lawsuits maintain offices in

---

[5] NFPA also advertises its $199.95 National Electrical Code with California Amendments (which is the *only* print version of the California Electrical Code), stating "[s]tay up-to-code and in compliance with the 2016 *California Electrical Code*."  *See* http://catalog.nfpa.org/NFPA-70-National-Electrical-Code-with-California-Amendments-P17223.aspx.

Washington, D.C., and promote governmental adoption and awareness of their standards. JA1566-1598(ASTM-Dkt-122-4 at 49-81); JA1170-1171, JA1178-1180(ASTM-Dkt-122-1 at 251-252, 259-261); JA1726, JA1728-1753(ASTM-Dkt-122-7 at 26, 46-71); JA1513-1517, JA1518-1533(ASTM-Dkt-122-3 at 26-30, 112-127); JA1006-1007, JA1009(ASTM-Dkt-120-6 at 8-9, 11); JA3044(AERA-Dkt-68-29 at 4) (listing D.C. address); JA2953-2954(AERA-Dkt-68-9 at 27-28); JA3102(AERA-Dkt-70-46); JA3110(AERA-Dkt-70-47) (AERA Plaintiffs' Capitol Hill event promoting the 2014 Testing Standards). These efforts are effective: governments routinely adopt standards like the National Electrical Code into law with little or no change, so that it is "almost a foregone conclusion." *Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 512-513 (1988), (characterizing NEC as "proposed legislation") (White, J., dissenting).

## 7.    The SDOs suffered no loss from Public.Resource.Org's posting of standards.

The SDOs have suffered no loss from Public.Resource.Org's activities. For the seven years after Public.Resource.Org began posting incorporated standards, the ASTM Plaintiffs admitted, they were unaware of any measurable loss from the postings. JA1138, JA1145(ASTM-Dkt-122-1 at 207, 214); JA1185, 1188, 1190, 1191-1194, 1196-1197, 1201-1202, 1205-1208(ASTM-Dkt-122-1 at 266, 269, 271, 272-75, 277-78, 282-83, 286-89); JA1065(ASTM-Dkt-120-33); JA1168, JA1173-1175(ASTM-Dkt-122-1 at 249, 254-56). As for the AERA Plaintiffs'

1999 Standards, sales began rapidly declining in 2011—well before

Public.Resource.Org posted them in June 2012—which correlates with the AERA

Plaintiffs' announcement that a new edition was forthcoming.  JA3063(AERA-

Dkt-68-34); JA3081(AERA-Dkt-70-38); JA3083(AERA-Dkt-70-39);

JA3065(AERA-Dkt-68-35); JA2940-2941, JA2943-2946(AERA-Dkt-68-9 at 14-

15, 17-20); JA2965-2966(AERA-Dkt-68-11 at 4-5). Moreover, upon publication

of their 2014 Standards, the AERA Plaintiffs took the 1999 Standards off the

market as outdated.[6]  JA2216(AERA-Dkt-60-2 ¶35); JA2931(AERA-Dkt-68-9 at

5).  Because the 1999 Standards document was *current law*, however,

Public.Resource.Org posted it; Public.Resource.Org has not posted the 2014

AERA standards document because it is not law.  During the one full year that

Public.Resource.Org displayed the 1999 Standards, AERA's sales actually

increased.  JA3063(AERA-Dkt-68-34); JA3081(AERA-Dkt-70-38);

JA3083(AERA-Dkt-70-39); JA3065(AERA-Dkt-68-35).

## 8.    The district court proceedings

The ASTM Plaintiffs sued Public.Resource.Org for direct and contributory

copyright infringement and for trademark infringement involving hundreds of

standards.  The AERA Plaintiffs sued for direct and contributory copyright

---

[6] The AERA Plaintiffs later resumed sales in limited fashion after the non-availability of these legally mandated standards was raised by Public.Resource.Org's counsel.  JA2921(AERA-Dkt-68-7 at 19).

16

infringement of only one document, the 1999 Standards. After discovery the parties filed cross-motions for summary judgment: the ASTM Plaintiffs sought summary judgment on nine standards, and the AERA Plaintiffs sought judgment on their sole standard. The district judge heard the motions together and issued one consolidated memorandum.

The district court granted summary judgment to both sets of plaintiffs and permanently enjoined Public.Resource.Org from unauthorized use of the standards that were the subject of the motions and unauthorized use of the ASTM Plaintiffs' trademarks (which thwarts use of all their standards because the ASTM Plaintiffs' trademarks are on the standards). JA2114(ASTM-Dkt-176); JA2118(ASTM-Dkt-182) (amended order); JA3456(AERA-Dkt-118). The district court denied summary judgment on the AERA Plaintiffs' contributory infringement claim but otherwise ruled against Public.Resource.Org on virtually every point. Specifically, the district court found that (1) the SDOs had established copyright ownership based on their registrations, ignoring evidence undermining those registrations and without delving into the implications of the SDOs' joint-ownership claim; (2) the SDOs had the right to control access to and expression of the law; (3) Public.Resource.Org's posting of the standards as law was not a lawful fair use; (4) Public.Resource.Org's posting of standards that bore ASTM Plaintiffs' trademarks infringed their trademarks; and (5) Plaintiffs had

17

met the standard for a permanent injunction notwithstanding the public interest in expressing and sharing the law.

Public.Resource.Org appeals.

## STANDARD OF REVIEW

This Court reviews a district court's grant of summary judgment *de novo*. *Robinson v. Pezzat*, 818 F.3d 1, 7 (D.C. Cir. 2016). This Court reviews a district court's evidentiary rulings, including rulings concerning the admissibility of expert witness opinions, under an abuse of discretion standard. *General Elec. Co. v. Joiner*, 522 U.S. 136, 141-143 (1997).

## SUMMARY OF ARGUMENT

Public.Resource.Org aims to do one simple and important thing: to provide a database of laws and regulations so that the public can know and understand the rules that govern it. Public.Resource.Org does so by presenting to the public, without fee or restriction, the full content of laws and regulations, including documents that federal and state governments have declared to be the law through incorporation by reference. It makes these laws and regulations available online to all persons, including those who are visually impaired and those who cannot travel to the repositories where governments make them available for viewing by the public. Public.Resource.Org seeks to facilitate comment on, criticism of, and debate over the laws.

The SDOs invoke the statutory monopoly of copyright to try to shut down this work.  But the First Amendment and the due process provisions of the Fifth and Fourteenth Amendments do not allow it.  All laws and regulations of governments belong to the public, and no court can properly enjoin their public display or dissemination.  Thus for 183 years it has been a principle of United States law, recognized in numerous court decisions, that law itself is not subject to copyright.  Properly interpreted, Copyright Act and related doctrines reflect and support this principle.

*First*, laws are themselves facts, ideas, and principles; as such they lack copyright protection.  The Copyright Act expressly excludes from copyright "any idea, procedure, process, system, method of operation, concept, principle, or discovery."  17 U.S.C. § 102(b).  The law is itself a system, and specific laws and regulations are quintessential principles of government and its relation to the public.  Those principles lie outside copyright no matter how they arose.  *Second*, where few options exist for expressing facts, the "merger" doctrine denies copyright protection.  No description, paraphrase, or characterization suffices to teach or describe the exact obligations a law or regulation imposes.  *Third*, the fair use doctrine protects conduct, like that of Public.Resource.Org, that serves copyright's constitutional purpose "to promote the Progress of Science and useful

19

Arts." 17 U.S.C. § 107; U.S. Const., art. I, § 8, cl. 8. Public.Resource.Org's use of the incorporated standards here falls within the doctrine's protection.

Each of these limiting doctrines independently requires reversal of the district court's decision on the copyright claims. If this Court nevertheless endorses the district court's rulings, the Court should still remand the case for further proceedings on copyright ownership. The SDOs made a strategic litigation decision to repudiate their previous assertions and to recast themselves as "joint authors" with all the volunteers who created the standards. If the SDOs' theory is correct, the joint participation of many United States Government employees means that the standards may qualify as U.S. Government works, which are not subject to copyright. The district court did not address this issue.

The ASTM Plaintiffs' trademark claims also must fail. They allege trademark infringement because Public.Resource.Org posted the law as fully and accurately as it could, including the logos and names that were on the incorporated documents. The Supreme Court's decision in *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003), forecloses such an end-run around the contours of copyright law, and the appearance of the names and logos in connection with the incorporated documents is non-infringing.

20

**ARGUMENT**

I.    **An Injunction Prohibiting Public.Resource.Org from Communicating the Exact Content of Laws and Regulations to the Public Violates the Constitution and Harms the Public Interest.**

Regardless of who crafted the words that become law, and regardless of whether a government publishes the words in its own books or instead incorporates those words as law by reference, the Constitution protects the unfettered right of all persons to communicate and teach the law. The district court's injunctions impinged on that right, contrary to clear precedent and the public interest.

A.    **The First Amendment Protects Public.Resource.Org's Right to Teach and Display Laws and Regulations and to Provide the Public with Means to Access, Annotate, and Criticize Them.**

The injunctions below impair Public.Resource.Org's First Amendment right to speak on, and communicate, matters of public interest.

The right to speak, to celebrate some views, to protest others, or simply to learn and inquire are core to the First Amendment. *Packingham v. North Carolina*, 137 S. Ct. 1730, 1735 (2017). Accordingly, the First Amendment protects "public access to discussion, debate, and the dissemination of information and ideas." *First Nat'l Bank of Boston v. Bellotti*, 435 U.S. 765, 781-83 (1978). It also embraces the freedom to teach, *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965), and the right to receive information and ideas, *Stanley v. Georgia*, 394

21

U.S. 557, 564 (1969), particularly information about the law, *Nieman v. VersusLaw, Inc.*, 512 Fed. App'x. 635, 637-38 (7th Cir. 2013). As the Supreme Court noted in striking down a statute that would close criminal trials, "'a major purpose of [the First] Amendment was to protect the free discussion of governmental affairs.' [This] serves to ensure that the individual citizen can effectively participate in and contribute to our republican system of self-government." *Globe Newspaper Co. v. Superior Court for Norfolk Cty.*, 457 U.S. 596, 604 (1982) (quoting *Mills v. Alabama*, 384 U.S. 214, 218 (1966)).

The ability to share the law is crucial when the law incorporates standards by reference. The public cannot blindly rely on the federal or state agencies that adopt private standards into law to ensure that those standards serve the public interest as opposed to serving the private parties who play a major role in drafting them. As in every other area of law, the public must have the ability to do that work itself and to register concerns with the legislatures that can provide a check on those agencies' actions. *See* Jodi L. Short, *The Political Turn in American Administrative Law: Power, Rationality, and Reasons*, 61 Duke L.J. 1811, 1821 (2012); Mark Seidenfeld, *A Big Picture Approach to Presidential Influence on Agency Policy-Making*, 80 Iowa L. Rev. 1, 9–10 (1994).

The injunctions also interfere with the right "to petition the Government for a redress of grievances." U.S. Const. amend. I. In the context of the law that

22

governs the nation and its subdivisions, the abilities to *know* the law, to *teach* the

law to others, and to *criticize and comment on* the law are fundamental to the

meaningful exercise of that right.  *See, e.g.*, *Bounds v. Smith,* 430 U.S. 817, 828

(1977) (right of inmates of access to courts requires provision of access to law

libraries or adequate assistance of lawyers).  In *Bounds*, the Court noted that "a

lawyer must know what the law is," stressing that need was no less vital for a

person without a lawyer.  *Id.* at 825-26.  While that case concerned resort to courts

as the form of petition, the same point applies to citizens who wish to review,

learn, obey, criticize, and propose changes to the law.  Public.Resource.Org

provides the law to the public specifically to stimulate such activity.

All of these concerns have particular significance in the Internet age, when

it is possible to share information and views more broadly and quickly than ever.

In 1997 the Supreme Court identified the "vast democratic forums of the Internet"

as one of the most important forums for speech.  *Reno v. Am. Civil Liberties

Union,* 521 U.S. 844, 868 (1997).  Two decades later, the Court again emphasized

the importance of Internet forums where persons "can speak and listen, and then,

after reflection, speak and listen once more."  *Packingham,* 137 S. Ct. at 1735.

Public.Resource.Org is dedicated to using the Internet to make the law

available to all; to promote an accurate understanding; and to foster study,

criticism, and debate.  The First Amendment protects its right to do so.

**B.**    **The Injunction Against Public.Resource.Org Injures the Public Interest in Due Process and the Rule of Law by Enforcing a Private Monopoly over Access to Laws and Regulations.**

Due process under the Fifth and Fourteenth Amendments requires meaningful public access to federal and state laws and regulations.  As the First Circuit stated:

> [C]itizens must have free access to the laws which govern them.…  [I]t is hard to see how the public's essential due process right of free access to the law (including a necessary right freely to copy and circulate all or part of a given law for various purposes), can be reconciled with the exclusivity afforded a private copyright holder.…

*Bldg. Officials & Code Adm. v. Code Tech., Inc.*, 628 F.2d 730, 734, 736 (1st Cir. 1980).

Professor Fuller wrote:

> Even if only one man in a hundred takes the pains to inform himself concerning, say, the laws applicable to the practice of his calling, this is enough to justify the trouble taken to make the laws generally available.  The citizen at least is entitled to know, and he cannot be identified in advance.…  [I]f the laws are not made readily available, there is no check against a disregard of them by those charged with their application and enforcement.  Finally, the great bulk of modern laws relate to specific forms of activity, such as carrying on particular professions or business; it is therefore quite immaterial that they are not known to the average citizen.  The requirement that laws be published does not rest on…an expectation that the dutiful citizen will sit down and read them all.

Lon L. Fuller, *The Morality of Law* 51 (rev. ed. 1969).

"Rudimentary justice requires that those subject to the law must have a means of knowing what it prescribes."  Antonin Scalia, *The Rule of Law as a Law of Rules*, 56 U. Chi. L. Rev 1175, 1179 (1989).  Indeed, one of the principal

24

historical events leading to the Federal Register Act (Pub. L. No. 74-220, ch. 417, 49 Stat. 500-503 (July 26, 1935)) was a government action to enforce an administrative oil quota rule that, it turned out, did not exist. *Oil Suit Dismissed in Supreme Court*, N.Y. Times, Oct. 2, 1934, at 6; *see also* Erwin N. Griswold, *Governance in Ignorance of the Law — A Plea for Better Publication of Executive Legislation*, 48 Harv. L. Rev. 198 (1934) (arguing for creation of a federal register).  The "basic principle of due process" is designed to protect citizens' autonomous choice "to steer between lawful and unlawful conduct," to constrain law enforcement, and to prevent chilling First Amendment protected speech. *Grayned v. City of Rockford*, 408 U.S. 104, 108–09 (1972).

This is no less important when a law has incorporated material by reference. "[R]egulatory beneficiaries of all sorts, as well as regulated entities, have a strong and direct interest in access to the content of regulatory standards—including [incorporated-by-reference] material—because it directly affects their interests and can potentially affect their conduct.  Accordingly, if notice is to be effective, ready public access must be provided to anyone potentially affected by the law, not just to those who must comply."  Nina A Mendelson, *Private Control over Access to Public Law: The Perplexing Federal Regulatory Use of Private Standards*, 112 Mich. L. Rev. 737, 771 (2014).  The injunction in this case thwarts those rights,

and the public interest, by enforcing private parties' claims of power to restrict that access.

## II.    The SDOs Cannot Control Dissemination of Laws and Regulations by Others Through a Copyright Statutory Monopoly.

The decision below misapplied copyright law, making it incompatible with the First, Fifth, and Fourteenth Amendments.

### A.    Federal and State Laws and Regulations Are Not Subject to Copyright.

Because the public must be able—without paying a toll or needing permission—to study, understand, and comment on the rules it lives by, no copyright exists in the law itself.  This is true for federal, state, and local statutes and for regulations implementing those statutes.  It is also true where, as is often the case, volunteers draft the text and a legislature or agency enacts it.

### 1.    An unbroken line of case law holds copyright does not apply to the law.

The Supreme Court's first copyright decision, *Wheaton v. Peters*, 33 U.S. (8 Pet.) 591  (1834), established the principle that texts that constitute the law are in the public domain and cannot be under private control.  In that case, one of the Court's official reporters claimed copyright in his annotated collections of the Court's opinions.  The Court declared it was "unanimously of opinion that no reporter has or can have any copyright in the written opinions delivered by this Court."  *Id.* at 668.

In *Banks v. Manchester*, 128 U.S. 244 (1888), the Court rejected a similar copyright claim by a court reporter of the Ohio Supreme Court. "The whole work done by the judges constitutes the authentic exposition and interpretation of the law, which, binding every citizen, is free for publication to all, whether it is a declaration of unwritten law, or an interpretation of a constitution or a statute." *Id.* at 253. In 1898, the Sixth Circuit observed that "any person desiring to publish the statutes of a state may use any copy of such statutes to be found in any printed book, whether such book be the property of the state or the property of an individual." *Howell v. Miller*, 91 F. 129, 137 (6th Cir. 1898) (Harlan, J.).

Decisions such as *Banks* "represent[] a continuous understanding that 'the law,' whether articulated in judicial opinions or legislative acts or ordinances, is in the public domain and thus not amenable to copyright." *Veeck v. S. Bldg. Code Cong. Int'l, Inc.*, 293 F.3d 791, 796 (5th Cir. 2002) (*en banc*). The U.S. Copyright Office practice adopts this fundamental principle with respect to all forms of law from all sources:

> As a matter of longstanding public policy, the U.S. Copyright Office will not register a government edict that has been issued by any state, local, or territorial government, including *legislative enactments, judicial decisions, administrative rulings, public ordinances, or similar types of official legal materials*. Likewise, the Office will not register a government edict issued by any foreign government.

U.S. Copyright Office, Compendium of Copyright Office Practices § 313.6(c)(2) (3d ed. 2014) (emphasis added).

27

Exclusion of law from copyright does not depend on who funded creation of the law.  Instead, the "authentic exposition and interpretation of the law," because it is binding on every citizen, must be "free for publication to all." *Banks*, 128 U.S. at 254.  Or, as the First Circuit put it nearly a century later:  "The citizens are the authors of the law, and therefore its owners, regardless of who actually drafts the provisions, because the law derives its authority from the consent of the public, expressed through the democratic process." *Bldg. Officials*, 628 F.2d at 734.

### 2.    The plain text of the Copyright Act reinforces this understanding.

The exclusion of the law from the copyright statutory monopoly long predates the 1976 Copyright Act, but the Act reinforces the principle.  Section 102(b) of the Act, 17 U.S.C. § 102(b), precludes copyright for "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."  As the Supreme Court recognized in *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003), the exclusion of ideas and facts from copyright protection is essential to balancing copyright and free speech protections.

> [C]opyright contains built-in First Amendment accommodations.
> First, it distinguishes between ideas and expression and makes only
> the latter eligible for copyright protection.…  As we said in *Harper &*

28

> *Row* [*Publ'rs, Inc. v. Nation Enters.*, 471 U.S. 539 (1985)], this "idea/expression dichotomy strike[s] a definitional balance between the First Amendment and the Copyright Act by permitting free communication of facts while still protecting an author's expression." 471 U.S., at 556 (internal quotation marks omitted). Due to this distinction, every idea, theory, and fact in a copyrighted work becomes instantly available for public exploitation at the moment of publication. *See Feist* [*Pubs., Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, at 349-50 (1991)].

*Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003); *see also Golan v. Holder*, 132 S. Ct. 873, 889-91 (2012).

Law falls easily on the "idea" side of this dichotomy. It is a "*system* of rules that a particular country or community recognizes as regulating the actions of its members and may enforce by the imposition of penalties." *See* "Law," Oxford English Dictionary, *available at* https://www.oxforddictionaries.com (emphasis added). A "*principle*" is: "1a: a comprehensive and fundamental law, doctrine, or assumption; 1b(1): a rule of code of conduct.…" Merriam Webster Ninth New Collegiate Dictionary (1989). The law itself as a system, and particular laws as principles, are expressly outside the scope of copyright. 17 U.S.C. § 102(b). *See generally* L. Ray Patterson & Craig Joyce, *Monopolizing the Law: the Scope of Copyright Protection for Law Reports and Statutory Compilations*, 36 UCLA L. Rev. 719, 777 (1999).[7]

---

[7] Section 105 of the Copyright Act, 17 U.S.C. § 105, denies copyright for any work of the U.S. Government and reflects a related principle. While laws and regulations are a subset of U.S. Government works, section 105 recognizes that

### B.    Laws and Regulations Incorporated by Reference Are No Different from Other Laws.

The exclusion of all laws and regulations from the private copyright

monopoly does not vary by their mode of enactment.

### 1.    Incorporated standards are government edicts that fall outside copyright.

As the Fifth Circuit concluded in *Veeck*, once a government turns a standard

into law, the people become its owner no matter who originally drafted it.  That

case arose because Veeck, operating an informational website about north Texas,

posted online model building codes that two Texas towns had adopted by

reference.  293 F.3d at 793. The SDO that developed the codes sued for copyright

infringement.  Sitting *en banc*, the Fifth Circuit rejected the claim:

> The very process of lawmaking demands and incorporates
> contributions by "the people," in an infinite variety of individual and
> organizational capacities.  Even when a governmental body
> consciously decides to enact proposed model building codes, it does
> so based on various legislative considerations, the sum of which
> produce its version of "the law."  In performing their function, the
> lawmakers represent the public will, and the public are the final
> "authors" of the law.…  [P]ublic ownership of the law means
> precisely that "the law" is in the "public domain" for whatever use the
> citizens choose to make of it.  Citizens may reproduce copies of the

_____

that the *operating documents of a democratic government are in the public domain*.  Section 105 applies to all U.S. Government documents beyond laws, such as NASA photographs or FTC consumer guides.  The government-edicts exclusion applies to all edicts of governments at all levels, foreign and domestic, not just U.S. Government edicts.  Because this case involves federal, state, and municipal laws, Public.Resource.Org relies on the broader government-edicts exclusion as well as the other copyright doctrines it addresses.

30

> law for many purposes, not only to guide their actions but to influence
> future legislation, educate their neighborhood association, or simply
> to amuse.

293 F.3d at 799.

The Fifth Circuit's reasoning in *Veeck* echoes that of the First Circuit in

*Bldg. Officials*.  In *Bldg. Officials*, the First Circuit vacated a preliminary

injunction for the creator of a model building code that Massachusetts had

adopted.  628 F.2d at 731.  The court remanded, explicitly recognizing the due

process implications in the copyright context.  *Id.* at 734, 736 (quoted above

at 22-23).

The federal government began incorporating regulations by reference to

limit the bulk of the CFR.  That goal, however laudable in the past, is essentially

irrelevant in the age of the Internet, where an electronic CFR could easily

accommodate the text of incorporated materials, whether included directly in the

text or hyperlinked.  Nor does that goal justify private control over regulations that

bind the public. As much as landmark healthcare acts or Supreme Court civil-

rights decisions, the standards at issue here are legal rules.  That is why, as the

AERA Plaintiffs admit, people "believe they still may be held accountable" to

them.  JA2212-13(AERA-Dkt-60-1 at 1, 11).

Indeed, creating a special exception for laws drafted by private parties and

incorporated by reference would lead easily to absurd results.  Many legislative

bills originate with private parties that author them and then seek legislative

approval. *See* Victoria F. Nourse & Jane S. Schachter, *The Politics of Legislative*

*Drafting: a Congressional Case Study,* 77 N.Y.U. L. Rev. 575, 583 (2002)

(lobbyists as external drafters of legislation); K. Kindy, *In Trump era, lobbyists*

*boldly take credit for writing a bill to protect their industry*, Washington Post

(July 31, 2017).[8]  As the Solicitor General stated in opposing certiorari in *Veeck*, if

copyright protection for standards were accepted, "there would be 'no outer limit

on claims of copyright prerogatives by nongovernmental persons who contribute

to writing "the law" such as lobbyists or law professors.  An individual who

drafted a statute or amendment later adopted by Congress could claim copyright

in the text.'"  Brief for the United States as Amicus Curiae at 15, quoting *Veeck*,

293 F.3d at 799.[9]

To take a concrete example, if a government adopts a model bill from a

private entity such as the American Legislative Exchange Council, no one would

think ALEC could charge copyright royalties for public display of that law.  There

is no meaningful difference between that adoption process and incorporation by

_____

[8] Available at https://www.washingtonpost.com/powerpost/in-trump-era-lobbyists-boldly-take-credit-for-writing-a-bill-to-protect-their-industry/2017/07/31/eb299a7c-5c34-11e7-9fc6-c7ef4bc58d13_story.html.

[9] Available at https://www.justice.gov/sites/default/files/osg/briefs/2002/01/01/2002-0355.pet.ami.inv.pdf.

reference; in both cases a private monopoly cannot rightly restrict, or impose a toll on, expressions of the law.

To be clear, "copyrighted works do not 'become law' merely because a statute refers to them." *See Veeck*, 293 F.3d at 805 (citing 1 Goldstein on Copyright § 2.49 n.45.2). This case involves no mere citations to reference works. Instead, governments have expressly adopted the documents at issue as binding laws through incorporation by reference. *See* JA1877-1881(ASTM-Dkt-122-9 at 84-88) (Office of Federal Register: material incorporated by reference has force and effect of law); *Myers*, 553 F.3d at 331 (material incorporated by reference has same force of law as incorporating regulation).

### 2. The contents and language of incorporated laws and regulations are also uncopyrightable facts.

The Fifth Circuit in *Veeck* observed that, once adopted into law, "codes are 'facts' under copyright law. They are the unique, unalterable expression of the 'idea' that constitutes local law." 293 F.3d at 801. In other words, by virtue of government action, the idea and the expression have merged. And "[w]hen there is essentially only one way to express an idea, the idea and expression are inseparable, and copyright is no bar to copying that expression." *Concrete Mach. Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 606 (1st Cir. 1988). The Fifth Circuit also expressly rejected the notion that some laws might be "less factual" than others: "It should be obvious that for copyright purposes, laws are 'facts': the

33

U.S. Constitution is a fact; the Federal Tax Code and its regulations are facts; the Texas Uniform Commercial Code is a fact. Surely, in principle, the building codes of rural Texas hamlets are no less 'facts' than the products of more august legislative or regulatory bodies." *Veeck*, 293 F.3d at 801.

Similarly, documents that embody government determinations, even ones that private parties designed and proposed, are facts not subject to copyright. In *Kern River Gas Transmission Co. v. Coastal Corp.,* 899 F.2d 1458 (5th Cir. 1990), the plaintiff took a United States Geographical Survey topographical map and marked it to indicate where it proposed to locate a pipeline. The Federal Energy Regulatory Commission approved the route. The defendant then copied the marked map to prepare a competing bid. The court concluded that "the idea of the location of the pipeline and its expression embodied in [the map] are inseparable and not subject to protection." *Id*. at 1463–64. "To extend protection to the lines would be to grant Kern River a monopoly of the idea for locating a proposed pipeline in the chosen corridor, a foreclosure of competition that Congress could not have intended to sanction through copyright law." *Id.*

As in *Kern*, in this case, after the initial creation, government officials gave legal effect to the SDOs' documents. At the point of incorporation into law, the idea or fact (the law) and the expression (the documents that governments

34

incorporated by reference) became inseparable and therefore not subject to copyright.

### C. The District Court Created an Unnecessary Constitutional Conflict by Its Misapplication of Copyright Law.

The district court's opinion misapplied the Copyright Act and related doctrines, creating an unnecessary conflict between the Copyright Act on one hand and the First, Fifth, and Fourteenth Amendments on the other.  *First*, the district court focused solely on the right of others to access the standards, ignoring Public.Resource.Org's right to recite and disseminate the law free of the copyright monopoly.  It is no answer to an improper injunction against a newspaper or legal reporter to say that the public can get its news or laws elsewhere. Public.Resource.Org has its own right to recite and disseminate the law in its unique way, adapting its presentation of the law so that it is text-searchable, accessible to the visually impaired, and amenable to large-scale data analysis.

*Second*, the district court erroneously relied on *CCC Info. Servs., Inc. v. Maclean Hunter Mkt. Reports, Inc.*, 44 F.3d 61, 74 (2d Cir. 1994), *Cty. Of Suffolk v. First Am. Real Estate Sols.*, 261 F.3d 179 (2d Cir. 2001), and *Practice Mgmt. Info. Corp. v. Am. Med. Ass'n*, 121 F.3d 516 (9th Cir. 1997), for the proposition that due process constitutional concerns do not trump copyright.  JA2082-2085(ASTM-Dkt-175 at 24-27).  But those cases, unlike *Veeck*, did not involve government edicts.  Instead, they "'involved compilations of data that had

35

received  governmental approval, not content that had been enacted into positive law'." *Veeck*, 293 F.3d at  805 (citing 1 Goldstein on Copyright § 2.49 n.45.2).

In *CCC*, the defendant argued that the Red Book, an automobile valuation reference, was in the public domain because state insurance regulations included it as one  possible basis for valuing total losses.  44 F.3d at 73.  The Red Book was neither a government edict nor a set of rules; it was simply one of several approved references.  *See id.* and n.29; *cf.* N.J. Admin. Code 11:3-10.4 (1988); 11 N.Y. Admin. Code § 216.7(c) (1990) (both available at 1995 WL 17047923 at 71a-75a).

*Practice Management* also presented different circumstances.  In that case, the American Medical Association ("AMA") had created and copyrighted tables of code numbers with matching descriptions of medical procedures, the Physician's Current Procedural Terminology ("CPT"), for physicians to report their services.  *Practice Mgmt.*, 121 F.3d at 517.  The AMA granted the federal Health Care Financing Administration ("HCFA") a non-exclusive, royalty-free license to use the CPT in  exchange for HFCA's promise that it would not use any other set of code numbers.  *Id.* at 517–18.  HCFA later created its own coding system for Medicare and Medicaid claims, the HCFA common procedure coding system ("HCPCS"), that included the AMA code numbers but added new

36

information that HFCA developed.  See *Veeck*, 293 F.3d at 805 (citing 50 Fed.

Reg. 40895,  40897).

Practice Management, a publisher of medical books, asked the AMA for a

discount to use the AMA's code numbers (not the government's HCPCS system).

When the AMA refused, Practice Management sought a declaratory judgment that

AMA's copyright was unenforceable.  *Practice Mgmt.*, 121 F.3d at 518.  On those

facts, the Ninth Circuit concluded that the AMA's copyright in the CPT coding

lists was, in theory, enforceable against Practice Management.  *Id*. at 520–21.

(Nevertheless, the court ultimately refused to enforce that copyright, concluding

that AMA had misused its copyright by forcing HCFA's agreement not to adopt

any coding system besides CPT.  *Id.* at 521.)

The issues here are very different.  The plaintiff in *Practice  Management*

did not seek to publish the government's own document (the HCPCS).  As  the

Fifth Circuit noted in *Veeck*:

> [U]nlike Veeck, Practice Management Information Corporation, a
> commercial publisher of medical textbooks, was not trying to publish
> its own version of the HCPCS.  Practice Management desired to sell a
> cheaper edition of the AMA's code, which was also used by insurance
> companies and had other non-governmental uses.  *It is not clear how
> the Ninth Circuit would have decided the case if Practice
> Management had published a copy of the HCPCS.*

293 F.3d at 805 (emphasis added).  In other words, what had become the law was

quite different from the original coding lists; it appeared that the plaintiff was

37

interested only in publishing only the AMA's lists, not the law.  In this case, as in *Veeck*, Public.Resource.Org wishes to post online only what has been expressly adopted as law.

Moreover, in contrast to the coding lists at issue in *Practice Management*, the standards here read and function as rules and principles.  In *Practice Management* the medical codes were never themselves law, even if regulations required persons to refer to the codes.  Here, as with the text of the model building code in *Veeck*, the incorporated standards are part of the law itself.

*Third*, the district court wrongly treated the public's due process interests in access to the laws as a mere "policy judgment" of Congress, citing federal regulations specifying minimum access as expressing that policy judgment.  The district court thus deflected the constitutional importance of access to the law. Moreover, federal regulations specifying minimum access to federal materials have no bearing on the many *state and municipal* laws and regulations that incorporate standards by reference.

*Fourth*, the district court erroneously assumed that existing access was sufficient.  JA2080(ASTM-Dkt-175 at 22).  That assumption is plainly inconsistent with the SDOs' own statements.  They have repeatedly emphasized that they should be able to control access to the standards at issue, including the right not to make them available at all.  JA2189, JA2190(AERA-Dkt-14 ¶¶ 14,

19); JA2925(AERA-Dkt-68-7 at 23).  For example, one plaintiff discontinued sales of its standards in order to stimulate sales of a later edition that had not yet been incorporated into law.  JA2213(AERA-Dkt-60-1 at 11).  As an apparent strategic move in this litigation, it later resumed sales of the earlier edition in a cursory fashion.  But it still claims the power to suppress access to the standards in its discretion.  Indeed, it is likely to do so as soon as this litigation ends, considering its statements that the mere availability of the 1999 Standards is dangerous because they are "outdated."  Furthermore, SDOs that offer some incorporated standards in online reading rooms impose undue restrictions and barriers.  Congress cannot, and did not, authorize such barriers as a simple "policy judgment."  *Cf.* JA2082(ASTM-Dkt-175 at 24).

*Fifth*, the district court also construed the exclusions from copyright in Section 102(b) incorrectly, suggesting that if Congress had wished to treat laws incorporated by reference as uncopyrightable, it could have done so explicitly in that section when it drafted the 1976 Copyright Act.  That theory assumes anyone believed laws were copyrightable to begin with, or that Congress had any particular intention about laws incorporated by reference.  Since *Wheaton v. Peters*, law itself had been outside copyright.  Moreover, because laws are themselves facts, law already falls squarely within the Section 102(b) exclusions from copyright and within the merger doctrine that courts apply in construing the

exclusions.  Section 102(b) helps ensure that "courts do not unwittingly grant protection to an idea by granting exclusive rights in the only, or one of only a few, means of expressing that idea."  *R.W. Beck, Inc. v. E3 Consulting*, 577 F.3d 1133, 1145 (10th Cir. 2009) (citation omitted).  This is the only way to express a law, including a law incorporated by reference: using the language of the law itself.

　　The district court's errors created a needless conflict between copyright and the Constitution.  Allowing private organizations to own exclusive rights to the law, through the guise of copyright, would necessarily mean that those copyright claimants could dictate the terms of public speech and access to the law, without regard for the public's First Amendment and due process rights.  If the district court is correct that Congress authorized private ownership of the law, that authorization violated the Constitution and cannot stand.  Copyright, while authorized by the Constitution, is a statutory right.  *Silvers v. Sony Pictures Entm't, Inc.*, 402 F.3d 881, 883–84 (9th Cir. 2005).  It cannot trump fundamental constitutional rights.

　　But there is no need for this conflict.  Properly interpreted, Section 102(b) and the related merger and "government edicts" doctrines—individually or together—avoid this constitutional tension.

40

### III.    Public.Resource.Org's Dissemination of Laws and Regulations Is a Fair Use of the SDO Standards Documents.

Even if the SDOs retain enforceable rights over their standards,

Public.Resource.Org's posting of standards documents as part of a free, non-profit

archive of federal and state laws is a non-infringing fair use as a matter of law.  At

the very least, Public.Resource.Org presented genuine issues of material fact that

should have precluded summary judgment.  Moreover, because the district court's

erroneous fair use ruling relied in part upon evidence it should have excluded, if

this Court remands it should first reverse the district court's wrongful admission

of expert testimony, particularly testimony that merely relayed the subjective

opinions of the SDOs themselves.[10]

---

[10] The ASTM Plaintiffs' purported expert, John Jarosz, had no experience relating to standards development.  JA1882(ASTM-Dkt-124-3); JA409(ASTM-Dkt-118-12) (expert report).  His opinion that Public.Resource.Org's activities would cause harm to the market for the SDOs' standards admittedly rested almost entirely on the opinions of the SDOs' executives.  *Id.*  His testimony was therefore "nothing more than advocacy from the witness stand."  *See Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356, 1363-64 (Fed. Cir. 2008).  Similarly, the AERA Plaintiffs' expert Kurt Geisinger had experience in educational psychology and psychometrics, but he had no qualifications as an economist.  Therefore he was not qualified to opine about the microeconomics of the standards publications marketplace.  (He had not reviewed the sales figures before his expert report, and his declaration supporting summary judgment relied upon new matter he had not previously disclosed.)  Moreover, his speculative conclusion that the AERA Plaintiffs would cease updating standards as a result of an adverse decision in this case rested solely on self-serving opinions of the AERA Plaintiffs' executives and unreliable assumptions about future conduct.  JA2744-2893(AERA-Dkt-67 through 67-18); JA2696(AERA-Dkt-60-88) (expert report).

As the Supreme Court has stated, "the 'fair use' defense allows the public to use not only facts and ideas contained in a copyrighted work, but also expression itself in certain circumstances." *Eldred*, 537 U.S. at 219. "From the infancy of copyright protection, some opportunity for fair use of copyrighted materials has been thought necessary to fulfill copyright's very purpose, [t]o promote the Progress of Science and useful Arts....' U.S. Const., Art. I, § 8, cl. 8." *Campbell v. Acuff-Rose Music, Inc.,* 510 U.S. 569, 575 (1994). The fair-use doctrine is one of copyright law's "built-in First Amendment accommodations." *Eldred*, 537 U.S. at 219; *see also Golan*, 565 U.S. at 328-29.

Congress entrusted fair use determinations to courts on a case-by-case basis with four nonexclusive statutory fair-use factors. 17 U.S.C. § 107. Determinations require "a consideration of all the evidence in the case," *Mathews Conveyer Co v. Palmer-Bee Co.*, 135 F.2d 73, 85 (6th Cir. 1943), and are "not to be simplified with bright-line rules." *Campbell*, 510 U.S. at 577.

### A.    Public.Resource.Org's Purpose Is to Provide the Public with Free Access to the Laws and Regulations That Govern It.

The first statutory factor considers "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes," and the preamble to section 107 identifies purposes that are characteristic of fair use.

Public.Resource.Org's use fits *all* the preamble's characteristic purposes. Public.Resource.Org presents laws and regulations in their entirety as a public archive for "criticism, comment, news reporting, teaching,…scholarship, and research."  17 U.S.C. § 107.  There is no better way to teach the law to the public than to *provide the public with the law*.  Paraphrases, summaries, and descriptions do not capture the precision that is necessary to understand the legal obligations that governments impose and enforce.

Public.Resource.Org's use of standards to display and disseminate laws and regulations is noncommercial.  Public.Resource.Org is a non-profit corporation depending entirely on donations and grants.  It does not charge any fees to users.

Given these facts, the district court's conclusion that Public.Resource.Org's use "bears 'commercial' elements" and thus "weigh[s] firmly against fair use" was wrong as a matter of law and ignored substantial contrary evidence. JA2092(ASTM-Dkt-175 at 34).  The court's sole stated basis was that Public.Resource.Org posts "identical standards online in the same consumer market."  *Id.*  But that rationale is contrary to overwhelming precedent.  To take just a few examples, the defendants in *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 544 (6th Cir. 2004); *Spurlock*, 645 F. Supp. 2d at 420; *Hustler Magazine, Inc. v. Moral Majority, Inc.*, 606 F. Supp. 1526, 1535 (C.D. Cal. 1985), *aff'd*, 796 F.2d 1148 (9th Cir. 1986); *Righthaven, LLC v. Jama*,

43

No. 2:10–CV–1322 JCM (LRL), 2011 WL 1541613, at *3 (D. Nev. April 22, 2011); *Swatch Grp. Mgmt. Svcs. Inc. v. Bloomberg L.P.*, 756 F.3d 73, 77-78 (2d Cir. 2014); and *Online Policy Grp. v. Diebold, Inc.*, 337 F. Supp. 2d 1195, 1197-98 (N.D. Cal. 2004), all made others' entire works available to a broad public, and all of those uses were ruled fair.

In any event, commercial use does not weigh heavily against fair use:  as the Supreme Court has stated, nearly all of the characteristic fair use purposes in the preamble of Section 107 are generally for profit.  *See Campbell,* 510 U.S. at 584.  Cases affirming summary judgment for commercial defendants on fair use include *Campbell*, 510 U.S. at 573 (defendants sold over 250,000 sound recordings), and *Blanch v. Koons*, 467 F.3d 244 (2d Cir. 2006) (artwork sold for over $1 million).  Public.Resource.Org's mission, and its use of the standards, are far less "commercial" than these adjudicated fair uses.  *See also Hustler Magazine, Inc.*, 606 F. Supp. at 1534, *aff'd*, 796 F.2d 1148 (9th Cir. 1986); *Righthaven*, 2011 WL 1541613, at *3; *Warren Pub. Co. v. Spurlock*, 645 F. Supp. 2d 402, 420 (E.D. Pa. 2009).

Public.Resource.Org's dissemination of laws and regulations is also transformative.  A "transformative" use "adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message."  *Campbell*, 510 U.S. at 578.  A use with a new "intrinsic purpose,"

serving an "entirely different function," is a transformative use.  *Hustler*

*Magazine, Inc.*, 606 F. Supp. at 1535; *see also Perfect 10, Inc. v. Amazon.com,*

*Inc.*, 508 F.3d 1146, 1165 (9th Cir. 2007) (transformative use of images from the

Web in Google Image Search); *Bill Graham Archives v. Dorling Kindersley Ltd.*,

448 F.3d 605, 609-11 (2d Cir. 2006) (reproductions of posters in book about the

Grateful Dead).

 The SDOs' stated purpose for developing standards is to establish uniform

practices in their various industries.  In contrast, Public.Resource.Org posts

legally incorporated standards as part of an effort to make the entirety of current

and historical U.S. law accessible on the Internet, not merely to read but to

analyze, excerpt, and share.  No other broadly accessible archive of all standards

incorporated by reference into federal law exists.  The writings on

Public.Resource.Org's website, along with the advocacy of its founder, Carl

Malamud, explain its context as a unique tool for legal and policy research.  Just

as including full-size color reproductions of magazine cover art in a published

book achieves a transformative purpose when combined with "a history of the

artist and plac[ing] his work into some context," Public.Resource.Org's re-

purposing of the standards into a legal archive with context is a transformative

use.  *See Warren Pub. Co.*, 645 F. Supp. 2d at 421.

45

Public.Resource.Org further transformed the standards by adding HTML codes, MML descriptions of formulas, and vector graphic representations of diagrams. JA1635-1647(ASTM-Dkt-122-6 at 139-151); JA3121-3129(AERA-Dkt-70-50 at 8-16). These enable the public to interact with the texts through word searches, annotations, copy/paste functions, computer-aided analysis, and compatibility with text-to-speech technologies.

These transformations also enabled visually disabled persons to access the standards through screen-reading software and other assistive technologies. *Id*. Neither print versions of the standards nor the ASTM Plaintiffs' online "reading rooms" enable this. *Id.* Providing access for people with disabilities is another purpose that favors fair use. *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 103 (2d Cir. 2014).

Moreover, Public.Resource.Org's use of legally enacted standards *as laws* does not depend on those documents' creativity or technical merit as industry standards or best practices. As part of Public.Resource.Org's legal archive, the standards at issue were transformed "from [items] of expressive content to evidence of the facts within [them]" rendering the expressive content "merely incidental." *Am. Inst. of Physics v. Winstead PC*, No. 3:12–CV–1230–M, 2013 WL 6242843, at *5 (N.D. Tex. Dec. 3, 2013) (use of technical articles in patent proceeding was fair use); *see also Lexmark*, 387 F.3d at 544 (no use "for its

46

commercial value *as a copyrighted work*"); *Bill Graham Archives*, 448 F.3d at 608–09 (use of poster images as "historical artifacts" was transformative); *Bond v. Blum*, 317 F.3d 385, 394–98 (4th Cir. 2003) (use of manuscript in child-custody proceeding as evidence of admissions was transformative).

Put another way, Public.Resource.Org did not post the standards at issue for their technical merit, for their creativity, or even for their effectiveness at promoting safety or uniformity. Instead, Public.Resource.Org selected them because governments had made them into law. Someone researching current best practices in designing buildings, consumer products, or standardized tests will not seek out Public.Resource.Org's website, because the overwhelming majority of standards incorporated into law have been superseded *as private standards* by later editions, while older versions remain *binding law*.

**B.   Public.Resource.Org Displays the SDOs' Documents for Their Factual Status as Laws and Regulations.**

The second fair use factor, the nature of the copyrighted work, recognizes that "some works are closer to the core of intended copyright protection than others." *Campbell*, 510 U.S. at 586. The holdings of *Wheaton* and *Banks* suggest that few things are further from the core of intended copyright protection than laws and other government edicts.

47

"The law generally recognizes a greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row*, 471 U.S. at 563. The precise wording of each standard incorporated into law is itself a legal fact.

### C.    Public.Resource.Org's Purpose Required the Posting of the Complete Documents That Became Laws and Regulations.

The third statutory factor, the amount and substantiality of the portion used, favors fair use where the amount of the original work used is "reasonable in relation to the purpose of the copying." *Authors Guild*, 804 F.3d at 221. The reproduction of entire works is fair use when it reasonably fulfills the user's purpose. *See, e.g.*, *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 449-50 (1984) (recording of entire television programs for time-shifting); *Lexmark*, 387 F.3d at 544 (reproduction of entire computer program for printer compatibility); *Swatch Grp. Mgmt. Servs. Ltd.*, 756 F.3d at 90 (reproduction and dissemination of entire press-conference recordings).

As Public.Resource.Org's purpose is to create a thorough and accurate archive of federal law, it was both reasonable and necessary to post the entire incorporated standards. Posting less would thwart Public.Resource.Org's goal and could mislead users who seek complete regulations. *See Righthaven, LLC v. Jama*, No. 2:10–CV–1322 JCM (LRL), 2011 WL 1541613, at *3 (D. Nev. April 22, 2011) (fair use where impracticable to use less of original); *see also Spurlock*,

48

645 F. Supp. 2d at 418 (reproduction "virtually the same size as the original" was fair use).

### D. There Is No Likely Harm to the Potential Market for, or Value of, the SDOs' Standards as Copyrighted Works.

The fourth factor, the effect of the use on the potential market for or value of the copyrighted work, concerns only "harm cognizable under the Copyright Act." *Campbell*, 510 U.S. at 592. When a use is transformative, "market harm may not be so readily inferred." *Id.* at 591. Thus the market harm caused by "a lethal parody" that "kills demand for the original" does not weigh against fair use. *Id.* Nor does copying of software code to create a competing platform for playing video games, despite causing "some economic loss." *Sony Computer Entm't, Inc. v. Connectix Corp.*, 203 F.3d 596, 607–08 (9th Cir. 2000). Instead, courts look to whether a person seeks to "profit from exploitation of the copyrighted material without paying the customary price." *Harper & Row*, 471 U.S. at 562.

Public.Resource.Org has caused no cognizable harm. First, copyright law does not protect a market for authors to limit or impose tolls on public access to the law. The customary price for the legal right to reproduce, disseminate, and provide access to the law is zero.

In addition, because nearly all of the standards at issue in this case are out of date *as industry standards* (even though they are current or historical *laws*), their traditional commercial value is minimal. For example, sales of the 1999

49

Standards for Educational and Psychological Testing fell off dramatically when the AERA Plaintiffs announced the 2014 edition (which is not at issue here because it is not law). This helps explain why, despite Public.Resource.Org's use of the standards over a period of years, the record in this case reveals *no* harm to the SDOs' revenues.

On the fourth factor, the district court compounded its erroneous first-factor analysis by concluding that, if Public.Resource.Org's purpose was "commercial" (which it is not), "a harm to the potential market for the copyrighted works may be inferred." JA2097(ASTM-Dkt-175 at 39). Dismissing the evidence that no actual harm has occurred during the years of Public.Resource.Org's project, and ignoring the transformative nature of Public.Resource.Org's use, the district court improperly allowed its "commercial purpose" label to become a conclusive presumption against fair use, overriding the other factors. *Campbell* forbids this. 510 U.S. at 590-91.

## IV.    Many Standards May Be U.S. Government Works, Requiring Remand If the Court Does Not Reverse on the Other Copyright Grounds.

After serious faults in the SDOs' copyright ownership claims came to light during discovery, the SDOs shifted their arguments to claim they are *joint authors* with the thousands of volunteers who actually wrote the standards at issue—in stark contrast to (1) copyright registrations claiming the works were made for hire with the SDOs as sole authors; (2) the SDOs' initial claims of ownership based on

50

assignments; and (3) documents in which volunteers expressly disclaimed "joint author" status. *See above* at 11-12.

The SDOs' final stand on ownership introduced a new complication that the district court failed to address: many volunteers were federal employees. Under 17 U.S.C. § 105, U.S. Government works are outside the scope of copyright protection and works that federal employees co-authored within their employment, or at the very least their specific contributions, may be U.S. Government works. *See* 17 U.S.C. §§ 101 (definition of "joint works"), 105 (no copyright in U.S. government works), 201(a) (authors of joint works are co-owners). By ASTM's calculation in 2012, for example, "[o]ver 1,400 individuals from federal agencies [were] actively engaged in 90 percent of [ASTM] standards writing technical committees." JA1033(ASTM-Dkt-120-9 at 2); *see also* JA1499(ASTM-Dkt-122-3 at 12) ("1000 units of U.S. Government participation in ASTM"). The record is similarly unclear for the AERA plaintiffs.[11]

_____

[11] Evidently to prepare for this lawsuit they amended their original federal registration of the 1999 Standards 14 years after publication to claim joint authorship among those three plaintiffs of a "work made for hire." JA3078(AERA-Dkt-70-10); JA3038(AERA-Dkt-68-28); JA2910(AERA-Dkt-68-7 at 8). But it was not until *after* amending their registration they obtained their first "work made for hire/assignment" document from someone who participated in the development of the 1999 Standards. *See* JA2990(AERA-Dkt-68-12); JA2993-3034(AERA-Dkt-68-14 to AERA-Dkt-68-26). And they never sought nor obtained assignments from hundreds of other participants in the development of the 1999 Standards, including the many federal employees and agencies they acknowledge helped develop them. *See* JA2912-2913(AERA-Dkt-68-7 at 10-11). As

51

The district court did not scrutinize the SDOs' "joint author" arguments, nor did it analyze how joint participation by numerous U.S. government volunteers affected copyright.  Instead, the court treated the SDOs' admittedly incorrect copyright registrations as conclusive proof of ownership.

Even if the Court affirms the decision below on all other issues, it should vacate and remand to the district court to analyze the ownership issues, particularly the U.S. government participation in creating all the works.

## V.    The ASTM Plaintiffs Cannot Properly Use Trademark Law to Restrict Public.Resource.Org's Display and Dissemination of Laws and Regulations.

The Supreme Court in *Dastar* rejected an attempt to use trademark law to circumvent the limitations of the Copyright Act.  This Court should do the same.  The district court also wrongly treated the appearance of the names and logos on the documents that Public.Resource.Org reproduced as a "trademark use" of the ASTM Plaintiffs' names and logos.  Finally, the district court mistakenly conflated different circuits' varying nominative fair use standards.

---

Public.Resource.Org pointed out at the summary judgment hearing, because the SDOs changed ownership theories during the case, the record below is a mess regarding the extent of federal government employee participation in authoring the standards.  JA3358-59(100:14-101:9).

52

## A.    *Dastar* Precludes the ASTM Plaintiffs' Trademark Claims.

In *Dastar*, the Supreme Court drew a line between trademark and copyright protection to avoid instances where a party claims trademark rights to prevent expression that is permissible under copyright law.  Otherwise, someone could defeat statutory and constitutional limitations on copyright law by including a trademark within a work, giving the work indefinitely long protection and "creat[ing] a species of mutant copyright law." 539 U.S. at 34.  The Supreme Court defined "origin of goods" in the Lanham Act to "refer[] to the producer of the tangible goods that are offered for sale, and not the author of any idea, concept, or communication embodied in those goods." *Id.* at 37.  In other words, the Lanham Act protects against misleading consumers about the origin of goods, but it does not protect against confusion over the source of content.  In *Dastar*, because the defendant made "arguably minimal" changes to works before distributing them under its own name, there was no Lanham Act violation. *Id.* at 31, 37.

Both the Seventh and Ninth Circuits have agreed that under *Dastar* a plaintiff cannot recover for trademark claims where the core of the injury is the reproduction of material (ordinarily the province of copyright law), even if trademarks appear as part of that material *and* the product at issue is identical to that sold by the plaintiff.  *Phx. Entm't Partners v. Rumsey*, 829 F.3d 817, 828 (7th

Cir. 2016); *Slep-Tone Entm't Corp. v. Wired for Sound Karaoke and DJ Services, LLC*, 845 F.3d 1246, 1249 (9th Cir. 2017).

Here, Public.Resource.Org creates cover pages to the standards at issue, emblazoned with seals indicating that the items replicate the contents of the standards but significantly improve their accessibility and format.  The SDOs do not dispute that Public.Resource.Org makes those changes to the underlying documents.  Public.Resource.Org is therefore the source of the "goods" in question, even if it is not the source of the underlying works.

In short, the ASTM Plaintiffs claim that Public.Resource.Org has wrongly exploited their communicative works in its conduct, not that Public.Resource.Org has wrongly branded or advertised its own products or services.  That type of claim is precisely what *Dastar* precludes, and this case is very similar to a case in which the Seventh Circuit, relying on *Dastar*, said that a defendant could freely exhibit a film "without fear of committing trademark infringement simply because [the production studio's] registered trademark will be displayed when the film is played."  *See Phx. Entm't Partners,* 829 F.3d at 829-30.

**B.    Public.Resource.Org's Use of the ASTM Plaintiffs' Names and Marks Was Not a Trademark Use and, Even If It Were, It Would Be Non-infringing or Fair.**

The names of the ASTM Plaintiffs appear in the standards that they publish. One cannot refer to the standard ASTM A285-78 without printing "ASTM".

Indeed, that is precisely how it appeared when the federal government incorporated it into law at 49 C.F.R. § 171.7 (2009). The same is true for ASHRAE and NFPA.

Similarly, the specific documents that governments incorporated into law have names and logos of the ASTM plaintiffs in them. Language of incorporation by reference typically refers to an entire document. Moreover, it is often impossible to remove names without distorting the standards, because standards use the names to reference other standards. Public.Resource.Org posted versions of these standards with the logos intact to avoid making any intentional changes from the content of the law; any changes like OCR, retyping into HTML, and converting images into vector graphics assist with accessibility and do not alter the content itself.[12]

---

[12] The SDOs have argued that a relatively small number of alleged errors in Public.Resource.Org's scans or optical character recognition are important as reflecting badly on the SDOs' products; they also accuse Public.Resource.Org of jeopardizing safety because of the errors. JA141-143(ASTM-Dkt-118-1 at 46-48). But Public.Resource.Org made clear, with cover sheets and disclaimers, exactly what it was doing in scanning and reformatting the standards. *See, e.g.*, JA62(ASTM-Dkt-1-7) (original cover sheet); JA345(ASTM-Dkt-118-7 at 249) (updated disclaimer); *see also* JA1074, JA1075-1076(ASTM-Dkt-121-5 ¶¶16, 20-22). One error consisted of a page scanned upside down, which was self-evidently an error on Public.Resource.Org's part. Many other "errors" that the SDOs accused Public.Resource.Org of creating were present in the original editions of the standards as incorporated into law—errors that the SDOs' members corrected in subsequent editions that are *not* incorporated into the law. *See, e.g.*, JA376-378(ASTM-Dkt-118-8 ¶54) (NFPA CEO alleging that Public.Resource.Org omitted an important electrical shielding requirement and used incorrect cross-

The district court incorrectly construed appearances of the ASTM Plaintiffs' names and logos as trademark uses. As Public.Resource.Org explained above, however, it does not use or wish to use any others' marks to identify the source or origin of its own work. Instead Public.Resource.Org strives for accuracy and completeness by including the full standards that have become law, unaltered just as the law incorporated them, with a disclaimer.[13]

The district court also incorrectly applied conflicting pieces of various circuits' nominative fair use tests and trademark-infringement standards, without acknowledging that different circuits varied in their approach and their tests could not be combined coherently. As a result, the district court did not actually follow any of the circuits' tests, and it instead came to a circular argument that "because the court has already determined that consumer confusion as to the source of the trademarked standards is likely, the nominative fair use defense is inapplicable." JA2109(ASTM-Dkt-175 at 51).

---

references); JA1754-1758(ASTM-Dkt-122-8 at 75-79) (NFPA errata correcting this same shielding requirement and cross-referencing problem in its own document); JA1079(ASTM-Dkt-121-5 ¶¶32-35).

[13] Had Public.Resource.Org removed the ASTM Plaintiffs' names and logos, they might well have sued anyway under either a "reverse passing off" trademark theory or a "copyright management information" copyright theory. Public.Resource.Org is indifferent to the presence or absence of the logos or names, so long as the public understands what the incorporated documents are. That the ASTM Plaintiffs would likely object to the documents either way shows that the alleged trademark violation consists simply of the reproductions and display, making *Dastar* preclusion appropriate.

56

Different circuits approach nominative fair use differently, and this Court appears not to have addressed the issue. Any coherent approach would protect Public.Resource.Org here. Public.Resource.Org recommends this Court consider either the Ninth Circuit or the Second Circuit approach. In the Ninth Circuit, the doctrine applies where:

> First, the product or service in question must be one not readily identifiable without use of the trademark; second, only so much of the mark or marks may be used as is reasonably necessary to identify the product or service; and third, the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

*New Kids on the Block v. News America Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992); s*ee also Toyota Motor Sales, U.S.A., Inc. v. Tabari*, 610 F.3d 1171, 1175 (9th Cir. 2010); *Playboy Enters., Inc. v. Welles*, 279 F.3d 796 (9th Cir. 2002).

Alternatively, the Second Circuit's approach in *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 102-03 (2d Cir. 2010), would also protect Public.Resource.Org. The Second Circuit did not formally adopt the nominative fair use doctrine but used its concepts in a typical likelihood-of-confusion analysis to find no trademark infringement as a matter of law. Whether one articulates a distinct nominative fair use doctrine, folds the concepts into an infringement analysis, or considers Public.Resource.Org's uses not to be "trademark use" at all, the result is the same: as a matter of law there is no trademark infringement here.

57

The district court drew a wrong conclusion without applying *Dastar* correctly, without properly appraising nominative fair use and infringement standards, and without applying the correct summary judgment standard.[14]  This Court should reverse the district court with instructions to grant judgment to Public.Resource.Org on the trademark claims.  In the alternative, the Court should vacate summary judgment and the trademark injunction and remand the case with instructions to apply the correct trademark law and summary judgment standards.

## CONCLUSION

For the reasons Public.Resource.Org stated above, this Court should reverse the summary judgment decisions of the district court, vacate the permanent injunctions, and direct entry of judgment in favor of Public.Resource.Org on all claims.  In the alternative, the Court should reverse the summary judgment decisions of the district court, including that court's rulings on copyright ownership and fair use defenses under copyright and trademark law; reverse the evidentiary rulings of the district court; vacate the injunctions; and remand the case for further proceedings.

---

[14] There is no evidence of consumer confusion in this case, and the ASTM Plaintiffs did not submit an expert report concerning trademark issues.

58

Dated:  February 14, 2018

Respectfully submitted,

FENWICK & WEST LLP


By:  */s/ Andrew P. Bridges*
 Andrew P. Bridges
 abridges@fenwick.com
 Matthew Becker
 mbecker@fenwick.com
 FENWICK & WEST LLP
 555 California Street, 12th Floor
 San Francisco, CA  94104
 Telephone:    (415) 875-2300
 Facsimile:     (415) 281-1350

 Corynne McSherry
 corynne@eff.org
 Mitchell L. Stoltz mitch@eff.org
 ELECTRONIC FRONTIER
 FOUNDATION
 815 Eddy Street
 San Francisco, CA 94109
 Telephone: (415) 436-9333
 Facsimile:  (415) 436-9993

 David Halperin
 davidhalperindc@gmail.com
 1530 P Street NW
 Washington, DC 20005
 Telephone: (202) 905-3434

Attorneys for Appellant
Public.Resource.Org, Inc.

## CERTIFICATE OF COMPLIANCE

1.    This document complies with the word limit of Fed. R. App. P.

32(a)(7) because, excluding the parts of the document exempted by Fed. R. App.

P. 32(f), this document contains 12,959 words, according to the word-processing

program used to prepare it.

2.    This document complies with the typeface requirements of Fed. R.

App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6)

because it uses proportionally spaced 14-point Times New Roman typeface.


February 14, 2018                By:  */s/ Andrew P. Bridges*
                                      Andrew P. Bridges

                                 Attorneys for Appellant
                                 Public.Resource.Org, Inc.

60

## CERTIFICATE OF SERVICE

I, Andrew P. Bridges, hereby certify that on February 14, 2018, I

electronically filed the foregoing **Appellant Public.Resource.Org's Final**

**Consolidated Opening Brief** with the United States Court of Appeals for the

District of Columbia Circuit through the Court's CM/ECF system, which will

serve all counsel who are registered CM/ECF users, as follows:

| | |
|---|---|
| American Society for Testing and Materials<br><br>Plaintiff - Appellee | Michael F. Clayton<br>Email: jrubel@morganlewis.com<br>Morgan, Lewis & Bockius LLP<br>1111 Pennsylvania Avenue, NW<br>Washington, DC 20004 |
| | Allyson Newton Ho, Attorney<br>Email: allyson.ho@morganlewis.com<br>Morgan, Lewis & Bockius LLP<br>1717 Main Street, Suite 3200<br>Dallas, TX 75201-7347 |
| National Fire Protection Association, Inc.<br><br>Plaintiff - Appellee | Kelly M. Klaus, I, Esquire, Attorney<br>Email: Kelly.Klaus@mto.com<br>Munger, Tolles & Olson LLP<br>560 Mission Street, 27th Floor<br>San Francisco, CA 94105 |
| | Donald B. Verrilli, Jr., Attorney<br>Email: donald.verrilli@mto.com<br>Munger, Tolles & Olson LLP<br>1155 F Street, NW<br>Washington, DC 20004 |

American Society of Heating,
Refrigerating, and Air-Conditioning
Engineers, Inc.

              Plaintiff - Appellee

Joseph Richard Wetzel, Attorney
Email: jwetzel@kslaw.com
King & Spalding
101 Second Street, Suite 2300
San Francisco, CA 94105

Jeffrey S. Bucholtz, Esquire
Email: jbucholtz@kslaw.com
King & Spalding LLP
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006-4706

Jason Blake Cunningham
Email: bcunningham@kslaw.com
King & Spalding LLP
401 Congress Avenue, Suite 3200
Austin, TX 78701

Paul Alessio Mezzina, Attorney
Email: pmezzina@kslaw.com
King & Spalding LLP
Firm: 202-737-0500
1700 Pennsylvania Avenue, NW
Suite 200
Washington, DC 20006-4706

American Educational Research
Association, Inc.

              Plaintiff - Appellee

John I. Stewart, Jr.
Direct: 202-624-2685
Email: jstewart@crowell.com
[COR LD NTC Retained]
Crowell & Moring LLP
Firm: 202-624-2500
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595

Clifton S. Elgarten, Esquire, Attorney
Direct: 202-624-2523
Email: celgarten@crowell.com
Fax: 202-628-5116
[COR NTC Retained]
Crowell & Moring LLP

Firm: 202-624-2500
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595

American Psychological Association, Inc.

National Council on Measurement In
Education, Inc.

Plaintiff - Appellee

John I. Stewart, Jr.
Direct: 202-624-2685
Email: jstewart@crowell.com
[COR LD NTC Retained]
Crowell & Moring LLP
Firm: 202-624-2500
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595

Clifton S. Elgarten, Esquire, Attorney
Direct: 202-624-2523
Email: celgarten@crowell.com
Fax: 202-628-5116
[COR NTC Retained]
Crowell & Moring LLP
Firm: 202-624-2500
1001 Pennsylvania Avenue, NW
Washington, DC 20004-2595

February 14, 2018    By: */s/ Andrew P. Bridges*
                          Andrew P. Bridges

Attorneys for Appellant
Public.Resource.Org, Inc.

# ADDENDUM OF STATUTORY

# AND OTHER TEXTS

# TABLE OF CONTENTS TO ADDENDUM

**Statute or Other Text**             **Page**

U.S. Const. art. I, § 8, cl. 8 ..................................................................ADD-4

U.S. Const. amend. I ............................................................................ADD-4

U.S. Const. amend. V ...........................................................................ADD-4

U.S. Const. amend. XIV, Section 1 .....................................................ADD-4

5 U.S.C. § 552(a)(1) ............................................................................ADD-5

17 U.S.C. § 101 (selected definitions) ................................................ADD-6

17 U.S.C. § 102(b) ..............................................................................ADD-7

17 U.S.C. § 105 ...................................................................................ADD-7

17 U.S.C. § 107 ...................................................................................ADD-7

17 U.S.C. § 201(a) ..............................................................................ADD-8

28 U.S.C. § 1292(a)(1) ........................................................................ADD-9

1 C.F.R. § 51.1 ..................................................................................ADD-10

1 C.F.R. § 51.3 ..................................................................................ADD-11

1 C.F.R. § 51.5 ..................................................................................ADD-12

1 C.F.R. § 51.7 ..................................................................................ADD-13

1 C.F.R. § 51.9 ..................................................................................ADD-14

1 C.F.R. § 51.11 ................................................................................ADD-15

34 C.F.R. § 668.146(b)(6) .................................................................ADD-16

49 C.F.R. § 171.7(a), (h), (y) ............................................................ADD-17

Compendium of the U.S. Copyright Office Practice (2014),
    Section 313.6(C)(2) ....................................................................ADD-22

Minnesota Administrative Rules - Rule 4761.2460, Subp. 2(C)...................ADD-23

N.J. Admin. Code § 11:3-10.4 (1988) (available at 1995 WL
    17047923 at 71a-73a) .................................................................ADD-24

11 N.Y. Admin. Code § 216.7(c) (1990) (available at 1995 WL
    17047923 at 73a-75a) .................................................................ADD-25

**U.S. Const. art. I, § 8, cl. 8**

The Congress shall have Power

\* \* \*

To promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries;

\* \* \*

**U.S. Const. amend. I**

Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble, and to petition the government for a redress of grievances.

**U.S. Const. amend. V**

No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a grand jury, except in cases arising in the land or naval forces, or in the militia, when in actual service in time of war or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

**U.S. Const. amend. XIV, Section 1**

All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the state wherein they reside. No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

**5 U.S.C. § 552(a)(1)**

**Public information; agency rules, opinions, orders, records, and proceedings**

(a)   Each agency shall make available to the public information as follows:

   (1)   Each agency shall separately state and currently publish in the Federal Register for the guidance of the public—

      (A)   descriptions of its central and field organization and the established places at which, the employees (and in the case of a uniformed service, the members) from whom, and the methods whereby, the public may obtain information, make submittals or requests, or obtain decisions;

      (B)   statements of the general course and method by which its functions are channeled and determined, including the nature and requirements of all formal and informal procedures available;

      (C)   rules of procedure, descriptions of forms available or the places at which forms may be obtained, and instructions as to the scope and contents of all papers, reports, or examinations;

      (D)   substantive rules of general applicability adopted as authorized by law, and statements of general policy or interpretations of general applicability formulated and adopted by the agency; and

      (E)   each amendment, revision, or repeal of the foregoing.

Except to the extent that a person has actual and timely notice of the terms thereof, a person may not in any manner be required to resort to, or be adversely affected by, a matter required to be published in the Federal Register and not so published. For the purpose of this paragraph, matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register.

**17 U.S.C. § 101 (selected definitions)**

**Definitions**

Except as otherwise provided in this title, as used in this title, the following terms and their variant forms mean the following:

\* \* \*

A "joint work" is a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole.

\* \* \*

A "work of the United States Government" is a work prepared by an officer or employee of the United States Government as part of that person's official duties.

A "work made for hire" is—

(1)    a work prepared by an employee within the scope of his or her employment;

(2)    a work specially ordered or commissioned for use as a contribution to a collective work, as a part of a motion picture or other audiovisual work, as a translation, as a supplementary work, as a compilation, as an instructional text, as a test, as answer material for a test, or as an atlas, if the parties expressly agree in a written instrument signed by them that the work shall be considered a work made for hire. For the purpose of the foregoing sentence, a "supplementary work" is a work prepared for publication as a secondary adjunct to a work by another author for the purpose of introducing, concluding, illustrating, explaining, revising, commenting upon, or assisting in the use of the other work, such as forewords, afterwords, pictorial illustrations, maps, charts, tables, editorial notes, musical arrangements, answer material for tests, bibliographies, appendixes, and indexes, and an "instructional text" is a literary, pictorial, or graphic work prepared for publication and with the purpose of use in systematic instructional activities.

\* \* \*

**17 U.S.C. § 102(b)**

**Subject matter of copyright: In general**

(b)  In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work.

**17 U.S.C. § 105**

**Subject matter of copyright: United States Government works**

Copyright protection under this title is not available for any work of the United States Government, but the United States Government is not precluded from receiving and holding copyrights transferred to it by assignment, bequest, or otherwise.

**17 U.S.C. § 107**

**Limitations on exclusive rights: Fair use**

Notwithstanding the provisions of sections 106 and 106A, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1)  the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2)  the nature of the copyrighted work;

(3)  the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4)  the effect of the use upon the potential market for or value of the copyrighted work.

The fact that a work is unpublished shall not itself bar a finding of fair use if such finding is made upon consideration of all the above factors.

**17 U.S.C. § 201(a)**

**Ownership of copyright**

(a) **Initial Ownership.**—Copyright in a work protected under this title vests initially in the author or authors of the work. The authors of a joint work are coowners of copyright in the work.

**28 U.S.C. § 1292(a)(1)**

**Interlocutory decisions**

(a)   Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

   (1)   Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

\*   \*   \*

**1 C.F.R. § 51.1**

**Policy.**

(a) Section 552(a) of title 5, United States Code, provides, in part, that "matter reasonably available to the class of persons affected thereby is deemed published in the Federal Register when incorporated by reference therein with the approval of the Director of the Federal Register."

(b) The Director will interpret and apply the language of section 552(a) together with other requirements which govern publication in the Federal Register and the Code of Federal Regulations. Those requirements which govern publication include—

    (1) The Federal Register Act (44 U.S.C. 1501 et seq.)

    (2) The Administrative Procedure Act (5 U.S.C. 551 et seq.);

    (3) The regulations of the Administrative Committee of the Federal Register under the Federal Register Act (1 CFR Ch. I); and

    (4) The acts which require publication in the Federal Register (See CFR volume entitled "CFR Index and Finding Aids.")

(c) The Director will assume in carrying out the responsibilities for incorporation by reference that incorporation by reference—

    (1) Is intended to benefit both the Federal Government and the members of the class affected; and

    (2) Is not intended to detract from the legal or practical attributes of the system established by the Federal Register Act, the Administrative Procedure Act, the regulations of the Administrative Committee of the Federal Register, and the acts which require publication in the Federal Register.

(d) The Director will carry out the responsibilities by applying the standards of part 51 fairly and uniformly.

(e) Publication in the Federal Register of a document containing an incorporation by reference does not of itself constitute an approval of the incorporation by reference by the Director.

(f) Incorporation by reference of a publication is limited to the edition of the publication that is approved. Future amendments or revisions of the publication are not included.

**1 C.F.R. § 51.3**

**When will the Director approve a publication?**

(a) (1)  The Director will informally approve the proposed incorporation by reference of a publication when the preamble of a proposed rule meets the requirements of this part (See § 51.5(a)).

    (2)  If the preamble of a proposed rule does not meet the requirements of this part, the Director will return the document to the agency (See 1 CFR 2.4).

(b)  The Director will formally approve the incorporation by reference of a publication in a final rule when the following requirements are met:

    (1)  The publication is eligible for incorporation by reference (See § 51.7).

    (2)  The preamble meets the requirements of this part (See § 51.5(b)(2)).

    (3)  The language of incorporation meets the requirements of this part (See § 51.9).

    (4)  The publication is on file with the Office of the Federal Register.

    (5)  The Director has received a written request from the agency to approve the incorporation by reference of the publication.

(c)  The Director will notify the agency of the approval or disapproval of an incorporation by reference in a final rule within 20 working days after the agency has met all the requirements for requesting approvals (See § 51.5).

**1 C.F.R. § 51.5**

**How does an agency request approval?**

(a)  For a proposed rule, the agency does not request formal approval but must:

    (1)  Discuss, in the preamble of the proposed rule, the ways that the materials it proposes to incorporate by reference are reasonably available to interested parties or how it worked to make those materials reasonably available to interested parties; and

    (2)  Summarize, in the preamble of the proposed rule, the material it proposes to incorporate by reference.

(b)  For a final rule, the agency must request formal approval. The formal request package must:

    (1)  Send a letter that contains a written request for approval at least 20 working days before the agency intends to submit the final rule document for publication;

    (2)  Discuss, in the preamble of the final rule, the ways that the materials it incorporates by reference are reasonably available to interested parties and how interested parties can obtain the materials;

    (3)  Summarize, in the preamble of the final rule, the material it incorporates by reference;

    (4)  Send a copy of the final rule document that uses the proper language of incorporation with the written request (See § 51.9); and

    (5)  Ensure that a copy of the incorporated material is on file at the Office of the Federal Register.

(c)  Agencies may consult with the Office of the Federal Register at any time with respect to the requirements of this part.

**1 C.F.R. § 51.7**

**What publications are eligible?**

(a)  A publication is eligible for incorporation by reference under 5 U.S.C. 552(a) if it—

    (1)  Conforms to the policy stated in § 51.1;

    (2)  (i)  Is published data, criteria, standards, specifications, techniques, illustrations, or similar material; and

        (ii)  Does not detract from the usefulness of the Federal Register publication system; and

    (3)  Is reasonably available to and usable by the class of persons affected. In determining whether a publication is usable, the Director will consider—

        (i)  The completeness and ease of handling of the publication; and

        (ii)  Whether it is bound, numbered, and organized, as applicable.

(b)  The Director will assume that a publication produced by the same agency that is seeking its approval is inappropriate for incorporation by reference. A publication produced by the agency may be approved, if, in the judgment of the Director, it meets the requirements of paragraph (a) and possesses other unique or highly unusual qualities. A publication may be approved if it cannot be printed using the Federal Register/Code of Federal Regulations printing system.

(c)  The following materials are not appropriate for incorporation by reference:

    (1)  Material published previously in the Federal Register.

    (2)  Material published in the United States Code.

**1 C.F.R. § 51.9**

**What is the proper language of incorporation?**

(a)   The language incorporating a publication by reference must be precise, complete, and clearly state that the incorporation by reference is intended and completed by the final rule document in which it appears.

(b)   The language incorporating a publication by reference is precise and complete if it—

    (1)   Uses the words "incorporated by reference;"

    (2)   States the title, date, edition, author, publisher, and identification number of the publication;

    (3)   Informs the user that the incorporated publication is a requirement;

    (4)   Makes an official showing that the publication is in fact available by stating where and how copies may be examined and readily obtained with maximum convenience to the user; and

    (5)   Refers to 5 U.S.C. 552(a).

(c)   If the Director approves a publication for incorporation by reference in a final rule, the agency must include—

    (1)   The following language under the DATES caption of the preamble to the final rule document (See 1 CFR 18.12 Preamble requirements):

    The incorporation by reference of certain publications listed in the regulations is approved by the Director of the Federal Register as of ____.

    (2)   The preamble requirements set out in 51.5(b).

    (3)   The term "incorporation by reference" in the list of index terms (See 1 CFR 18.20 Identification of subjects in agency regulations).

**1 C.F.R. § 51.11**

**How does an agency change or remove an approved incorporation?**

(a)  An agency that seeks approval for a change to a publication that is approved for incorporation by reference must—

    (1)  Publish notice of the change in the Federal Register and amend the Code of Federal Regulations;

    (2)  Ensure that a copy of the amendment or revision is on file at the Office of the Federal Register; and

    (3)  Notify the Director of the Federal Register in writing that the change is being made.

(b)  If a regulation containing an incorporation by reference fails to become effective or is removed from the Code of Federal Regulations, the agency must notify the Director of the Federal Register in writing of that fact within 5 working days of the occurrence.

**34 C.F.R. § 668.146(b)(6)**

**Criteria for approving tests.**

(b)   To be approved under this subpart, a test must:

\* \* \*

(6)   Meet all standards for test construction provided in the 1999 edition of the Standards for Educational and Psychological Testing, prepared by a joint committee of the American Educational Research Association, the American Psychological Association, and the National Council on Measurement in Education incorporated by reference in this section. Incorporation by reference of this document has been approved by the Director of the Office of the Federal Register pursuant to the Director's authority under 5 U.S.C. 552(a) and 1 CFR part 51. The incorporated document is on file at the Department of Education, Federal Student Aid, room 113E2, 830 First Street, NE., Washington, DC 20002, phone (202) 377–4026, and at the National Archives and Records Administration (NARA). For information on the availability of this material at NARA, call 1–866–272–6272, or go to: http://www.archives.gov/federal_register/code_of_federal_regulations/ibr_locations.html. The document also may be obtained from the American Educational Research Association at: http://www.aera.net; and

\* \* \*

**49 C.F.R. § 171.7(a), (h), (y)**

**Reference material.**

(a)  Matter incorporated by reference—

(1)  General. Certain material is incorporated by reference into subchapters A, B, and C with the approval of the Director of the Federal Register under 5 U.S.C. 552(a) and 1 CFR part 51. To enforce any edition other than that specified in this section, PHMSA must publish a document in the Federal Register and the material must be available to the public. Matters referenced by footnote are included as part of the regulations of this subchapter.

(2)  Accessibility of materials. All incorporated matter is available for inspection at:

(i)  The Office of Hazardous Materials Safety, Office of Hazardous Materials Standards, East Building, PHH–10, 1200 New Jersey Avenue SE., Washington, DC 20590–0001. For information on the availability of this material at PHH–10, call 1–800–467–4922, or go to: http://www.phmsa.dot.gov; and

(ii)  The National Archives and Records Administration (NARA). For information on the availability of this material at NARA, call 202–741–6030, or go to: http://www.archives.gov/federal_register/code_of_federal_regulations/ibr_locations.html.

\*   \*   \*

(h)  American Society for Testing and Materials, 100 Barr Harbor Drive, West Conshohocken, PA 1942, telephone (610) 832–9585, http://www.astm.org. Copies of historical standards or standards that ASTM does not have may be purchased from: Engineering Societies Library, 354 East 47th Street, New York, NY 10017.

(1)  ASTM A 20/A 20M–93a Standard Specification for General Requirements for Steel Plates for Pressure Vessels, 1993, into §§ 178.337–2; 179.102–4; 179.102–1; 179.102–17.

(2)  ASTM A 47–68 Malleable Iron Castings, 1968, into § 179.200–15.

(3)  ASTM A 53/A 53M–06a (ASTM A 53) Standard Specification for Pipe, Steel, Black and Hot–Dipped, Zinc–Coated, Welded and Seamless, 2006, into § 173.5b.

ADD-14

(4)  ASTM A 106/A 106M–06a (ASTM A 106) Standard Specification for Seamless Carbon Steel Pipe for High–Temperature Service, 2006, into § 173.5b.

(5)  ASTM A 240/A 240M–99b Standard Specification for Heat–Resisting Chromium and Chromium–Nickel Stainless Steel Plate, Sheet and Strip for Pressure Vessels, 1999, into §§ 178.57; 178.358–5; 179.100–7; 179.100–10; 179.102–1; 179.102–4; 179.102–17; 179.200–7; 179.201–5; 179.220–7; 179.300–7; 179.400–5.

(6)  ASTM A 242–81 Standard Specification for High–Strength Low–Alloy Structural Steel, 1981, into § 178.338–2.

(7)  ASTM A 262–93a Standard Practices for Detecting Susceptibility to Intergranular Attack in Austenitic Stainless Steels, 1993, into 179.100–7; 179.200–7; 179.201–4.

(8)  ASTM A 285–78 Pressure Vessel Plates, Carbon Steel, Low- and Intermediate–Tensile Strength, 1978, into § 179.300–7.

(9)  ASTM A 300–58 Steel Plates for Pressure Vessels for Service at Low Temperatures, 1958, into § 178.337–2.

(10) ASTM A 302/A 302M–93 Standard Specification for Pressure Vessel Plates, Alloy Steel, Manganese–Molybdenum and Manganese–Molybdenum Nickel, 1993, into § 179.100–7; 179.200–7; 179.220–7.

(11) ASTM A 333–67 Seamless and Welded Steel Pipe for Low–Temperature Service, 1967, into § 178.45.

(12) ASTM A 370–94 Standard Test 179.102–1; 179.102–4; Methods and Definitions for Mechanical Testing of Steel Products, 1994, into §§ 179.102–17; 179.102–1; 179.102–4.

(13) ASTM A 441–81 Standard Specification for High–Strength Low–Alloy Structural Manganese Vanadium Steel, 1981, into § 178.338–2.

(14) ASTM A 514–81 Standard Specification for High–Yield Strength Quenched and Tempered Alloy Steel Plate, Suitable for Welding, 1981, into § 178.338–2.

(15) ASTM A 515/A 515M–03 Standard Specification for Pressure Vessel Plates, Carbon Steel, for Intermediate- and Higher–Temperature Service, 2003, into § 179.300–7.

(16) ASTM A 516/A 516M–90 Standard Specification for Pressure Vessel Plates, Carbon Steel, for Moderate and Lower–Temperature Service,

1990, into § 178.337–2; 179.100–7; 179.102–1; 179.102–2; 179.102–4; 179.102–17; 179.200–7; 179.220–7; 179.300–7.

(17) ASTM A 537/A 537M–91 Standard Specification for Pressure Vessel Plates, Heat–Treated, Carbon–Manganese–Silicon Steel, 1991, into § 179.100–7; 179.102–4; 179.102–17.

(18) ASTM A 572–82 Standard Specification for High–Strength Low–Alloy Columbian–Vanadium Steels of Structural Quality, 1982, into § 178.338–2.

(19) ASTM A 588–81 Standard Specification for High–Strength Low–Alloy Structural Steel with 50 Ksi Minimum Yield Point to 4 in. Thick, 1981, into § 178.338–2.

(20) ASTM A 606–75 Standard Specification for Steel Sheet and Strip Hot–Rolled and Cold–Rolled, High–Strength, Low–Alloy, with Improved Atmospheric Corrosion Resistance, 1975 (Reapproved 1981), into § 178.338–2.

(21) ASTM A 607–98 Standard Specification for Steel, Sheet and Strip, High–Strength, Low–Alloy, Columbium or Vanadium, or Both, Hot–Rolled and Cold–Rolled, 1998, into § 178.338–2.

(22) ASTM A 612–72a High Strength Steel Plates for Pressure Vessels for Moderate and Lower Temperature Service, 1972, into § 178.337–2.

(23) ASTM A 633–79a Standard Specification for Normalized High–Strength Low–Alloy Structural Steel, 1979 Edition, into § 178.338–2.

(24) ASTM A 715–81 Standard Specification for Steel Sheet and Strip, Hot–Rolled, High–Strength, Low–Alloy with Improved Formability, 1981, into § 178.338–2.

(25) ASTM A 1008/A 1008M–03 Standard Specification for Steel, Sheet, Cold–Rolled, Carbon, Structural, High–Strength Low–Alloy and High Strength Low–Alloy with Improved Formability, 2003, into § 178.338–2; 178.345–2.

(26) ASTM A 1011/A 1011M–03a Standard Specification for Steel, Sheet and Strip, Hot–Rolled, Carbon, Structural, High–Strength Low Alloy and High Strength Low–Alloy with Improved Formability, 2003, into § 178.338–2; 178.345–2.

(27) ASTM B 162–93a Standard Specification for Nickel Plate, Sheet, and Strip, 1993, into § 173.249; 179.200–7.

(28) ASTM B 209–93 Standard Specification for Aluminum and Aluminum–Alloy Sheet and Plate, 1993, into § 179.100–7; 179.200–7; 179.220–7.

(29) ASTM B 221–76 Aluminum Alloy Extruded Bars, Rods, Shapes, and Tubes, 1976, into § 178.46.

(30) ASTM B 557–84 Tension Testing Wrought and Cast Aluminum and Magnesium–Alloy Products, 1984, into § 178.46.

(31) ASTM B 580–79 Standard Specification for Anodic Oxide Coatings on Aluminum, (Re-approved 2000), into § 173.316; 173.318; 178.338–17.

(32) ASTM D 56–05, Standard Test Method for Flash Point by Tag Closed Cup Tester, approved May 1, 2005, into § 173.120.

(33) ASTM D 86–07a, Standard Test Method for Distillation of Petroleum Products at Atmospheric Pressure, approved April 1, 2007, into § 173.121.

(34) ASTM D 93–08, Standard Test Methods for Flash Point by Pensky–Martens Closed Cup Tester, approved October 15, 2008, into § 173.120.

(35) ASTM D 1078–05, Standard Test Method for Distillation Range of Volatile Organic Liquids, approved May 15, 2005, into § 173.121.

(36) ASTM D 1238–90b Standard Test Method for Flow Rates of Thermoplastics for Extrusion Plastometer, 1990, into § 173.225.

(37) ASTM D 1709–01 Standard Test Methods for Impact Resistance of Plastic Film by the Free–Falling Dart Method, 2001, into § 173.197.

(38) ASTM D 1835–97 Standard Specification for Liquefied Petroleum (LP) Gases, 1997, into § 180.209.

(39) ASTM D 1838–64 Copper Strip Corrosion by Liquefied Petroleum (LP) Gases, 1964, into § 173.315.

(40) ASTM D 1922–00a Standard Test Method for Propogation Tear Resistance of Plastic Film and Thin Sheeting by Pendulum Method, 2000, into § 173.197.

(41) ASTM D 3278–96 (Reapproved 2004) E1, Standard Test Methods for Flash Point of Liquids by Small Scale Closed–Cup Apparatus, approved November 1, 2004, into § 173.120.

(42) ASTM D 3828–07a, Standard Test Methods for Flash Point by Small Scale Closed Cup Tester, approved July 15, 2007, § 173.120.

ADD-17

(43) ASTM D 4206–96 Standard Test Method for Sustained Burning of Liquid Mixtures Using the Small Scale Open–Cup Apparatus, 1996, into § 173.120.

(44) ASTM D 4359–90 Standard Test Method for Determining Whether a Material is a Liquid or a Solid, 1990 into §§ 130.5, 171.8.

(45) ASTM E 8–99 Standard Test Methods for Tension Testing of Metallic Materials, 1999, into § 178.36; 178.37; 178.38; 178.39; 178.44; 178.45; 178.50; 178.51; 178.53; 178.55; 178.56; 178.57; 178.58; 178.59; 178.60; 178.61; 178.68.

(46) ASTM E 23–98 Standard Test Methods for Notched Bar Impact Testing of Metallic Materials, 1998, into § 178.57.

(47) ASTM E 112–88 Standard Test Methods for Determining Average Grain Size, 1988, into § 178.44.

(48) ASTM E 112–96 Standard Test Methods for Determining Average Grain Size, 1996 Edition, into § 178.274; Part 178, appendix A.

(49) ASTM E 114–95 Standard Practice for Ultrasonic Pulse–Echo Straight–Beam Examination by the Contact Method, 1995, into § 178.45.

(50) ASTM E 213–98 Standard Practice for Ultrasonic Examination of Metal Pipe and Tubing, into § 178.45.

(51) ASTM E 290–97a Standard Test Methods for Bend Testing of Material for Ductility, published February 1998, into § 178.37.

*   *   *

(y)  National Fire Protection Association, 1 Batterymarch Park, Quincy, MA, 02169–7471 1–617–770–3000, http://www.nfpa.org.

(1)  NFPA 58–Liquefied Petroleum Gas Code, 2001 Edition, into §§ 173.5, 173.315.

(2)  NFPA 498–Standards for Safe Havens and Interchange Lots for Vehicles Transporting Explosives, 2010 Edition, into § 177.835.

*   *   *

***Compendium of the U.S. Copyright Office Practice*** (2014), Section 313.6(C)(2)
(***available at*** **https://www.copyright.gov/comp3/chap300/ch300-copyrightable-authorship.pdf**)

### Government Edicts

As a matter of longstanding public policy, the U.S. Copyright Office will not register a government edict that has been issued by any state, local, or territorial government, including legislative enactments, judicial decisions, administrative rulings, public ordinances, or similar types of official legal materials. Likewise, the Office will not register a government edict issued by any foreign government or any translation prepared by a government employee acting within the course of his or her official duties. *See Banks v. Manchester*, 128 U.S. 244, 253 (1888) ("there has always been a judicial consensus, from the time of the decision in the case of *Wheaton v. Peters*, 8 Pet. 591, that no copyright could under the statutes passed by Congress, be secured in the products of the labor done by judicial officers in the discharge of their judicial duties"); *Howell v. Miller*, 91 F. 129, 137 (6th Cir. 1898) (Harlan, J.) ("no one can obtain the exclusive right to publish the laws of a state in a book prepared by him").

There is a limited exception to this rule. Section 104(b)(5) of the Act states that works first published by the United Nations or any of its specialized agencies, or first published by the Organization of American States are eligible for copyright protection in the United States. *See* 17 U.S.C. § 104(b)(5).

A work that does not constitute a government edict may be registered, even if it was prepared by an officer or employee of a state, local, territorial, or foreign government while acting within the course of his or her official duties. For example, the Office may register a tourist magazine written and published by Arizona's department of tourism or a map created and published by the public transit authority for the city of Detroit. Likewise, the Office may register annotations that summarize or comment upon legal materials issued by a federal, state, local, or foreign government, unless the annotations themselves have the force of law. *See* Chapter 700, Section 717.1.

**Minnesota Administrative Rules - Rule 4761.2460, Subp. 2(C)**

**INDEPENDENT TESTING ORGANIZATIONS; PERMITS.**

\* \* \*

**Subp. 2.**

**Application.**

A permit application must be submitted on a form provided by the commissioner. The application must:

\* \* \*

**C.**

include documentation that the examination meets the validity standards for educational and psychological testing specified in American Psychological Association (APA), Standards for Educational and Psychological Testing (1999). This document is not required for an examination that was developed by or for the EPA. The APA standards are incorporated by reference, are not subject to frequent change, and are available through the Minitex interlibrary loan system through a local library;

\* \* \*

**N.J. Admin. Code § 11:3-10.4 (1988) (*available at* 1995 WL 17047923 at 71a-73a)**

**Adjustment of total losses**

(a)   If the insurer elects to make a cash settlement, it must bear in mind at all times that the insured's position is that of a retail consumer and the settlement value arrived at must be reasonable and fair for a person in that position.  If the insurer elects to make a cash settlement, its offer, subject to applicable deductions, must be one of the following plus applicable sales tax:

   1.   The average of the retail value for a substantially similar motor vehicle as listed in the current editions of the two valuation manuals approved by the Commissioner.

      i.   The average figure arrived at may be reduced by considering all factors, including but not limited to mileage tables and presence or absence of extras.

      ii.   If the destroyed vehicle included an option which is listed in one manual but not in the other, the value of the option shall not be averaged.  The insured shall receive full value for the option by carrying over the amount listed to the other manual.  The option carryover shall apply only in those instances where the option has not been considered by the used vehicle guide either as a separate item or included in the vehicle's base value.

      iii.   Manuals approved for use on and after January 1, 1976, are the "Redbook", published by National Market Reports, Inc., and the "N.A.D.A. Official Used Car Guide", published by the National Automobile Dealers Association Used Car Guide Company.  The use of any other manuals may be approved by the Commissioner upon demonstration of need, suitability and accuracy.

   2.   A quotation obtained by the insurer for a substantially similar motor vehicle, obtained from a dealer or individual located within a reasonable distance from the principal place of garagement of the insured vehicle. The insured must be able to purchase the substantially similar vehicle at the quoted location for the insurer's cash offer plus applicable deductions.

   3.   If it is not possible to value the damaged vehicle by using alternative methods, paragraphs 1 or 2 of this subsection, the insurer must determine the retail value by the best available method and must fully explain in writing to the insured how its offer was calculated.

   *   *   *

**11 N.Y. Admin. Code § 216.7(c) (1990) (*available at* 1995 WL 17047923 at 73a-75a)**

(c) Adjustment of total losses

> (1) If the insurer elects to make a cash settlement, its minimum offer, subject to applicable deductions, must be one of the following:
>
> > (i) The average of the retail values for a substantially similar vehicle as listed in two valuation manuals current at the date of loss and approved by this Department.  Manuals approved for use are – *The Redbook*, published by National Market Reports, Inc., and *The N.A.D.A. Official Used Car Guide*, published by the National Automobile Dealers Used Car Guide Company. The use of other manuals may be approved by this Department upon demonstration of need and suitability. If it is evident that an option has not been considered in either or both of the above valuation manuals, the insurer shall consider the value, if any, of such option in arriving at the vehicle's value and shall utilize the best available method to value such option. The insurer may deduct documented, reasonable dealer preparation charges, up to $75, from the average of the retail values.  The insurer shall provide to the insured, no later than the date of payment of the claim, a detailed copy of its calculation of the insured vehicle's total loss value, including the valuation of options which are not considered in the base price of the vehicle.
> >
> > (ii) A quotation for a substantially similar vehicle, obtained by the insurer from a qualified dealer located reasonably convenient to the insured. A reasonable location shall be within 25 miles of the place of principal garagement of the motor vehicle.  The substantially similar available vehicle must remain available for purchase by the insured for a period of three calendar days subsequent to receipt of notice of its availability by the insured, and the insured must be able to purchase the substantially similar vehicle at the quoted dealer for the insurer's cash offer plus applicable deductions.  The insurer must maintain in its claim file the dealer's name and location, the vehicle identification number, the dealer stock number, the mileage and the major options for the substantially similar vehicle which was the basis of its quote.  The notice to the insured of the availability of a substantially similar vehicle must be sent by certified mail, return receipt requested, or be a sound-recorded conversation reflecting the date of notice.  The three calendar days commence on the date the

ADD-22

insured acknowledges receipt of notice.  The insured need not purchase the vehicle used as the basis of the insurer's quotation, since the quotation merely serves as a basis for the insurer's offer.  The foregoing period is satisfied at the point an insured physically verifies the existence of the substantially similar available vehicle used as the basis of the insurer's quotation.  Should the insurer's research of substantially similar vehicles determine that the retail values contained in the valuation manuals, prescribed in subparagraph (i) of this paragraph, are inadequate to purchase a substantially similar vehicle, the insurer's offer should be the amount determined by such research.